**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
500 7th Avenue, 8th Fl.
New York, NY 10018
Telephone: (646) 347-3940

**JANOVE PLLC**
Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

***Attorneys for Plaintiffs and the Proposed Class***

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CHERYLL DOUGHERTY, DELIA CAMARGO, and LAWRENCE GARCIA, individually, as private attorneys general, and on behalf of all others similarly situated,

Plaintiffs,

v.

ZYNGA INC.,

Defendant.

Case No. 3:25-cv-04051-SI

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR TRANSFER VENUE**

[Filed concurrently with Plaintiffs' Oppositions to Defendant's Motion to Dismiss and Motion to Stay Discovery]

Judge: Hon. Susan Illston
Date: December 19, 2025
Time: 10:00 a.m.
Courtroom: 1

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
500 7th Ave., 8th Fl.
New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

## TABLE OF CONTENTS

INTRODUCTION ....... 1

STATEMENT OF THE ISSUES TO BE DECIDED ....... 3

FACTUAL BACKGROUND ....... 3

I. Defendant's Unlawful Practices In The Games ....... 3

II. Plaintiffs Fall Victim To Defendant's Unlawful Practices ....... 4

III. Defendant's Adhesive and Shifting Dispute-Resolution Terms ....... 5

A. The Peak Terms ....... 5

B. The 2024 Arbitration Clause ....... 5

1. New Era Website Disclaimers ....... 6

2. New Era Rules and Commentary on the Ninth Circuit's *Heckman* Opinion ....... 6

3. Defendant's Modifications to the New Era Rules and other Unconscionable Terms ....... 6

C. Defendant's 2025 Arbitration Clause is Imposed After Plaintiff Garcia and Other Arbitration Claimants File Arbitration Demands ....... 7

LEGAL STANDARDS ....... 9

ARGUMENT ....... 10

I. California Law Applies To Plaintiffs' Challenges To Defendant's Terms, Including The Delegation Clauses ....... 10

II. The Dispute Resolution Provisions Of The 2024 Terms, Including The Delegation Clause, Are Invalid And Unenforceable ....... 12

A. The 2024 Terms are unconscionable as explained in *Heckman.* ....... 12

B. The dispute resolution provisions of the 2024 Terms are procedurally unconscionable. ....... 13

C. The dispute resolution provisions of the 2024 Terms are substantively unconscionable. ....... 14

D. The 2024 Terms contain additional unconscionable and one-sided provisions. ....... 16

E. The unconscionable provisions cannot be severed. ....... 17

F. The dispute resolution provided by the 2024 Terms is not an FAA "arbitration" so the *Discover Bank* rule applies. ....... 18

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

III. The Dispute Resolution Provisions Of The 2025 Terms, Including The Delegation Clause, Are Invalid And Unenforceable. .... 18

A. Plaintiff Dougherty validly opted out of the 2025 Terms. .... 18

B. The 2025 Terms cannot apply retroactively. .... 19

C. Defendant did not provide adequate notice that the 2025 terms applied retroactively, even to claims already filed in arbitration. .... 20

D. The 2025 Terms are procedurally unconscionable. .... 21

E. The 2025 Terms are substantively unconscionable. .... 22

F. The unconscionable provisions cannot be severed. .... 24

IV. The Court Should Deny The Motion To Transfer .... 24

CONCLUSION .... 25

# TABLE OF AUTHORITIES

## Cases

*America Online, Inc. v. Superior Court of Alameda County (Mendoza)*, 90 Cal. App. 4th 1 (2001) .......... 25

*Ash v. Axos Bank*, 2024 WL 4195313 (S.D. Cal. Sept. 13, 2024) .......... 19, 20, 21

*Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50 (Ct. App. 2013) .......... 20

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... 20, 21

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) .......... 9, 10

*Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) .......... 18

*Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) .......... 25

*Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023) .......... 20

*Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240 (N.D. Cal. 2019) .......... 10, 11, 19

*Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221 (Ct. App. 2019) .......... 21

*Garcia v. Start Yoshi, Inc.*, 2024 WL 2274524 (N.D. Cal. May 17, 2024) .......... 22

*Glass v. Tradesmen Int'l, LLC*, 2020 WL 820655 (N.D. Ohio Feb. 19, 2020) .......... 19

*Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024) .......... passim

*Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) .......... 23

*Kassim v. CVS Albany, LLC*, 2022 WL 4357456 (E.D.N.Y. Sept. 20, 2022) .......... 11

*Kooiman v. Siwell, Inc.*, 2021 WL 899095 (C.D. Cal. Jan. 4, 2021) .......... 25

*Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420 (N.D. Cal. 2018) .......... 25

*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) .......... 17

*MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022) .......... 15, 16, 17

*Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*, 41 Cal. App. 5th 357 (2019) .......... 19

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

*Pandolfi v. AviaGames, Inc.*,
2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ........ passim

*Pandolfi v. Aviagames, Inc.*,
2025 WL 2463742 (9th Cir. Aug. 27, 2025) ........ 14, 15

*Peleg v. Neiman Marcus Grp., Inc.*,
204 Cal. App. 4th (Ct. App. 2012)........ 19, 20

*Pitzer Coll. v. Indian Harbor Ins. Co.*,
8 Cal. 5th 93 (2019) ........ 11

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024) ........ 13, 17

*Rios v. HRB Digital LLC,*
2025 WL 3003768 (N.D. Cal. Oct. 27, 2025) ........ passim

*Tsuya v. Plex, Inc. et al.*,
5:24-cv-09078-EKL, ECF No. 25 (N.D. Cal. Feb. 24, 2025)........ 8

*Tura v. Med. Shoppe Int'l, Inc.*,
2010 WL 11506428 (C.D. Cal. Mar. 3, 2010)........ 10, 11

*Zuckerman v. Charter Commc'ns, LLC,*
2024 WL 4871739 (S.D. Cal. Nov. 22, 2024) ........ 17

**Statutes**

9 U.S.C. § 2........ 9

Cal. Civ. Code §1751 ........ 25

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
500 7th Ave., 8th Fl.
New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Plaintiffs Cheryll Dougherty, Delia Camargo, and Lawrence Garcia ("Plaintiffs") oppose the motion of Defendant Zynga, Inc. ("Zynga" or "Defendant") to compel arbitration, or alternatively transfer venue (the "MTC") [D.E. 37], as follows:

**INTRODUCTION**

Plaintiffs brought this class action on behalf of mobile video game players who are victims of Defendant's deceptive business practices, which caused them to spend large sums of money on in-game purchases through the use of false discounting and other manipulative tactics. In a transparent attempt to insulate themselves from being held accountable under California's consumer protection statutes, Defendant imposed a series of unconscionable dispute resolution provisions on customers, in take it or leave it contracts of adhesion.

Defendant's unconscionable dispute resolution provisions are unenforceable. Their 2024 Terms provide for mass arbitration with New Era ADR—which the Ninth Circuit found to be a "systematic effort to impose arbitration . . . as an inferior forum" and unconscionable. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 688 (9th Cir. 2024), *cert. denied sub nom. Live Nation v. Heckman*, No. 24-1145, 2025 WL 2823733 (U.S. Oct. 6, 2025). In fact, the New Era ADR is so egregious that the Ninth Circuit concluded "this method of dispute resolution contemplated by New Era's Rules" is "unworthy even of the name of arbitration" and falls outside the scope of the Federal Arbitration Act. *Id*. The 2025 Terms are no better, containing many of the same provisions that *Heckman* rejected. Worse, Defendant attempted to impose them retroactively to apply to pre-existing claims, a bad faith and unconscionable practice that California courts do not allow.

