William P. Donovan, Jr. (155881)
wdonovan@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

Attorneys for Defendant Zynga Inc.

(*Additional Signatures Below*)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| CHERYLL DOUGHERTY, DELIA CAMARGO, and LAWRENCE GARCIA, individually, as private attorneys general, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZYNGA, INC.<br><br>Defendant. | Case No. 3:25-cv-04051-SI<br><br>**DEFENDANT ZYNGA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Judge: Hon. Susan Illston<br>Date: December 19, 2025<br>Time: 10:00 a.m.<br>Courtroom: 1 |

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs' Claim That They Were "Bombarded" by "Blanket" False Ads Does Not Establish Their Standing or Meet Rule 9(b)'s Particularity Requirements ..... 2

B. Plaintiffs Were Not Damaged Because They Received What They Paid For ..... 4

C. The CLRA Does Not Apply to Virtual Currency and Items ..... 5

D. Plaintiffs' Opposition Demonstrates Why They Cannot Seek Injunctive Relief ..... 6

E. Plaintiffs' Unjust Enrichment Claim Is Duplicative and Should Be Dismissed ..... 8

F. Alleged Addictiveness Cannot Form the Basis of any Claim ..... 8

G. Plaintiffs Do Not Establish That the Choice of Law Provision Is Unenforceable ..... 9

H. Plaintiffs' VPPA Claim Fails ..... 11

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Afriyie v. NBCUniversal Media, LLC*,
775 F. Supp. 3d 791 (S.D.N.Y. 2025)....................14

*Angelilli v. Activision Blizzard, Inc.*,
781 F. Supp. 3d 691 (N.D. Ill. Apr. 23, 2025)....................9

*Arrix LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021)....................8

*Ballard v. Insomniac Holdings, LLC*,
No. 25-cv-00811-SI, 2025 WL 1696558 (N.D. Cal. June 17, 2025)....................12

*Balzer v. Wal-Mart Stores, Inc.*,
No. CV 14-9779-JFW, 2015 WL 13828418 (C.D. Cal. Feb. 25, 2015)....................8

*Beauchamp v. City of Long Beach*,
730 F.3d 986 (9th Cir. 2013)....................5

*Belcastro v. Burberry Ltd.*,
No. 16-cv-1080 (VEC), 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017)....................10

*Boyd v. SunButter LLC*,
762 F. Supp. 3d 931 (C.D. Cal. 2025)....................11

*Brown v. Entm't Merchs. Ass'n*,
564 U.S. 786 (2011)....................8

*C.W. v. Epic Games, Inc.*,
No. 19-cv-03629-YGR, 2020 WL 5257572 (N.D. Cal. Sept. 3, 2020)....................6

*Cantu v. Sunrun Inc.*,
No. 23-CV-974-JO-AHG, 2023 WL 11795670 (S.D. Cal. Nov. 22, 2023)....................13

*Caroll v. Chick-Fil-A, Inc.*,
No. 23-cv-00314-RFL, 2024 WL 1091193 (N.D. Cal. Feb. 13, 2024)....................12

*Courtright v. Epic Games, Inc.*,
No. 2:24-CV-04055-BCW, 2025 WL 2319148 (W.D. Mo. Aug. 11, 2025)....................9

*Discover Bank v. Super. Ct.*,
134 Cal. App. 4th 886 (2005)....................10

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020)....................5, 6

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022) ....................6

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................14

*Fairbanks v. Sup. Ct.*,
46 Cal. 4th 56 (2009) ....................5

*Ferrington v. McAfee*,
No. 10-cv-01455-LHK, 2010 WL 3910169 ....................5

*Hodges v. Comcast Cable Commc'ns, Inc.*,
21 F.4th 535 (9th Cir. 2021) ....................7

*Jenkins v. Cnty. Of Riverside*,
398 F.3d 1093 (9th Cir. 2005) ....................11

*John v. AM Retail Group, Inc.*,
No. 17-cv-727-JAH (BGS), 2018 WL 1400718 (S.D. Cal. Mar. 20, 2018) ....................14

*Khan v. Coinbase, Inc.*,
A172063, 2025 WL 2985378 (Cal. Ct. App. Oct. 23, 2025) ....................7, 8

*Khoha v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................11

*King v. Bumble*,
393 F. Supp. 3d 856 (N.D. Cal. 2019) ....................10

*Knapp v. Art.com*,
No. 16-cv-00768-WHO, 2016 WL 3268995 (N.D. Cal. June 15, 2016) ....................4

*Kulp v. Munchkin, Inc.*,
678 F. Supp. 3d 1158 (C.D. Cal. 2023) ....................7

*LeGrand v. Abbott Labs.*,
655 F. Supp. 3d 871 (N.D. Cal. 2023) ....................3

*Loomis v. Slendertone Distrib. Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019) ....................7

*Mai v. Supercell Oy*,
648 F. Supp. 3d 1130 (N.D. Cal. 2023) ....................4

*McGill v. Citibank N.A.*,
393 P.3d 85 (Cal. 2017) ....................7, 8

*Minor v. Favorite World, Inc.*,
No. CV 24-4425-JFW, 2024 WL 4834951 (C.D. Cal. Sept. 17, 2024) ....................14

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Nedlloyd Lines B.V. v. Sup. Ct.*,
3 Cal. 4th 459 (Cal. 1992)....................................................................................10