Defendant's pre-litigation conduct confirms that they deploy arbitration provisions as weapons designed to deter claims and avoid justice rather than offer impartial dispute resolution. Before initiating this litigation Plaintiff Garcia and others (but not Plaintiff Dougherty or Camargo) asserted claims under a 2019 EULA they reasonably believed applied, which provided for JAMS individual arbitration. During *months* of informal dispute resolution, including information sharing and a failed mediation, Defendant never once argued that this was the wrong agreement. Instead, it took the position that it had forced users to accept the new 2024 Terms and their unconscionable New Era mass arbitration procedures.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

When negotiations failed, claimants learned that Defendant had used the time and information provided during the failed mediation to draft a new arbitration clause replacing the New Era ADR the Ninth Circuit refused to enforce in *Heckman*. Thus, on the very day that the tolling agreement covering potential arbitration claimants expired, Defendant attempted to force the new dispute resolution terms—which purported to reply retroactively to already accrued claims—on its users.

Thereafter, Plaintiff Garcia and hundreds of others ("Arbitration Claimants") filed demands for arbitration before JAMS on March 25, 2025. After the arbitrations were filed, Defendant implemented yet another bad faith stratagem—redesigning the mobile applications to require users to download an update which triggered a pop-up about new terms, although the pop-up did not mention any changes or the dispute resolution provisions. Defendant also contended that User IDs were required before any arbitrations could proceed (even though hundreds of User IDs had been provided during the informal dispute resolution phase and Defendant did nothing with them), knowing but not mentioning that the only way a claimant could get a User ID would involve seeing a pop-up attempting to bind them to a new set of terms, despite not clearly disclosing the changes.

In its motion to compel arbitration, Defendant argues Plaintiffs Camargo and Garcia are bound by the 2024 terms, and Plaintiff Dougherty is bound by the 2025 Terms. The dispute resolution provisions of both Terms contain a delegation clause providing that disputes over whether the arbitration agreement is unconscionable will be resolved in arbitration. However, the Court should refuse to enforce the delegation clause because it is both procedurally and substantively unconscionable. The Court should then consider whether the arbitration agreements are unconscionable, and refuse to enforce them for the reasons given by the Ninth Circuit in *Heckman*. Both the delegation clause and the larger arbitration agreements are obvious attempts to impose an inferior forum on claimants, providing for confusing and oppressive procedures that make it difficult if not impossible for claimants to achieve a fair and efficient dispute resolution process.

It is notable that Defendant's motion to compel does not even clearly specify what arbitration exactly it asks the Court to compel and where Plaintiffs are supposed to vindicate their claims. For example, in a transparent attempt to avoid scrutiny of the patently unconscionable arbitration

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

procedures, Defendant disingenuously argues that "each Plaintiff is required to arbitrate their claim on an individual basis before JAMS, under both the 2024 and 2025 Take-Two Terms" and "[t]his Court need not decide how a hypothetical mass arbitration would proceed." *See* MTD at 19. But Plaintiff Garcia and others similarly situated *already tried* to arbitrate their claims on an individual basis for JAMS. Defendant blocked the arbitration by refusing to pay filing fees and asserted that the 2025 Terms—which it forced onto Plaintiff Garcia *after* he had already filed his arbitration demand in JAMS and which it now concedes do not apply to him—required JAMS Mass Arbitration.

Finally, Defendant argues that if they cannot apply their unconscionable arbitration provisions the Court should allow them to go to New York so they can avoid Plaintiffs' claims by asking the Court to apply New York law. However, Plaintiffs are California residents, bringing statutory causes of action under California consumer protection law against a company that is headquartered in California and whose California-based executives and employees are directly responsible for Plaintiffs' injuries. California public policy weighs heavily against allowing Defendant to transfer the case away from this forum or apply some other states law to evade unwaivable rights under California law. Defendant's motion to compel or transfer should be denied.

## STATEMENT OF THE ISSUES TO BE DECIDED

Whether Defendant's ever-changing unconscionable dispute resolution terms should be enforced.

## FACTUAL BACKGROUND

### I. Defendant's Unlawful Practices In The Games

Toon Blast and Toy Blast (together, the "Games") are two nearly identical, highly popular mobile games published by Defendant Zynga Inc., a subsidiary of Take-Two Interactive Software, Inc. ("Take-Two"). FAC ¶ 2. The Games are marketed as free to play but are structured to pressure players into making in-game purchases to advance through the Games' levels. *Id.* ¶ 3. Players of the Games are bombarded with materially false and misleading offers for in-game purchases. *Id.* ¶ 4. These offers depend on false discounting and manipulative presentation, archetypal examples of "dark patterns"—manipulative design practices the Federal Trade Commission ("FTC") identified

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

in its September 2022 report, "Bringing Dark Patterns to Light."[1] *Id*.

For instance, the Games consistently, and falsely, advertise massive purported discounts on in-app purchases, such as "70% off" or "90% off." FAC ¶ 5. In truth, these products are always sold at the "sale" or discounted price and never at the purported reference price. *Id*. Defendant uses these false discounts to artificially inflate reasonable consumers' perception of the values of in-game goods, create an illusion of savings, and trick players into spending more than they otherwise would have. *Id*. Defendant further pressures players into making purchasing decisions by displaying fake countdown timers for these "sales," creating an illusion of scarcity based on the idea there is a limited amount of time to purchase the product "on sale" and get the discount. *Id.* ¶ 6.

The Games themselves are designed to be addictive, stimulating the brain's reward centers in the same manner as slot machines. *Id.* ¶ 7. The false discounting and countdown timers leverage the addictive nature of the Games by targeting players with special discount offers at the times and in the manner that Defendant's patented technologies predict will make players most susceptible to falling victim to their tactics. *Id*. The Games bring Zynga revenue of more than $1 million per day and have brought in more than $1 billion since their launch. *Id.* ¶ 8.

Zynga takes advantage of its users in another way, improperly sharing with third parties the personal identifying information and video viewing histories of users of its many mobile games, without first obtaining consent. *Id.* ¶¶ 88–122. Zynga makes hundreds of million dollars in profits from its marketing partners by offering targeted advertising and showing video advertisements to its players, including Plaintiffs Dougherty and Garcia. *Id.* ¶¶ 95, 12, 14.

## II. Plaintiffs Fall Victim To Defendant's Unlawful Practices

Plaintiff Cheryll Dougherty is a California resident who currently plays the Toon Blast game and previously played the Toy Blast game. FAC ¶ 12. When she played Toy Blast, she frequently made in-app purchases of the various types of packs and sale items as a result of Defendant's deceptive advertising and illegal marketing tactics. *Id.* ¶ 12, Ex. A. She also watched video advertisements in Toon Blast. *Id.* ¶ 12.

Plaintiff Delia Camargo is also California resident who plays the Toon Blast game, so much

[1] FTC Staff Report, Bringing Dark Patterns to Light (Sept. 14, 2022).

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

so that she felt addicted and compelled to play Toon Blast, even losing sleep playing it. *Id.* ¶ 13. For over 8 years, she estimates spending upwards of two to three hours each day playing the game. *Id*. In Toon Blast, Plaintiff estimates spending over $1,000 spread across frequent in-app purchases, which included purchases of the various types of packs and sale items described below, including packs that were advertised as being on sale or purporting to advertise massive discounts. *Id*.

Plaintiff Lawrence Garcia was a California resident until August 2024. *Id.* ¶ 14. Like the other Plaintiffs, Garcia found the app addictive and spent hundreds of dollars on in-app purchases for packs purporting to advertise massive discounts. *Id*. He also watched pre-recorded video content in the Toon Blast game, including watching video advertisements to advance in the Toon Blast game and to collect additional items and rewards. *Id.* ¶ 15.