*Ochoa v. Zeroo Gravity Games LLC*,
No. CV 22-5896-GW-Asx, 2023 WL 4291650 (C.D. Cal. May 24, 2023)..........................5, 6

*Peleg v. Neiman Marcus Grp*.,
204 Cal. App. 4th 1425 (Cal. Ct. App. 2012) ..............................................................9

*Pileggi v. Washington Newspaper Publ'g Co., LLC,*
146 F.4th 1219 (D.C. Cir. 2005)....................................................................12, 13

*Rodriguez v. Sony Comput. Entm't Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) .......................................................................14

*Rothman v. Equinox Holdings, Inc.*,
2:20-cv-09760-CAS-MRWx, 2021 WL 124682 (C.D. Cal. Jan. 13, 2021) .............................3

*S & J Rentals, Inc. v. Hilti, Inc.*,
294 F. Supp. 3d 978 (E.D. Cal. 2018)...............................................................10

*Salazar v. Nat'l Basketball Assoc*.,
No. 1:22-cv-07935, 2025 WL 2830939 (SDNY Oct. 7, 2025)..............................................14

*Salustri v. Dell, Inc.*,
No. EDCV 09-02262 SJ (DTBx), 2010 WL 11596554 (C.D. Cal. Apr. 27, 2010)................10

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) .......................................................................14

*Schneider v. Colgate-Palmolive Co.*,
677 F. Supp. 3d 91 (N.D.N.Y. 2023)...................................................................11

*Sellers v. Bleacher Report, Inc.*,
No. 23-cv-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) ......................................12

*Sinatro v. Barilla Am., Inc.*,
635 F. Supp. 3d 858 (N.D. Cal. 2022) ....................................................................7

*Smith v. Keurig Green Mountain, Inc.*,
393 F. Supp. 3d 837 (N.D. Cal. 2019) ....................................................................4

*Sterk v. Redbox Automated Retail*,
770 F.3d 618 (7th Cir. 2014) .......................................................................14

*Suski v. Marden-Kane, Inc*.,
No. 21-CV-04539-SK, 2022 WL 3974259 (N.D. Cal. Aug. 31, 2022)....................................5

*Swearingen v. Stan Cruz Nat'l, Inc*.,
No. 13-cv-04291-SI, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) .......................................3

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Tryan v. Ulthera, Inc.*,
No. 17-cv-02036-MCE-CMK, 2018 WL 3955980 (E.D. Cal. Aug. 17, 2018) ..........................7

*Vizcarra v. Michaels Stores, Inc.*,
710 F. Supp. 3d 718 (N.D. Cal. 2024) ..........................2, 3

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..........................13

*Woulfe v. Universal City Studios LLC*,
No. 2:22-cv-00459-SVW-AGR, 2022 WL 18216089 (C.D. Cal. Dec. 20, 2022)..........................6

*In re Zoom Video Commc'ns Inc. Privacy Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ..........................4

**Statutes**

18 U.S.C. § 2701(a)(4)..........................13

N.Y. Gen. Bus. Law §§ 349–50..........................10, 11

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................1, 2, 3, 4

U.S. Const. amend. I ..........................1, 8, 9



McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

## I. INTRODUCTION

Plaintiffs' Complaint [ECF No. 33][1] and Memorandum in Opposition to Defendant's Motion to Dismiss ("Opp'n") [ECF No. 40] use sensational language – *e.g.*, "rampant" fraud, "addictive game design" and "dark patterns" – in a transparent attempt to camouflage that their claims fail as a matter of law and are before this Court because of Plaintiffs' counsel's forum shopping after receiving an unfavorable ruling from JAMS.

Unable to allege which purportedly misleading advertisements caused them to purchase allegedly falsely discounted items in the Games, Plaintiffs claim that they were "bombarded" with "blanket" false discount advertisements. In so doing, they implicitly acknowledge that they cannot plead which specific ads deceived each Plaintiff, and how each was deceived. Plaintiffs' opposition thus confirms that Plaintiffs lack standing to assert their false discount claims and those claims also fail under Rule 9(b).

Likewise, Plaintiffs cannot bring a claim under the CLRA because, contrary to Plaintiffs' assertion, the weight of case law in this district holds that the CLRA does not apply to the virtual items at issue here. Nor can Plaintiffs seek injunctive relief because they do not allege they still play the Games and the conduct of which they complain affects only a discrete group of Game players.

Plaintiffs also assert that the Games are addictive, but when challenged, claim they do not assert a standalone cause of action based on addictiveness. Plaintiffs cannot have it both ways. Addictiveness claims have no basis in the statutes under which Plaintiffs sue and run afoul of the First Amendment. Thus, Plaintiffs' addictiveness allegations should be dismissed or stricken.

Plaintiffs also have not met their burden of showing that the Terms of Service's forum-selection clause violates a fundamental policy of the state of California. Thus, this case should proceed under New York law, which does not recognize false discount claims.

Finally, Plaintiffs' VPPA claim fails because, contrary to Plaintiff's assertions, they are not "consumers" and Zynga is not a "video tape service provider" under the statute. Even if they were, Zynga's delivery of ads at player request constitutes non-actionable "order fulfillment" and

[1] Unless otherwise indicated, all abbreviations herein are the same as in Zynga's opening brief in support of its motion to dismiss ("Mot.").