## III. Defendant's Adhesive and Shifting Dispute-Resolution Terms

According to Defendant's submission, it presented Plaintiffs with three different sets of Terms, each time as a take it or leave it contract of adhesion, as described below.

### A. The Peak Terms

Defendant claims it presented Plaintiffs Camargo and Garcia with a link to the Peak Terms, as a take it or leave it contract of adhesion (on June 10, 2019 for Camargo and September 14, 2018 for Garcia). Ungberg Decl. ¶ 62, 66.[2] The Peak Terms provide that disputes "shall be governed by the laws of Turkey by a court located in Istanbul without regard to conflict of law provisions, and you agree to submit to the jurisdiction of such court." Ungberg Decl. Ex. A § 12. The Peak Terms also provide that: "Except as expressly and specifically set forth in these Terms of Services, no representations, statements, consents, waivers or other acts or omissions by Peak Games shall be deemed a modification of these Terms of Services nor legally binding, *unless documented in physical writing, hand signed by you and a duly appointed officer of Peak Games*." *Id.* ¶ 18 (emphasis added).

### B. The 2024 Arbitration Clause

According to Defendant's submission, it presented all three Plaintiffs with a link to the 2024 Terms, as a take it or leave it contract of adhesion. Ungberg Decl. ¶ 58 (Dougherty, June 20, 2024),

[2] Defendant does not claim that Plaintiff Dougherty was on notice of or bound by the 2019 Terms.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

¶ 60 (Camargo, April 23, 2024), ¶ 66 (Garcia, November 21, 2024). The 2024 Terms (Ungberg Decl. Ex. B) provide for JAMS arbitration, § 15.5(9). But it then adds that "Notwithstanding the parties' agreement to have all Disputes administered by JAMS on an individual basis, you and Take-Two agree that if your Dispute is (or becomes) a Mass Arbitration Dispute, it shall not be governed by the JAMS Rules or administered by JAMS. Instead, Mass Arbitration Disputes shall be administered by New Era and governed by the New Era Rules in effect when the Mass Arbitration Disputes are filed, excluding any rules that permit arbitration on a class-wide basis (the "New Era Rules"), and this Arbitration Agreement."

**1. New Era Website Disclaimers**

Whether Plaintiffs can rely on any Rules found on the New Era website is questionable because New Era openly admits in its website terms that: "[T]he information on the Services may contain typographical errors or inaccuracies, and may not be complete. . . . Please note that such errors, inaccuracies, or omissions may relate to service descriptions, pricing, and availability." New Era also makes clear that: "Any reliance you place on such information is strictly at your own risk."[3]

**2. New Era Rules and Commentary on the Ninth Circuit's *Heckman* Opinion**

As noted above, the Ninth Circuit in *Heckman* considered the New Era Rules and concluded that the district court had correctly held that that Defendants had chosen them in a "systematic effort to impose arbitration . . . as an inferior forum" rendering "the delegation clause and the arbitration agreement as a whole are both unconscionable under California law." 120 F.4th at 688-89. Instead of correcting the issues identified by the Ninth Circuit, New Era on its website openly disparages the Court: "The Ninth Circuit recently delivered a disappointing and flawed ruling on a motion to compel arbitration in Heckman v. Live Nation. . . . [T]he ruling is fraught with innumerable falsehoods and inaccuracies, and we're clearing up a few of the many areas the court got wrong."[4]

**3. Defendant's Modifications to the New Era Rules and other Unconscionable Terms**

The 2024 Terms also purport to modify the New Era terms in ways that make them even

---

[3] Terms and Conditions — New Era ADR

[4] The Ninth Circuit Got It Very Wrong in 'Heckman v. Live Nation' — New Era ADR

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

more unconscionable. For example, New Era dubiously claims that its rule and procedures do not provide for "batching" because "batching treats many individual cases as one collective claim, as applied batching may violate long-standing and fundamental principles of consumer arbitration outlined by the United States Supreme Court."[5] Despite this, the 2024 Terms mandate arbitration under the New Era Rules and then add an additional restriction, preventing New Era from even accepting demands from additional claimants until a first batch of 60 demands are decided. *See* 2024 Terms § 15.5(9) ("New Era shall not accept any additional Demands for Arbitration related to such Mass Arbitration until 60 days after the final resolution of all Bellwether Cases from the Initial Batch and the subsequent Settlement Conference provided for under the New Era Rules.").

They also change New Era's definition of a Mass Arbitration, which "involv[es] claims that: (a) number five (5) or more and are against common respondent(s), (b) arise out of Common Issues of Law and Fact, ***and*** (c) are brought by the same law firm or group of law firms acting in coordination," *see* Janove Decl. Ex. A ("2025 Rules"), New Era Rule 1(b)(iv)(1)). The 2024 Terms definition is far broader, applying to "5 or more Disputes relating to the same or similar subject matter, which share common issues of law or fact, ***or*** in which the counsel or other organization representing the parties in such Disputes are the same, cooperating, or working in coordination." 2024 Terms § 15.5(9). The 2024 Terms include other unconscionable terms, such as limiting Defendant's maximum potential liability and waiving other rights and remedies. *See id.* § 15.4 ("you agree that your exclusive remedy is limited to recovery of direct damages and the maximum liability is limited to the greater of USD $500 or the amount you have spent" in the 24 months before the claim arose). No analogous limitation is imposed on Defendant.

### C. Defendant's 2025 Arbitration Clause is Imposed After Plaintiff Garcia and Other Arbitration Claimants File Arbitration Demands

As mentioned above, Plaintiff Garcia and the Arbitration Claimants sent a notice of dispute on July 30, 2024, and initially attempted to arbitrate their claims. FAC ¶ 145. Despite reservations regarding the purported terms for dispute resolution, Plaintiff Garcia and the Arbitration Claimants attempted in good faith to pursue informal dispute resolution, and entered into a tolling agreement

---
[5] 2024 New Era ADR Rules FAQ at 11.

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC

on August 27, 2024 that contemplated information exchange and a mediation. *Id.* ¶ 148. After a failed mediation on December 17, 2024, the Parties agreed to extend their tolling agreement to February 28, 2025, with Plaintiff Garcia and the Arbitration Claimants relying on representations that Defendant was still interested in informal resolution. *Id.* ¶ 154. Instead, Defendant used the additional time to implement a thwarting strategy, attempting to block the Arbitration Claimants' arbitrations from proceeding by updating their terms—on February 28, 2025, the day the tolling period ended—with a new dispute resolution procedure specifically tailored to defeat Claimants' arguments advanced in mediation. *Id.* ¶¶ 154–155. Then, on March 25, 2025, Plaintiff Garcia and 745 Arbitration Claimants filed their demands for arbitration before JAMS. *Id.* ¶ 159; Janove Decl. Ex. B. After these arbitrations were filed, Defendant redesigned its mobile applications and instituted a pop-up that purportedly forced users to agree to the 2025 Terms. FAC ¶¶ 164, 167–171. It then argued that these-already filed arbitrations must now proceed under the new terms (to which Defendant concedes no one had notice of or had assented to when the arbitrations were filed, as the earliest the new pop-up could have been viewed was three days after the JAMS filings, March 28, 2025, *see* Ungberg Decl. ¶ 38).[6]

As evidenced by this bad faith maneuvering, Defendant is well aware that the arbitration clause and delegation provision it asks the Court to enforce on Plaintiffs Camargo and Garcia

[6] Defendant asserts that JAMS determined the arbitration claimants' claims were subject to its Mass Arbitration Protocols, but this is false. JAMS assigned a Process Arbitrator but specifically stated that questions about whether the JAMS' Mass Arbitration Protocol applied could be raised with the Process Arbitrator. *See* Janove Decl. Ex. B. Notably, while Defendant argued to JAMS that Plaintiff Garcia should be subject to Mass Arbitration under the 2025 Terms, here it admits that he opted-out and never agreed to JAMS Mass Arbitration. The 2025 Terms provide no recourse for Plaintiff Garcia having to waste time with a process arbitrator despite opting out, even though Defendant could seek attorney's fees if Garcia made similarly frivolous claims.