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

"request processing." Zynga also did not impermissibly disclose Plaintiffs' PII and Plaintiffs lack standing to assert a VPPA claim covering all Zynga games.

If Plaintiffs are not compelled to arbitrate or this case is not transferred to the Southern District of New York, the Complaint should be dismissed with prejudice in its entirety.

## II. ARGUMENT

### A. Plaintiffs' Claim That They Were "Bombarded" by "Blanket" False Ads Does Not Establish Their Standing or Meet Rule 9(b)'s Particularity Requirements

As Plaintiffs state, "[a]llegations like the period when the items were purchased, the source from which they were purchased, a description of the items, a description of the relevant advertising, and pictures depicting them have been held to be sufficient to satisfy Rule 9(b)." (Opp'n at 8) (citing cases). But the Complaint does not meet this standard. The Complaint provides examples of *different* offers, bundles, and packs that appear in the Games (FAC ¶¶ 44, 45, 48, 51, 53), but does not tie those examples to the purchases that each individual Plaintiff supposedly made.

Plaintiffs try to circumvent this shortcoming by contending they were "bombarded" with supposedly "blanket" false discounts. (Opp'n at 8-12.) But the Complaint does not allege a "blanket" practice. Rather, the Complaint details *different* Bundles containing *different* sets of coins and items, including: (1) "Beginner's Bundles" that are offered to new players (FAC ¶¶ 43-45); (2) "Team Packs" where players can share benefits with other players (*id.* ¶ 48); (3) "Progress Packs" with dynamic rewards based on a player's in-Game progress (*id.*); and (4) promotions tied to holidays such as Mother's Day (*id.* ¶ 53). Plaintiffs further contradict their "blanket" practice claim by alleging that Zynga makes *personalized* offers by using "a variety of data points about an individual user to present a 'sale' that is most likely to cause the player to make a purchase, including 'the combinations of virtual items and discount percentages that are most likely to increase revenues received by an operator of the game networking system.'" (Opp'n at 14) (quoting FAC ¶ 85)

For these reasons, the principal case Plaintiffs cite in support of their "blanket" practice argument is inapposite. In *Vizcarra v. Michaels Stores, Inc.*, the plaintiff alleged a single misleading 20% off coupon that was perpetually available on a craft supply store's website, which could be applied to every item on the site. 710 F. Supp. 3d 718, 730 (N.D. Cal. 2024). A blanket

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

discount that is "always" available is distinguishable from the Complaint's allegation of different discounts available during different times. As the court noted, "[i]f Ms. Vizcarra's complaint had asserted that advertised discounts specific to individual products were false or misleading, then product-specific individualized investigation might be required. But Ms. Vizcarra alleges a *blanket* pricing practice in which always-available coupons offer a perpetual discount of at least 20% off the 'regular' list prices of *all* items." *Id.* (emphasis in original). Here, Plaintiffs allege different specific discounts and, thus, Plaintiffs must tie their alleged in-Game purchases to specific discounts to satisfy Rule 9(b).

Plaintiffs also cite *Swearingen v. Stan Cruz National, Inc*. for the proposition that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." No. 13-cv-04291-SI, 2016 WL 4382544, at *8 (N.D. Cal. Aug. 17, 2016) (Illston, J.). But the fact issue there involved how much sugar was in a specific juice purchased by the plaintiff. *Id.* Here, Plaintiffs do not connect their specific purchases to the allegedly false discounts.

Plaintiffs' reliance on *LeGrand v. Abbott Laboratories* is likewise misguided. 655 F. Supp. 3d 871 (N.D. Cal. 2023). There, the plaintiff identified the specific nutrition shake she purchased, the specific language she was misled by, and how she was misled (a prominently placed "Complete, Balanced Nutrition for everyday health" label belied the fact that each drink contained 22 grams of artificial sugars). *Id.* at 894-96. Plaintiffs do not provide such specificity.

Instead, this case is like *Rothman v. Equinox Holdings, Inc.*, in which the complaint was dismissed because the plaintiff did not allege he saw the refund policy at issue. 2:20-cv-09760-CAS-MRWx, 2021 WL 124682, at *5 (C.D. Cal. Jan. 13, 2021). Plaintiffs attempt to distinguish *Rothman*, arguing that "each Plaintiff alleges that she or he repeatedly viewed and relied on specific misstatements made by Defendant, including false discounts and false countdown timers." (Opp'n at 10) (citing FAC ¶ 12). But that paragraph pertains solely to Ms. Dougherty, does not identify the ads she viewed (identifying only purchases she made), or how she was influenced by them. The allegations about the other Plaintiffs are even less detailed. (FAC ¶¶ 13-14.)

Plaintiffs also rely on their "bombardment" argument in a futile attempt to distinguish *In Zoom Video Communications Inc. Privacy Litigation*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal.

2021). (Opp'n at 10-11.) But again, the Complaint alleges that the Games are presented different offers to Plaintiffs at different times and with different terms. (FAC ¶¶ 30-55; Opp'n at 14.) The Complaint does not tie specific ads to Plaintiffs' purchases – claiming that the exemplar ads are representative of the ads plaintiffs saw. That is insufficient under Rule 9(b). *See, e.g.*, *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 843 (N.D. Cal. 2019) ("[A] fraud claim must state the who, what, when, where, and how of the alleged conduct" and why the conduct complained of was "false or misleading"). Thus, Plaintiffs' false discount claims fail for this reason alone.