The Court should also ignore Defendant's attempts to cast itself as the victim of its own adhesive arbitration clause, which are equally detached from reality. MTC 10-11. There is no reason why Plaintiffs should agree to forego the benefits of individual arbitration simply because Defendant wishes to avoid filing fees. *Cf.* Janove Decl. Ex. C., *Tsuya v. Plex, Inc. et al.*, 5:24-cv-09078-EKL, ECF No. 25 (N.D. Cal. Feb. 24, 2025) ("The Court has carefully reviewed the parties' submissions and finds no basis at all for Plex's assertions of 'bad faith.' To the contrary, the record reflects that Plaintiff has dutifully sought to arbitrate his claims under Plex's arbitration agreement. Plaintiff brought this action only after Plex refused to pay the fees required to initiate arbitration, as reflected in Plex's correspondence with JAMS. . . . Unfounded accusations of bad faith erode the civility of the legal profession. The Court admonishes Plex's counsel to focus their advocacy on the merits of the case, and to refrain from ad hominem attacks.").

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

(contained in the 2024 Terms) are unconscionable. As to the 2025 Terms, Defendant now admits that Plaintiffs Camargo and Garcia validly opted out, *see* MTD at 19 n.7, but contends that Plaintiff Dougherty did not timely opt-out (although it admits she tried to opt-out) and so is bound by the arbitration agreement in the 2025 Terms (Ungberg Decl. Ex. C).

The 2025 Terms remain unconscionable, including because Defendant's brazen attempt to change the rules mid-dispute to disadvantage claimants is obviously in bad faith. Substantively, Defendant changes the applicable procedural rules from the New Era Rules to the JAMS Mass Arbitration Procedures. 2025 Terms § 17.5(6). But, Defendant then adds a layer of extra unconscionability through bespoke provisions, including an onerous pre-dispute notice requirement, a one-sided fee-shifting provision entitling a prevailing party to seek attorney's fees in connection with frivolous "claims or requested relief," but not in connection with frivolous defenses; limiting Defendant's maximum potential liability; unilateral modification rights, a mass arbitration protocol, and exempting all claims that Defendant is likely to bring from the arbitration requirement.

## LEGAL STANDARDS

The FAA limits federal court review of arbitration agreements to two "gateway" issues: (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue. Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (cleaned up). The FAA also permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and to be invalidated by "generally applicable contract defenses" including unconscionability. *Heckman,* 120 F.4th 670, 689.

Here, both the 2024 Terms and the 2025 Terms contain "delegation" provisions, which provide that disputes about the validity or enforceability of the arbitration agreements will be resolved by "the arbitrator" (2024 Terms § 15.5(1)); 2025 Terms § 17.5(1); *see also id.* ("The arbitrator or process administrator, as applicable, shall have authority to determine all threshold arbitrability issues, including related to whether the Agreement or the Arbitration Agreement are unconscionable or illusory.")

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Plaintiffs challenge these provisions, as well as the rest of the arbitration agreements, as unconscionable. "In [these circumstances], if a party specifically challenges the delegation provision under Section 2 of the FAA, the federal court must consider the challenge before ordering compliance with it." *Bielski*, 87 F.4th at 1009 (cleaned up). After it determines that "the delegation clause is unconscionable and unenforceable," the court may then "determine whether the arbitration agreement as a whole is unconscionable and unenforceable." *Heckman*, 120 F.4th at 687.

## ARGUMENT

### I. California Law Applies To Plaintiffs' Challenges To Defendant's Terms, Including The Delegation Clauses

This Court should apply California law to analyze the enforceability of Defendant's dispute resolution provisions and delegation clauses. Defendant cites California law principles and decisions in its motion to compel arbitration, and so has waived (and cannot argue in its Reply) any argument New York law applies on the issues of contract formation, unconscionability, and other challenges to Defendant's Terms. (Defendant argues only in its motion to dismiss that New York law applies to Plaintiffs' substantive claims, based on its unenforceable choice of law clause).

Besides being untimely, any argument that New York law applies to the enforceability of its Terms would be meritless. California law applies to Plaintiffs' challenges to contract validity because California has a greater interest in this dispute and it would violate California public policy to enforce the contract's choice of law clause to salvage what would otherwise be an unenforceable agreement under California law. *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1251 & n. 6 (N.D. Cal. 2019) (applying California's choice of law rules to challenges to contract formation and not apply the arbitration clause's "choice-of-law provision [ ]because doing so would presuppose the existence of a formed contract, the very issue before the Court"); *see also Tura v. Med. Shoppe Int'l, Inc.*, 2010 WL 11506428, at *8 (C.D. Cal. Mar. 3, 2010) (in assessing whether to enforce choice of law clause, "California courts closely scrutinize arbitration agreements to ensure that they are not unconscionable. The Ninth Circuit has specifically held that an unconscionable arbitration provision is 'contrary to' California's 'fundamental policy' against enforcing unconscionable arbitration agreements."); *Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal.

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

5th 93, 100 (2019) (on certified question from Ninth Circuit, analyzing whether to enforce a New York choice-of-law clause if it violated California public policy).

To the extent there is any conflict with New York law, "California has a materially greater interest in the determination." *Pitzer Coll.*, 8 Cal. 5th at 100; *see* FAC ¶¶ 138-40.[7] Defendant was founded in California in 2007 and maintains its headquarters here, as well as key executive and hundreds of employees. *Id.* ¶¶ 21-22, 25. Defendant acquired the Games at the direction of its California-based CEO and leadership team. *Id.* ¶ 23. California plainly has an interest in applying law to a California company that, at its executives' and employees' direction, were responsible for the Games and the misconduct at issue. And both Plaintiffs Dougherty and Camargo are California residents, and Plaintiff Garcia made the in-app purchases when he was a California resident. *Id.* ¶¶ 12-14. Indeed, the only connection between Plaintiffs' substantive claims and New York is that Defendant was acquired by its New York parent company. Accordingly, California law applies to Plaintiffs' challenges to Defendants' Terms. To the extent Defendant is permitted to raise choice of law for the first time on reply and shows that New York law differs from California law on any of these issues, the Court should still apply California law and hold that the dispute resolution provisions are unenforceable. *See Eiess*, 404 F. Supp. 3d at 1251; *Tura*, 2010 WL 11506428, at *8; *Pitzer Coll.*, 8 Cal. 5th at 100.

California unconscionability law requires both procedural and substantive unconscionability. *Heckman*, 120 F.4th at 680–81. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* In deciding procedural unconscionability, California courts "focus[ ] on the factors of oppression and surprise." *Id.* (citation omitted). The elements of oppression and surprise are "satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice. *Id.*

[7] Even if New York law applied, under choice of law principles, the outcome would be the same. *See Kassim v. CVS Albany, LLC*, 2022 WL 4357456, at *6 (E.D.N.Y. Sept. 20, 2022) ("New York's choice-of-law rules direct courts to evaluate the 'center of gravity' or 'grouping of contacts' with the purpose of establishing which state has the most significant relationship to the transaction and the parties.") (cleaned up).

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Surprise is also present when "the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id*. (cleaned up). As to substantive unconscionability, courts look for "overly harsh or one-sided" terms. *Id.* at 683.