### B. Plaintiffs Were Not Damaged Because They Received What They Paid For

Plaintiffs' discount claims also fail because Plaintiffs received what they paid for. (Mot. at 6-8). As in *Mai v. Supercell Oy*, the Complaint focuses on the Games' alleged addictive features. 648 F. Supp. 3d 1130, 1136 (N.D. Cal. 2023).[2] The Complaint does not allege that any Plaintiff was compelled to make any purchase based on any specific promotion described in the Complaint or that those purchases – which list the number of coins and items in each bundle – were otherwise false or not available at the advertised price.[3] Instead, as in *Mai*, Plaintiffs claim they made purchases because of addictive "dark patterns" or other tactics (FAC ¶¶ 4, 69-87), which is insufficient.

The string of "outlet store" cases Plaintiffs cite also does not help them. (Opp'n at 12.) The complaints in those cases alleged with specificity the statements each Plaintiff relied on in making their individual purchases. *See, e.g.*, *Knapp v. Art.com*, No. 16-cv-00768-WHO, 2016 WL 3268995, at *6 (N.D. Cal. June 15, 2016) (finding that plaintiff established standing under the FAL because he alleged he "would not have purchased the product if it were not for the '40% off sale' advertised on the www.art.com website . . . this [] allegation is sufficient . . . even assuming the

---

[2] Plaintiffs note that the underlying district opinion in *Mai* was vacated. *See Mai v. Supercell Oy*, 648 F. Supp. 3d 1130, 1136 (N.D. Cal. 2023), *vacated and remanded*, No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024). However, the Ninth Circuit vacated and remanded only because it found that Plaintiffs also lacked constitutional standing, and the rest of the district court's analysis was superfluous as a result. The district court's reasoning remains valid.

[3] Instead, Plaintiffs compare differences in the pricing and items contained in the $4.99 Team Pack and $19.99 Super Bundle. (FAC ¶¶ 48-52.) But it is not a valid apples-to-apples comparison and does not demonstrate that there are any irregularities with what is being offered. The discounted "Team Pack" provides the player with longer infinite lives and infinite lives for 10 of the player's teammates, which the Super Bundle does not. And there is no allegation that the infinite lives bonuses are not valuable or useful in the Games.

former [that he understood the price to be a discount from the typical prices] is not.") Plaintiffs make no such particularized allegations.

**C. The CLRA Does Not Apply to Virtual Currency and Items**

Zynga's Motion demonstrated that the CLRA is inapplicable to the in-Game coins, packs, and other items. Plaintiffs deride this argument as "metaphysical." (Opp'n at 12.) But the CLRA's plain language and case law interpreting it distinguish between the tangible and the intangible.

The CLRA "applies only to transactions for the sale or lease of consumer 'goods' or 'services' as those terms are defined in the act." *Fairbanks v. Sup. Ct.*, 46 Cal. 4th 56, 65 (2009) (citing Cal. Civ. Code § 1761(a)-(b).) The statute defines "Goods" as "*tangible* chattels" and "Services" as "including services furnished in connection with the sale or repair *of goods*." *Id.* (emphasis added); *see also Ferrington v. McAfee, Inc.,* No. 10-cv-01455-LHK, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) ("while the CLRA must be liberally construed, courts have not expanded it beyond its express terms"); *Beauchamp v. City of Long Beach*, 730 F.3d 986, 990 (9th Cir. 2013) (noting that California courts have "narrowly construed statutes that impose penalties 'per violation' or 'per offense' where appropriate").

Plaintiffs concede that the virtual coins and items they purchased are not "goods" as defined by the statute, which refers only to "tangible chattels." (Opp'n at 12-13.) Most decisions in this District have held that virtual coins and items also are not "services" under the CLRA. *See, e.g.*, *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1045-46 (N.D. Cal. 2020) ("[T]he virtual currency at issue is not a good or service" and virtual "supplies" and "ammunition" in a video game are "digital" rather than "tangible"); *Suski v. Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 WL 3974259, at *8 (N.D. Cal. Aug. 31, 2022) (holding that, for services "in connection with" the sale of goods to qualify under the CLRA, the goods must be tangible) (citing *Meyer v. Cap. Al. Grp.*, 2017 WL 5138316, at *6 (S.D. Cal. Nov. 6, 2017). The cases Plaintiffs cite acknowledge that the opinions cited above are the "majority view." *Ochoa v. Zeroo Gravity Games LLC*, No. CV 22-5896-GW-Asx, 2023 WL 4291650, at *13 (C.D. Cal. May 24, 2023).

Plaintiffs' cases are also factually distinguishable. *Doe v. Roblox Corp.*, on which *Ochoa* and Plaintiffs rely, involved a complex multiplayer "online metaverse" where the highly individual



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

virtual items at issue were created *by players*, bought and sold amongst each other in an online marketplace, and implicated a host of complex issues not applicable here, such as copyright concerns. 602 F. Supp. 3d 1243, 1251, 1262-64 (N.D. Cal. 2022). And *C.W. v. Epic Games*, *Inc.* held that it was "plausible" that the popular game Fortnite "crosses over" from software product to a "good" (not a *service* as Plaintiffs allege) under the CLRA because Fortnite "is a colorful virtual world where millions of people meet, play, talk, compete, dance, and even attend concerts and other cultural events . . . and that it is plausible that this may be a cross-over product . . . ." No. 19-cv-03629-YGR, 2020 WL 5257572, at *4 (N.D. Cal. Sept. 3, 2020) (citation modified). By contrast, the Games do not create a three-dimensional world or metaverse that could fall within the flawed reasoning in *C.W.*