Here, Plaintiffs challenge the enforceability of the delegation clauses for most of the same reasons the arbitration agreement overall is unenforceable. *See id.* at 688. ("The provisions of the arbitration agreement . . . that make the delegation clause unconscionable also serve to make the entire agreement unconscionable.").

## II. The Dispute Resolution Provisions Of The 2024 Terms, Including The Delegation Clause, Are Invalid And Unenforceable

### A. The 2024 Terms are unconscionable as explained in *Heckman.*

The Ninth Circuit already held in *Heckman* that an arbitration clause containing the New Era rules and delegation clause are both procedurally and substantively unconscionable. As in *Heckman*, the 2024 Terms contain oppressive features including "unilateral modification of the Terms" including the dispute resolution provisions "without prior notice." *Heckman*, 120 F.4th at 682 ("oppression is even more onerous when a clause pegs both the scope and procedure of the arbitration to rules which might change") (cleaned up); 2024 Terms § 15.5(11) ("We may update this Agreement, including the Arbitration Agreement, at our discretion"). And the New Era Rules and its delegation clauses are substantively unconscionable for the reasons explained by the Ninth Circuit. *Heckman*, 120 F.4th at 688 ("The provisions of the arbitration agreement and New Era's Rules that make the delegation clause unconscionable also serve to make the entire agreement unconscionable . . . [I]t is plain that it would be impossible for plaintiffs to present their claims on equal footing . . . . Forced to accept Terms that can be changed without notice, a plaintiff then must arbitrate under New Era's opaque and unfair Rules. As explained, the Rules contain multiple interrelated substantive provisions that overtly favor defendants.").

Defendant does not attempt to defend the enforceability of the New Era rules that *Heckman* considered and which were in effect when Defendant adopted the 2024 Terms. Instead, it points to the new version of New Era's Rules and suggests that *Heckman* is "superseded." *See* MTC at 20. Defendant, however, does not defend any set of alternate terms because it bizarrely contends "[n]o

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

such hypothetical mass arbitration has been filed"—even though Defendant previously argued that one had been filed, which preceded this litigation. *See* MTC at 20; FAC ¶ 159; Janove Decl. Ex. B. However, in assessing unconscionability, the Court would consider the New Era Rules when the contract was formed, because challenges to conscionability are "assessed at the time of formation only, and not at the time of enforcement." *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *5 (N.D. Cal. Sept. 4, 2024) (citing *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 506 (2024), *aff'd,* 2025 WL 2463742 (9th Cir. Aug. 27, 2025). Defendant should not be rewarded for choosing an unconscionable arbitration clause just because New Era changed the rules later.

Moreover, the Court need not wait and see if any "mass arbitration" actually is filed. "At the time of contract formation, it [wa]s predictable that a player could have a dispute with [Defendant] based on a company policy that applies across-the-board to *all* players, as occurred here, and will be caught up by" Zynga's mass arbitration provision. *See Pandolfi,* 2024 WL 4051754, at *6. Zynga makes over $1 million a day from these Games and $1 billion in revenue from its numerous users. FAC ¶¶ 8, 132. In any event, whichever version of the New Era rules apply, Defendant's 2024 Terms not only suffer from all of the same defects in *Heckman*, but are actually even *more* unconscionable, as demonstrated below.

**B. The dispute resolution provisions of the 2024 Terms are procedurally unconscionable.**

The 2024 Terms are a procedurally unconscionable contract of adhesion. *See Heckman*, 120 F.4th at 681–82. Even worse than *Heckman*, the new arbitration terms and its delegation clause come as a surprise to users who were told in the 2019 Terms that no such changes would be made other than in a "hand signed" writing. Ungberg Decl. Ex A ¶ 18. Consumers were entitled to place some reliance on these statements. So the imposition of a completely different dispute resolution mechanism with a delegation clause and other purported changes that do not follow them would come as a surprise. Further, the pop-up that Defendant used to impose the 2024 Terms does not say anything about changes to the agreement's dispute resolution provisions, it merely advises users that "we have revised our terms of service and privacy policy." Ungberg Decl. ¶ 26; *see also id.* ¶ 24 (simply stating "Our legal terms are changing on February 28, 2024" without further detail).

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

The delegation clause is also procedurally unconscionable "because it is hidden in the Terms of Service, incorporates [third-party arbitration] rules that are subject to change, and a layperson would be surprised to find that the delegation clause is subject to the batching provision." *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025) (citing *Heckman*, 120 F.4th at 682); *see Rios v. HRB Digital LLC,* 2025 WL 3003768, at *7 (N.D. Cal. Oct. 27, 2025) (consumers "would not reasonably anticipate [a] complex bellwether and batching scheme" or "that the identity of their yet-unknown attorneys, and the number of other claimants that the attorneys represent, could comprise a substantial obstructive hurdle in the path toward resolving their dispute").

The delegation clause also creates an additional layer of surprise and confusion. Although the 2024 Terms delegates the issue to "the arbitrator," this provides little clarity when the 2024 Terms require two different types of arbitration with two completely different arbitration providers depending on whether or not the Mass Arbitration rules are enforceable and apply. That is, the 2024 Terms do not clearly specify whether the unconscionability issues should be decided by a JAMS arbitrator or a New Era arbitrator. And even if a consumer understood that the applicable delegation clause was the one in the New Era Rules, that adds yet *another* layer of confusion: arbitrability issues are somehow "determined *solely* by the Neutral(s) provided by New Era ADR Inc," *see* 2025 Rules 2(z), but also might, at New Era's discretion, be assigned to a different Neutral to resolve arbitrability, *id*. 6(a)(vi)(3). Zynga's experienced lawyers have been unable to articulate any way to resolve these various conflicting delegation provisions, and consumers certainly cannot be expected to read the 2024 Terms, understand the potential applicability of New Era Rules, then visit New Era's website to make head or tails of this legal jargon, much less reconcile the various conflicting provisions.

**C. The dispute resolution provisions of the 2024 Terms are substantively unconscionable.**

New Era's modest updates to the Rules have not fixed the core problems that make them and their delegation clauses unenforceable under *Heckman*. The current version (last updated March 19, 2025 according to New Era's website, which may or may not be reliable) still retains many of

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

the same unconscionable provisions, including an asymmetrical arbitrator selection procedure, in which claimants participate collectively as one side, and defendants as the other side. *See Heckman*, 120 F.4th at 687-87; *see* 2025 Rules 2(j) & 6(b)(iii)(1); Janove Decl. Ex. D ("2022 Rules") Rules 2(j) & 6(b)(iii)(1).

The 2025 Rules also continue to impose "mass" arbitration protocols that fail to remedy numerous constitutional due process violations identified in *Heckman*, including a similar bellwether process that allows only three bellwether cases to proceed at a time. *See* 2025 Rules 6(b)(iii)(3)); 2022 Rules 6(b)(iii)(3). The new Rules, like in *Heckman*, continue to improperly allow "Precedent" from bellwethers to be applied to other cases. *See* 2025 Rules 2(y); 2022 Rules 2(y); *Heckman*, 120 F.4th at 684-85 (holding bellwether and application of precedent made delegation and arbitration clause unconscionable and observing that "New Era's Rules provide to defendants many of the protections and advantages of a class action, but provide to non-bellwether plaintiffs virtually none of its protections and advantages").[8] In fact, the 2024 Terms are even more onerous than *Heckman* and provide for additional delays because they contain an additional restriction, preventing New Era from even accepting demands from additional claimants until a first batch of 60 demands are decided. *See* 2024 Terms § 15.5(9) ("New Era shall not accept any additional Demands for Arbitration related to such Mass Arbitration until 60 days after the final resolution of all Bellwether Cases from the Initial Batch and the subsequent Settlement Conference provided for under the New Era Rules.").