Plaintiffs also try to distinguish *Doe v. Epic Games*, by arguing that, unlike in *Doe*, Game players do not go through the intermediate step of buying in-game coins with money to then make in-game purchases of items with that virtual currency but rather buy the in-Game items directly. (Opp'n at 13). That is a distinction without a difference. In *Doe*, the court specifically held that "although 'supplies' and 'ammunition' may sound tangible, they are, as plaintiff himself agrees, 'digital.'" 435 F. Supp. 3d at 1046. And the intermediary step of buying in-game "coins" to purchase in-game "items" is exactly what happens in the Games. Players can buy individual coins to use in the Games, and players can also buy item bundles, which include coins. (FAC ¶¶ 44, 45, 48, 51, 53.)

The Games and all virtual items therein are also provided to players on a licensed basis under the Terms of Service. *See* Ungberg Decl. Ex. B § 2.2; Ungberg Decl. Ex. C. § 2.2. Courts have held such limited licenses are not covered by the CLRA. *See, e.g.*, *Woulfe v. Universal City Studios LLC,* No. 2:22-cv-00459-SVW-AGR, 2022 WL 18216089, at *15 (C.D. Cal. Dec. 20, 2022) (holding that a limited license to stream a digital movie was neither a good nor a service under the CLRA). For this additional reason, the CLRA claim fails.

**D. Plaintiffs' Opposition Demonstrates Why They Cannot Seek Injunctive Relief**

Plaintiffs do not allege they are still making purchases in the Games. That they "may" do so in the future or that Zynga "may" change the Games in the future to make them more "deceptive" or "addictive" is irrelevant. (Opp'n at 14-15.) Plaintiffs do not address the numerous cases Zynga cited for this proposition. *See, e.g.*, *Loomis v. Slendertone Distrib. Inc.*, 420 F. Supp. 3d 1046, 1077

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

(S.D. Cal. 2019) (finding plaintiff lacked standing to seek injunctive relief under the UCL where she alleged only that she "would consider" buying another device from defendant without specifying the particular product); *Tryan v. Ulthera, Inc.*, No. 17-cv-02036-MCE-CMK, 2018 WL 3955980, at *9-10 (E.D. Cal. Aug. 17, 2018) (holding that plaintiff lacked standing to seek injunctive relief where plaintiffs did not allege they would use defendant's product in the future).

Plaintiffs also do not dispute that they are now aware of any allegedly "misleading" practices, which is another reason to preclude injunctive relief. *See, e.g.*, *Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1166 (C.D. Cal. 2023) (holding that plaintiffs lacked standing to pursue injunctive relief because they did not plead they were in the market for a future purchase, and if they were they were now aware of the undisclosed safety risks associated with the product in question); *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 875 (N.D. Cal. 2022) (finding that, because plaintiffs were now aware of the locations where the products were manufactured, plaintiffs could not allege they would be misled by the representation in the future).

Further, any relief would not benefit the public at large because the Games' advertisements only reach "a group of individuals similarly situated to the Plaintiff." *McGill v. Citibank N.A.*, 393 P.3d 85, 90 (Cal. 2017). Plaintiffs argue that the Ninth Circuit's decision in *Hodges v. Comcast Cable Communications, Inc.*, 21 F.4th 535 (9th Cir. 2021) – in which the court *denied* injunctive relief because it benefited a discrete class of persons – supports injunctive relief here. (Opp'n at 15.) But Plaintiffs' citation to dicta in *Hodges* falls short because any in-Game advertising is directed only to people who have downloaded and played the Games, and *not* the general public.

Plaintiffs' reliance on *Khan v. Coinbase, Inc.*, A172063, 2025 WL 2985378 (Cal. Ct. App. Oct. 23, 2025), is equally misguided. That case involved a cryptocurrency trading platform with tens if not hundreds of millions of users. In denying the motion to dismiss, the court emphasized that the plaintiff was seeking *only* injunctive relief: "[T]he only relief Khan seeks in this action is an injunction to bar Coinbase from continuing to operate . . . in a manner that violates consumer protection laws. Khan does not seek damages or equitable relief focused on his own injuries or the injuries suffered by an identifiable group of Coinbase customers." *Id.* at *5. By contrast, the primary relief Plaintiffs seek is monetary damages for themselves. *See McGill*, 393 P.3d at 90 ("Relief that

has the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or to a group of individuals similarly situated to the plaintiff – does not constitute public injunctive relief"). Thus, Plaintiffs cannot seek injunctive relief.

**E. Plaintiffs' Unjust Enrichment Claim Is Duplicative and Should Be Dismissed**

Plaintiffs do not dispute that unjust enrichment claims that are duplicative of other defective claims must be dismissed. (Mot. at 10.) "[C]ourts generally dismiss quasi-contract claims that are merely duplicative of UCL, FAL, and CLRA claims, which already provide for restitution as a remedy." *Balzer v. Wal-Mart Stores, Inc.*, No. CV 14-9779-JFW (PJWx), 2015 WL 13828418, at *4 (C.D. Cal. Feb. 25, 2015) (collecting cases). Thus, by Plaintiffs' implicit admission, their unjust enrichment claim fails to the extent their FAL, UCL, and CLRA claims fail.