This type of bellwether and batching, "read together" with the delegation clause, has a chilling effect on players." *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025); *Pandolfi*, 2024 WL 4051754, at *5 (finding bellwether provision substantively unconscionable where sequential rounds of arbitration created systemic delay) (citing *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041 (N.D. Cal. 2022)); *Rios*, 2025 WL 3003768, at *10 (same, observing that "[t]hat prospect of delay" itself may have a "chilling effect on [claimants],

[8] The 2025 Rules call the next step the "Precedent Opt-Out Process," but there is no option to "opt-out." Instead, a non-settling claimant has seven days after the settlement conference to distinguish the claimant's case from the bellwethers in a submission to the arbitrator. 2025 Rules 6(b)(iii)(5)(d); compare 2022 Rules 6(b)(iii)(4)(d)

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

deterring them from vindicating their rights."). Moreover, the mass arbitration procedures also "interfere with claimants' right to counsel of their choosing. By automatically imposing the bellwether procedure anytime 25 or more claimants are represented by the same or coordinated counsel, the mass arbitration provision may induce claimants to avoid the bellwether provision altogether by finding different counsel." *Rios*, 2025 WL 3003768, at *10.

Lastly, the delegation provision, is additionally unenforceable because of the "massive and obvious conflict of interest." *Heckman*, 120 F.4th 670 at 694 (VanDyke, J., concurring). It would ask a New Era neutral to "exhibit a superhuman resistance to ordinary human incentives to issue a ruling that sinks New Era's entire operation and his own career." *Id.*

**D. The 2024 Terms contain additional unconscionable and one-sided provisions.**

In addition to the incorporation of the New Era Rules, as modified by Defendant, the 2024 Terms contain many other substantive unconscionable provisions. It impermissibly prevents Plaintiffs from recovering the rights and remedies afforded them under California law. *See MacClelland*, 609 F. Supp. 3d at 1037 ("California courts have found substantive unconscionability where an arbitration clause limits the types of remedies that would be available under the statute, thus violating the "principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees."). The Terms artificially shorten the statute of limitations, requiring claims to be brought within two years rather than limitation period under Plaintiffs' California law claims—three years for CLRA and FAL claims, and four years for UCL. *See* § 15.5(7); *Pandolfi*, 2024 WL 4051754, at *11. The Terms also impermissibly waive punitive damages and cap Defendant's liability of "$500 or the amount you have spent on the Services at issue in your claim in the 24 months preceding the date your claim arose." *Id.* § 15.4; *see MacClelland*, 609 F. Supp. 3d at 1035. And the Terms purport to apply New York law, which Defendant claims would permit it to blatantly violate California consumer protection law that outlaws Defendant's false discounting schemes and other deceptive practices. *See, e.g.*, MTD, ECF No. 15, at 15 ("Plaintiffs' alleged false discount claims fail under New York law."). That argument should be rejected for the reasons stated in Part II.F in Plaintiffs' opposition to the motion to dismiss. If New York law applied as Defendant argues, Plaintiffs would lose the substantive protections of

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

California consumer protection law that proscribes false discounting, which violates California public policy. *See MacClelland*, 609 F. Supp. 3d at 1037.

Also, the 2024 Terms carve out from arbitration for intellectual property claims, permitting them to be brought in court. *See* § 10 ("Exclusion from Arbitration"). This is substantively unconscionable because it lacks mutuality: Zynga is far more likely to have claims against a player for misuse of IP rather than a player against Zynga. *See Zuckerman v. Charter Commc'ns, LLC*, 2024 WL 4871739, at *11 (S.D. Cal. Nov. 22, 2024) (carve-out from an arbitration clause for types of claims "'likely to be made by [defendant]'" unconscionable for lacking mutuality) (quoting *Ramirez*, 16 Cal. 5th at 534).

**E. The unconscionable provisions cannot be severed.**

The dispute resolution provisions of the 2024 Terms (including the delegation provision) are unconscionable. Because the delegation clause is therefore unenforceable, this Court should consider the unconscionability of the rest of the arbitration clause and find that it is also unenforceable. The unconscionable provisions in the 2024 Terms cannot be severed because unconscionability permeates the entire dispute resolution clause. *Heckman*, 120 F.4th 670, 688–89; *MacClelland*, 609 F. Supp. 3d at 1046 (refusing to sever unconscionable provisions of arbitration clause); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005–06 (9th Cir. 2021) (same).

In any event, the 2024 Terms provide that: "If any court or arbitrator determines that this Section 15.5(9) is void or unenforceable for any reason, or if New Era declines to administer any Mass Arbitration Dispute as a Mass Arbitration, then the Arbitration Agreement shall be deemed null and void in its entirety, and you and Take-Two shall be deemed not to have agreed to arbitrate such Disputes." This provision underscores the unconscionability of the whole clause: Defendant offers arbitration as a streamlined dispute resolution alternative, but imposes inequitable terms in the agreement and takes back the offer to arbitrate unless it can be done on unfair terms.[9]

[9] In addition, the class action waiver at Section 15.5(2) is part of the Arbitration Agreement (Section 15.5 of the 2024 Terms). So the class action waiver is null and void along with the rest of Section 15.5.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**F. The dispute resolution provided by the 2024 Terms is not an FAA "arbitration," so the *Discover Bank* rule applies.**

Regardless, the 2024 Terms and its complex mass arbitration protocol and New Era Rules are not an "arbitration" within the meaning of the FAA. That is because "the FAA simply does not apply to and protect the mass arbitration model set forth in … New Era's Rules," and this is only more true after accounting for Defendant's modifications to this Rules. *Heckman*, 120 F.4th at 689.

Because the FAA does not apply, the rule of *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) holding "that class action waivers in consumer contracts of adhesion are unconscionable under California law," is not preempted by the FAA. *Heckman*, 120 F.4th at 689. As a result, under *Discover Bank* the class action waiver in the 2024 Terms is unconscionable and unenforceable. *Id*. Therefore, Plaintiffs' claims can proceed on a class action basis.

**III. The Dispute Resolution Provisions Of The 2025 Terms, Including The Delegation Clause, Are Invalid And Unenforceable.**

The 2025 Terms, which Defendant contends apply to Plaintiff Dougherty because she did not opt-out of the 2025 Terms within 30 days, are also unconscionable and unenforceable.

**A. Plaintiff Dougherty validly opted out of the 2025 Terms.**

As a threshold matter, Plaintiff Dougherty validly opted out of the 2025 Terms by mailing her opt out notice on April 22, 2025. FAC ¶ 176; Janove Decl. ¶ 8. She then submitted an *additional* opt out notice in June 2025, after logging on to Toon Blast to access her User ID. FAC ¶ 176. Defendant completely ignores Dougherty's April 2025 opt-out. It instead mentions only Dougherty's June 2025 opt out and claims it was not timely because it was not submitted within 30 days of Dougherty "accepting" the 2025 Terms. *See* MTC at 16. Defendant does not deny receiving it, and it was expressly alleged in the FAC. Defendant chose to ignore it and cannot in Reply raise new arguments challenging the validity of the April 2025 opt out. In any event, both opt out notices were valid.