**F. Alleged Addictiveness Cannot Form the Basis of any Claim**

1. Plaintiffs' Appeals to the Games' Alleged Addictiveness are Irrelevant

Unable to establish their standing or to plead fraud with the requisite particularity, Plaintiffs spill much ink on the Games' supposedly addictive and manipulative "dark patterns." Yet they concede their claims are not, and cannot be, based on addictiveness. (Opp'n at 15-17.) Plaintiffs' addictiveness allegations are not tied to the alleged falsity of the advertising and only seek to distract from the Complaint's other deficiencies described above. Thus, Plaintiffs' addiction allegations cannot resuscitate Plaintiffs' defective claims.

2. Plaintiffs Cannot Escape the First Amendment

Plaintiffs also try (unsuccessfully) to classify the Games as "commercial speech." (Opp'n at 17.) The only case Plaintiffs cite for this proposition involved a false advertising claim where a manufacturer paid a rating guide to give high ratings to the manufacturer's products. *Arrix LLC v. NutriSearch Corp.*, 985 F.3d 1107 (9th Cir. 2021). This commercial bribery scheme bears no relation to Plaintiffs' allegations.

Plaintiffs also fail to address well-established case law holding that the First Amendment extends to video games, even those that may not have a singular, defined message. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011). "Addictiveness" is a pejorative term for engaging content that is protected by First Amendment, and removing the engaging elements would

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

fundamentally alter the constitutionally protected in-game experience. "This is about as persuasive as saying the First Amendment would not be implicated by a mandate that authors not end chapters on cliffhangers because moving a chapter heading does not affect a book's content." *Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 702 (N.D. Ill. Apr. 23, 2025).

Another recent case is instructive. In *Courtright v. Epic Games, Inc.*, plaintiffs brought numerous claims (including negligence, fraud, and violation of a state merchandising practices act) against a group of game developers. No. 2:24-CV-04055-BCW, 2025 WL 2319148, at *1 (W.D. Mo. Aug. 11, 2025). In allegations strikingly similar to Plaintiffs' (FAC ¶¶ 69-88), the plaintiffs in *Courtright* alleged that the defendants "intentionally design their Products to be addictive by incorporating and utilizing traditional game theory tactics, operant conditioning (e.g., dark patterns, skinner boxes, feedback loops, rubber-banding), artificial intelligence, and reward systems, along with patented designs containing addictive features, systems, mechanisms, and shared technology, in their video gaming product designs. . . ." *Id.* at *6. The court dismissed those allegations because "the alleged defects that the Plaintiff identifies . . . are all elements of the video game at issue" and thus cannot form the basis of any claim under the First Amendment. *Id.* at *6-8 ("Plaintiff's claims, in essence, seek to hold the Developer Defendants liable because their video games are made too entertaining by these 'defective' elements. This is content-based liability that is not permitted."). This Court should do the same.

### G. Plaintiffs Do Not Establish That the Choice of Law Provision Is Unenforceable

Plaintiffs do not dispute that Take-Two, Zynga's parent company, is headquartered in New York. Instead, Plaintiffs argue that "Take-Two is not a party to this litigation [and] is not directly responsible for the Games . . . ." (Opp'n at 18.) Their argument ignores that Take-Two is a party to the Terms and the location of a headquarters has long been held to constitute a reasonable basis for selecting a forum. *See, e.g.*, *Peleg v. Neiman Marcus Grp. Inc.*, 204 Cal. App. 4th 1425, 1447 (Cal. Ct. App. 2012). Indeed, the Terms are titled the "Take-Two Terms of Service."

Moreover, California's "lenient" reasonable basis standard recognizes that identifying a single governing law promotes ease of administration and predictability. *King v. Bumble*, 393 F. Supp. 3d 856, 865 (N.D. Cal. 2019) ("Given the wide spread of [app] users, [Defendant] has



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

an interest in identifying a single body of law to govern its users in different states."). That is why Take-Two utilizes the same terms of service across its subsidiaries. (Ungberg Decl. ¶ 27.)

Plaintiffs also fail to address California's strong public policy favoring the enforcement of choice of law provisions. *See Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal. 4th 459, 468-70 (Cal. 1992). Plaintiffs baldly assert that New York law is contrary to a fundamental policy of California solely because New York courts have interpreted their robust analogous consumer protection provisions (N.Y. G.B.L. §§ 349-50) differently than California courts where, as here, the alleged injury is "based on the subjective value assigned to a missing bargain." *Belcastro v. Burberry Ltd.*, No. 16-cv-1080 (VEC), 2017 WL 5991782, at *3-4 (S.D.N.Y. Dec. 1, 2017). But Plaintiffs do not identify a statute or judicial decision stating that this difference is contrary to a strong and overriding California public policy that mandates overriding the choice of New York law. *See Discover Bank v. Super. Ct.*, 134 Cal. App. 4th 886, 893 (2005) ("We are not aware of any bright-line rules for determining what is and is not contrary to a fundamental policy of California").