The April 2025 opt out contained all the information the Terms required, including name, address, email, and a clear signed statement that Plaintiff did not agree to the 2025 Terms' arbitration agreement. *See* Janove Decl. Ex. E. Although Section 17.5(3) provides that the Opt Out Notice should include "user ID number (if any) ***that you use in connection*** with the Services"

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

(emphasis added), Plaintiff did not use the User ID to play Defendant's Games. FAC ¶ 176. Again, User IDs were not even practically accessible by, let alone known to, users until Defendant updated its mobile applications because of the filed arbitrations. FAC ¶¶ 150–152. Since Plaintiff Dougherty never "used" this user ID "in connection" with the Games, by the Terms express terms, she did not need to include it.

Even if the User ID were technically required, Plaintiff Dougherty substantially complied with the opt out provision. Her April 2025 opt out notice had all the information Defendant needed to understand she did not want to be bound by the updated Terms, and she sent an opt out in June 2025 containing her User ID. There was "no wilful departure from the terms of the contract," and any defects have been "easily remedied or compensated, so that the promisee [defendant] may get practically what the contract calls for." *See Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*, 41 Cal. App. 5th 357, 364 (2019); *see also Glass v. Tradesmen Int'l, LLC*, 2020 WL 820655, at *14 (N.D. Ohio Feb. 19, 2020) (upholding arbitration opt out even though "not strictly compliant" with the opt out procedure).

**B. The 2025 Terms cannot apply retroactively.**

Defendant contends that the 2025 Terms apply retroactively: "This Arbitration Agreement applies to all Disputes between the parties whether the Dispute arose before or after the parties accepted this Agreement." 2025 Terms § 17.5(1). However, under California law, Defendant "was not entitled to unilaterally add such a [retroactive] provision here." *Ash v. Axos Bank*, 2024 WL 4195313, at *3 (S.D. Cal. Sept. 13, 2024). That is because "California courts have consistently reasoned that the implied covenant of good faith and fair dealing 'prevents a party from modifying an arbitration agreement once a claim has accrued or become known to it.'" *Id.* (alteration omitted) (citing, *inter alia*, *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (Ct. App. 2012)); *see also Eiess*, 404 F. Supp. 3d 1240, 1251 ("[T]he implied covenant of good faith and fair dealing would prevent USAA from retroactively applying contract changes to a customer claim that had already accrued."). As the California Court of Appeals explained in *Peleg*, if defendant could unilaterally change the arbitration clause that applied to already accrued claims it would allow the defendant "to manipulate the arbitration process, tailoring it to fit specific cases, either by making

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

the process more difficult or more expensive for the [plaintiff], or by revoking the Agreement in the belief that a judicial forum is preferable." *Peleg*, 204 Cal. App. 4th at 1459.

Defendant's actions here are a stark illustration of the "vice" *Peleg* warned against: after months of informal dispute resolution and the Ninth Circuit's *Heckman* decision, and *after* the arbitration claims were filed, Defendant unilaterally imposed an updated arbitration clause to its own advantage. The Court should therefore refuse to apply the 2025 Terms retroactively. *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 62 (Ct. App. 2013) ("Simply put, the revised agreement is irrelevant because Integrated may not apply it retroactively to claims that existed before the revision was imposed.").

### C. Defendant did not provide adequate notice that the 2025 terms applied retroactively, even to claims already filed in arbitration.

Even if the Court did not reject for bad faith Defendant's attempt to make the new dispute resolution terms apply retroactively, Defendant failed to provide adequate notice of the updated clause and its application to already-accrued claims. In the rare instances in which a new arbitration clause can be applied retroactively, the law requires more than simply meeting the standards for notice in general contract formation. *Ash*, 2024 WL 4195313, at *4. Defendant misplaces reliance on California-law standards for inquiry notice and assent when users initially sign up for a service rather than when a new contract purports to retroactively apply a new dispute resolution procedure. *See* MTC at 12; *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (users initially signing up for a website service); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 700 (2d Cir. 2023) (signing up for a mobile app). But here, Defendant—after months of informal dispute resolution and after others filed arbitrations in JAMS—updated its arbitration clause to apply retroactively to already accrued claims, and even claims that were already filed in arbitration. The only notice Defendant provided for either game was "By clicking ACCEPT, you agree to our Terms of Service and you acknowledge that our Privacy Policy applies."[10] *See* MTC at 5.

Nowhere does this notice inform users that the arbitration clause has changed or that the existing terms have been revised. Nowhere does this notice inform users that not only has the

[10] The link to the 2025 Terms in the Toy Blast app did not even work, so Toy Blast players could not actually access the Terms. FAC n. 28.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

arbitration clause changed, but those changes apply to already-accrued claims and even to all users who had pending arbitrations. Accordingly, "the content of the notice given here was inadequate to require, by means of a unilateral contract modification, arbitration of claims that had already accrued." *Ash*, 2024 WL 4195313, at *4. As *Ash* explained, under California law, "'in the context of unilateral modification of an arbitration agreement," the standard for notice is more exacting: "the implied covenant of good faith and fair dealing requires an employer to provide reasonable and express notice to employees *regarding the applicability of such modifications to already existing claims.*'" *Id.* at *4 (court's emphasis) (quoting *Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 232 (Ct. App. 2019). Thus, in *Ash*, mere notice about a "Change in Terms" that "[were] silent as to whether [Defendant's] modifications would affect already accrued or known claims" did not "provide[] effective notice to accountholders as to the modification's effect on such claims." *Ash*, 2024 WL 4195313, at *4. The notice here is worse: it does not even mention a change, and just tells users that "By Clicking ACCEPT, you agree to the Terms of Service." *See* MTC at 5. Because Defendant failed to show that it provided adequate notice of the retroactive application of the 2025 Terms, they do not apply to Plaintiffs' already accrued claims. And because Defendant did not provide adequate notice, whether it happened to secure assent is irrelevant. *See, e.g.*, *Berman*, 30 F.4th at 856 (holding that contract formation requires both notice *and* assent).

**D. The 2025 Terms are procedurally unconscionable.**

The 2025 Terms and their delegation clause are procedurally unconscionable for many of the same reasons as the 2024 Terms. They are part of an adhesive contract, they both contain and refer to complex legal jargon that is indecipherable to the average person, beginning on page 21 of a 27 page contract, including onerous informal dispute resolution requirements (discussed below) and requiring a user to somehow understand the interplay between a normal arbitration procedure and what might happen if they become part of a "mass arbitration" under the Terms if 25 or more claims are filed. *See Rios*, 2025 WL 3003768, at *7 (holding procedurally unconscionable for surprise a lengthy, 21-page, single-spaced contract and the mass arbitration protocol that applied to 25 or more claims "submitted by coordinated counsel").

The Terms are also procedurally unconscionable because they were deployed without

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

adequate notice and in bad faith after Defendant learned of the claims, in a deliberate attempt to stop claimants like Plaintiffs here from vindicating their rights under consumer protection statutes. Defendant updated its arbitration clause on the date that the tolling agreement between the Arbitration Claimants expired and then updated the mobile applications to foist the updated Terms on claimants after the arbitrations had been filed. FAC ¶ 157; Ungberg Decl. ¶ 39. Defendant even attempted to trick arbitration claimants into "agreeing" to the 2025 Terms by claiming it needed claimants to provide User IDs only available in the app before it could make any progress towards resolving their claims. FAC ¶¶ 167–171. And the 2025 Terms still create confusion over to whom its delegation provision is actually delegating authority. They provide that "the arbitrator" or "the process arbitrator" will decide threshold disputes, but offer no solution as to who will decide whether a threshold dispute over whether a process arbitrator can even be appointed goes to "the arbitrator" or "the process arbitrator" to rule on its own jurisdiction.