In addition, "[c]ourts should not refrain from applying the chosen law merely because it would lead to a different result than would be obtained under California law." *Salustri v. Dell, Inc.*, No. EDCV 09-02262 SJ (DTBx), 2010 WL 11596554, at *4 (C.D. Cal. Apr. 27, 2010) (citing Restatement (Second) of Conflict of Laws). The court in *Salustri* held that, although Texas law did not have identical statutes to the CLRA, UCL, and FAL, analogous Texas law had "identical" procedural protections (such as an anti-waiver provision), and that "Plaintiff is not waiving his right to the protections under the CLRA because Texas law provisions identical protections. *Id.* at *5-6 ("Because Texas provides protection and remedies for consumers who are subject to false advertising and unfair competition, it is not contrary to California public policy to enforce the choice-of-law provision and require Plaintiff to assert claims under Texas law."); *see also S & J Rentals, Inc.*, 294 F. Supp. 3d at 984 (enforcing Oklahoma choice of law clause in action bring claim under the UCL even though Oklahoma has no direct equivalent to the UCL").

Here, Plaintiffs have not met their burden to show that New York's analogous consumer protection laws do not provide Plaintiffs' sufficient protections. To the contrary, federal courts in both California and New York have noted the similarities between California's and New York's

consumer protection laws and interpreted them in tandem. *See, e.g.*, *Boyd v. SunButter LLC*, 762 F. Supp. 3d 931, 941 (C.D. Cal. 2025) (noting the CLRA and GBL §§ 349-50 "similarly proscribe[s] deceptive acts or practices and false advertising in the conduct of any business" and analyzing them together because they both employ the same "reasonable consumer" test); *Schneider v. Colgate-Palmolive Co.*, 677 F. Supp. 3d 91, 99-100 (N.D.N.Y. 2023) (addressing together plaintiffs' claims under the N.Y. GBL, UCL, CLRA, and FAL that they had been misled by owners of skincare brand  about the ingredients of sunscreen because under all four statutes "a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances").

In short, Plaintiffs have not demonstrated that New York's robust consumer protection laws violate a fundamental California policy even if applying New York law would lead to a different result in this case. Thus, New York law should apply.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**H. Plaintiffs' VPPA Claim Fails**

Finally, Plaintiffs cannot save their VPPA claim. Implicitly acknowledging how weak their claim is, they argue that the Court should ignore certain materials on which Plaintiffs themselves rely. (Opp'n at 19-20; FAC ¶¶ 88-142.) But when material is integrated into a complaint or is public, the Court can (and here should) take notice of those materials on a motion to dismiss. *See Khoha v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Indeed, the material that Plaintiffs now ask the Court to ignore demonstrates why their VPPA claim fails.

1. <u>Plaintiffs are Not "Consumers" Under the VPPA</u>

As an initial matter, Plaintiffs do not address Zynga's argument that Garcia is not a current player of Toon Blast (Mot. at 21) and therefore waived any argument that Garcia is a "consumer" under the VPPA. *See Jenkins v. Cnty. Of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (holding that party abandoned claims by not raising them in opposition to motion to dismiss). Plaintiffs instead argue that they are "consumers" because Plaintiffs allegedly made in-app purchases *unrelated to the advertising they were shown* and the VPPA does not require them to be "renters of purchasers of pre-recorded video content". (Opp'n at 22.) Those arguments fail.

The VPPA was enacted to regulate brick and mortar video stores. Under Plaintiffs' theory, if one walked into a Blockbuster Video store, purchased a Snickers bar at the counter, and walked out, that person is a "consumer" under the VPPA. That argument is absurd. As the D.C. Circuit observed in *Pileggi v. Washington Newspaper Publishing Co., LLC*, "If acquiring any good or service sufficed to convey a cause of action with such expansive remedies, a plaintiff could purchase a single ticket at a baseball game and then sue the baseball team's owner after watching a free video on the team's website years later." 146 F.4th 1219, 1234 (D.C. Cir. 2005) (noting too that "distinguishing website visitors based on whether they also happened to purchase another good or service offered by the business could well prove unadministrable").

Plaintiffs instead cite *Ballard v. Insomniac Holdings, LLC,* to argue that the purchase need not itself be of "audio-visual" material. No. 25-cv-00811-SI, 2025 WL 1696558, at *4 (N.D. Cal. June 17, 2025) (Illston, J.) But *Ballard* proves Zynga's point. *Ballard* describes a judicial split as to whether courts require the purchase to be of audio-visual materials. *Id.* Both *Ballard* and Plaintiffs' other authority, *Sellers v. Bleacher Report, Inc.*, No. 23-cv-00368-SI, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023), are website pixel/cookie cases in which the plaintiffs alleged that the defendants disclosed to third parties the identity of the audio-visual materials viewed by the plaintiffs.

Here, by contrast, in-Game purchases of virtual items are *unrelated* to any video advertisements. The alleged disclosure of advertisement video information is not connected to Plaintiffs' decision to make a purchase in the Game. (FAC ¶ 104) (showing advertisements for third party products such as La-Z-Boy, not in-app offers). As a result, Plaintiffs are not "consumers" under the VPPA, and the claim should be dismissed for this reason alone. *Caroll v. Chick-Fil-A, Inc.*, No. 23-cv-00314-RFL, 2024 WL 1091193, at *2 (N.D. Cal. Feb. 13, 2024) (dismissing VPPA claim where plaintiff did not allege an exchange of information to watch video content).