**E. The 2025 Terms are substantively unconscionable.**

The 2025 Terms are substantively unconscionable for many of the same reasons that apply to the 2024 Terms, including (a) a shortened time-period in which to bring claims, § 17.5(7); (b) a waiver of punitive damages,§ 17.4; (c) a $500 or max spend cap on liability; *id.*; (d) mass arbitration procedures that interfere with claimants' right to counsel of their choosing, *id.* § 17.5(6); (e) the purported application of New York law, which prevents Plaintiffs from obtaining remedies available to them under California law; § 17.1; and (f) the one-sided carve out for intellectual property claims, § 17.5(9) . *See* Part II.C & D, *supra*. The 2025 Terms' retroactive application of its arbitration clause also "is procedurally unconscionable under California law." *See Heckman*, 120 F.4th 670 at 683.

In addition, the 2025 Terms contain a substantively unconscionable unilateral modification provision, permitting Defendant to modify the entire Terms, including the arbitration clause, "at any time" and "at our discretion." *See* 2025 Terms § 3 ("We reserve the right to modify this Agreement, in whole or in part, at any time."); *id.* § 10 ("We may modify this Agreement, including the Arbitration Agreement, at our discretion as provided under Section 3."). This is substantively unconscionable. *See Garcia v. Start Yoshi, Inc.*, 2024 WL 2274524, at *5 (N.D. Cal. May 17, 2024) ("In *Ingle*, the Ninth Circuit held that a provision of an arbitration agreement 'affording [the

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

defendant employer] the unilateral power to terminate or modify the contract is substantively unconscionable.'") (court's alteration) (quoting *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003)).

The 2025 Terms and delegation clause are also substantively unconscionable because of the new, one-sided, informal dispute resolution process, which was designed to and does impose a significant barrier for any plaintiff to obtain relief. To even challenge the delegation clause, a user needs to comply with Defendant's new "Pre-Arbitration Informal Dispute Resolution" procedure, which requires finding a "user ID Number," which is not required to play the game and was infeasibly difficult to obtain until Defendant reprogrammed its games to frustrate Plaintiff and the arbitrations. FAC ¶¶ 150–152, 168–169; *see* Terms § 17.5 ¶ 4. It also requires for each purchase, "the date of the transaction, a related order number (if any), and the game, Virtual Item, or Service purchased." Terms § 17.5 ¶ 4. Defendant makes money from micro-transactions—where players like Plaintiffs make frequent in-app purchasers. FAC ¶¶ 12-14, 71, 76. As a result, this information is not readily obtainable to a user, as Defendant is surely aware. To illustrate, Plaintiff Dougherty was only able to obtain a partial list of her many transactions, which exceed 465 purchases. *See* FAC ¶ 12; App'x A. In addition, the Terms require that an individual "identify the law or regulation and describe the facts specific to the circumstances that resulted in the claimed violation." § 17.5 While many facts are in Defendant's control, asking a user to essentially plead a detailed complaint before they are even allowed to initiate arbitration makes it impossible for anyone to arbitrate without legal assistance.

Moreover, to the extent a user could even understand or comprehend the mass arbitration protocol, the arbitration protocol interferes with a user's right to counsel. If a user wants to be assigned an individual arbitrator to handle its dispute, she or he cannot retain counsel that might represent other users, because the Terms' mass arbitration protocol would be triggered. The mass arbitration provision could therefore "induce claimants to avoid the bellwether provision altogether by finding different counsel." *See Rios*, 2025 WL 3003768, at *10. And "would-be claimants may struggle to find counsel willing to represent a single or small number of similarly situated clients seeking small claims against [defendant]." *Id.* (citing *Pandolfi*, 2024 WL 4051754, at *11); *see*

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

*Pandolfi,* 2024 WL 4051754, at *6 ("[T]he practical reality is that claims based on a company-wide policy affecting consumers will often be brought by law firms that represent a multitude of claimants, especially when the dollar amounts are small."). In addition, this batching provision "has a built-in asymmetry" because "[w]hile it is predictable that a player will have claims that will trigger the [batching] provision, it is far from clear that Defendant would ever have claims that would trigger the provision." *Id.* at *7.

In addition, the delegation clause is substantively unconscionable because it appears to allow for important merits decisions to be made by a "Process Arbitrator." *See id.* at *8 ("The issue of arbitrability is a core merits determination and is hardly a ministerial decision that one would expect the Process Arbitrator to decide. . . . Finally, it is worth noting that, if the Avia Defendants were correct, *i.e.*, the Process Arbitrator has the power to adjudicate gateway issues of arbitrability, then there would be serious due process concerns.").

**F. The unconscionable provisions cannot be severed.**

The Court should decline to enforce any of the 2025 Terms' dispute resolution procedures and not just the ones outlined above, as just like with the 2024 Terms, there are multiple unconscionable provisions and "these provisions are designed to structurally and systematically make arbitration an inferior forum." *See Pandolfi*, 2024 WL 4051754, at *13 (N.D. Cal. Sept. 4, 2024). "Because unconscionability permeates the entire arbitration agreement, severance would be an ineffective half-measure or, potentially, a reward for bad faith corporate actors." *Rios*, 2025 WL 3003768, at *12. Further, the Court should not ignore Defendant's history of abusive and unconscionable dispute resolution provisions and conduct. Defendant has now unilaterally deployed three consecutive sets of Terms, which all contain clearly one-sided and unconscionable dispute resolution provisions, and the latest imposed on users *after* arbitration claims had already been filed.

**IV. The Court Should Deny The Motion To Transfer**

Finally, the Court should reject Defendant fallback attempt to avoid accountability for its actions. Even if the Court were not inclined to sever the entire dispute resolution provisions of the Terms in their entirety and the forum selection clause remained, the Court should still not enforce the forum selection clause. Defendant is a California company that has harmed California

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
500 7th Ave., 8th Fl.
New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

consumers by engaging in conduct that violates California law. It would be manifestly unjust and counter to the public policy of this state to allow them to avoid justice here by transferring the claims out of state and arguing that New York law should apply—and that because New York law applies, Defendant, a California company, can willfully violate well-established California public policy and consumer protection laws. *See* Part II.D, *supra*.

"The forum selection clause and choice of law provision must be read jointly because they are 'inextricably bound up' together." *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 429 (N.D. Cal. 2018). Thus, a forum selection clause paired with a choice of law clause are unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083–84 (9th Cir. 2009) (observing that a "forum selection clause, [which] together with the choice of law provision, effect a waiver of statutory remedies provided by the CLRA in violation of the anti-waiver provision, as well as California's 'strong public policy' to 'protect consumers against unfair and deceptive business practices'") (citing *America Online, Inc. v. Superior Court of Alameda County (Mendoza),* 90 Cal. App. 4th 1, (2001)) *see Lang*, 347 F. Supp. 3d at 430–31 (invalidating "forum selection and related choice of law provisions" because "it required Plaintiff to relinquish unwaivable rights under California law"); *Kooiman v. Siwell, Inc*., 2021 WL 899095, at *5 (C.D. Cal. Jan. 4, 2021) ("Here, the [forum selection] clause, as written and in combination with the choice-of-law provision, violates public policy against allowing unwaivable rights to be diminished."); *see also* Cal. Civ. Code §1751 ("Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void."). Because the New York choice of law and forum selection clause forces plaintiffs to waive their rights to remedies under California consumer law the Court should hold that the forum selection clause in Defendant's Terms are unenforceable.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to compel arbitration or transfer venue.

979 Osos St., Ste. A5
San Luis Obispo, CA 93401
500 7th Ave., 8th Fl.
New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

DATED: November 4, 2025

Respectfully submitted,

By: *___________/s/ Raphael Janove___*
Raphael Janove

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
500 7th Avenue, 8th Fl.
New York, NY 10018
Telephone: (646) 347-3940

Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

*Attorneys for Plaintiffs and the Proposed Classes*