2. <u>Zynga is not a "Video Tape Service Provider"</u>

Zynga exposed another fundamental flaw in Plaintiffs' VPPA claim, which is that Zynga is not a "video tape service provider" under the VPPA. (Mot. at 21-22.) In opposition, Plaintiffs do not dispute Zynga's arguments. Rather, they assert that, because Zynga is paid to allow third parties

to place advertisements – that are *not* all videos – in Zynga's apps, Zynga must be a "video tape service provider." (Opp'n at 22-23.) That is not what the statute says.

A "video tape service provider" is defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2701(a)(4). By contrast, Zynga offers a free-to-play game that does *not* require watching any video. That users can *elect* to watch videos does not transform Zynga into a "video tape service provider." *See Pileggi*, F.4th at 1237; *Cantu v. Sunrun Inc*., No. 23-CV-974-JO-AHG, 2023 WL 11795670, at *2 (S.D. Cal. Nov. 22, 2023) (holding that, to constitute a "video tape service provider", the defendant must be "not only be *substantially involved* in the conveyance of video content to consumers" but also that its operations must be "*significantly tailored* to serve that purpose") (emphases added); *In re Vizio, Inc. Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (holding that the term "business" in the VPPA "connotes a particular field of endeavor, *i.e.*, a focus of the defendant's work"). These cases apply because watching a "prerecorded video" is ancillary to Zynga's primary offering. Indeed, Plaintiffs do not even allege that all (or even most) of the advertisements shown in-Game are "prerecorded videos." Because Zynga is not a "video tape service provider," the VPPA claim should be dismissed for this additional reason.

3. <u>Zynga's Conduct Constitutes "Order Fulfillment" and "Request Processing"</u>

Plaintiffs do not dispute that third-party advertising partners choose which ad to present to a user, and thus Zynga did not disclose to the third parties which ads a Plaintiff may have watched. (Mot. at 19-20.) Instead, Plaintiffs only argument that the VPPA's "order fulfillment" or "request processing" safe harbors do not apply is that player's do not request ads in "any meaningful sense" because they are incentivized with in-game benefits to watch an ad. (Opp'n at 21). Offering an incentive is not coercion, and Plaintiffs cite no legal authority in support of their position. The in-Game advertisements are delivered only to fulfill a player's request, which is quintessential "order fulfillment" and "request processing" subject to the VPPA's safe harbor. *See Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015); *Sterk v. Redbox Automated Retail*, 770 F.3d 618, 625 (7th Cir. 2014).



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

4. Zynga Has Not Impermissibly Disclosed Plaintiffs' PII

As Zynga explained, the Toon Blast app *does not collect personal information* of the kind that is subject to the VPPA. (Mot. at 18-19.) Indeed, Plaintiffs do not allege *what* information of theirs was allegedly shared with *which* third parties. This defect alone distinguishes this case from the cases on which Plaintiffs rely.

Plaintiffs cite a notice in the Toon Blast app as an admission of liability in the hope that the Court will not analyze the Complaint's actual *factual* allegations. (Opp'n at 19-20.) But it is Plaintiffs' burden to allege that Zynga shared their personal information and with whom. They have not done so. Plaintiffs' failure to plead what information *of theirs* was allegedly shared and with whom makes it impossible for the Court to evaluate the ordinary person test, which is increasingly being used by Courts to interpret the VPPA. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017); *Salazar v. Nat'l Basketball Assoc.*, No. 1:22-cv-07935, 2025 WL 2830939 (S.D.N.Y. Oct. 7, 2025), *appeal filed*, No. 25-2478 (2d Cir. Oct. 9, 2025). This failure too requires dismissal.

5. Plaintiffs Lack Standing to Assert a VPPA Claim as to Other Zynga Games

Finally, Plaintiffs cannot assert VPPA claims as to other Zynga games. The Court can, and should, ignore Plaintiffs' attempt to add factual allegations in its opposition related to how Zynga's other apps work. *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("A court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition"). The Complaint is devoid of allegations that Toon Blast's delivery of ads operates the same in all other Zynga apps. This omission is why the court in *Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791 (S.D.N.Y. 2025), limited claims to the specific apps used by the plaintiff.

Plaintiffs' authorities do not require a different result. In *John v. AM Retail Group, Inc.*, No. 17-cv-727-JAH (BGS), 2018 WL 1400718, at *5 (S.D. Cal. Mar. 20, 2018), and *Minor v. Favorite World, LLC*, No. CV 24-4425-JFW (AJRx), 2024 WL 4834951, at *3 (C.D. Cal. Sept. 17, 2024), the allegations allowed the court to conclude that there *may be* similar forms of harm across different apps. By contrast, the Complaint contains no allegation of similarities amongst Zynga's apps. Thus, if the VPPA claim survives – which it should not – it should be limited to the Games.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

## III. CONCLUSION

For the foregoing reasons, if Plaintiffs are not compelled to arbitrate or this case is not transferred to the United States District Court for the Southern District of New York, then the Court should dismiss the Complaint with prejudice.

Dated: November 25, 2025

Respectfully submitted,

*/s/ William P. Donovan, Jr.*

William P. Donovan, Jr. (SBN 155881)
McDERMOTT WILL & SCHULTE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 277-4111
Fax: (310) 277-4730
wdonovan@mwe.com

Andrew B. Kratenstein (*pro hac vice*)
Chris Combs (*pro hac vice*)
McDERMOTT WILL & SCHULTE LLP
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Fax: (212) 547-5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O'Toole (*pro hac vice*)
McDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700
eotoole@mwe.com
*Counsel for Defendant Zynga, Inc.*