UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUGHERTY *et al.*,<br>Plaintiffs,<br>v.<br>ZYNGA, INC.,<br>Defendant. | Case No. 1:26-cv-02772-PAE |

# DEFENDANT ZYNGA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

**MCDERMOTT WILL & SCHULTE LLP**

Andrew B. Kratenstein
Chris Combs
1 Vanderbilt Avenue
New York, NY 10017
(212) 547-5400
David Saunders (*pro hac vice* forthcoming)
Emilie O'Toole (*pro hac vice* forthcoming)
444 West Lake Street
Chicago, IL 60606
(312) 372-2000

*Attorneys for Defendant Zynga, Inc.*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

- I. THE PARTIES AND THE GAMES ..... 2
- II. PLAINTIFFS' ALLEGATIONS ..... 3
- III. PROCEDURAL HISTORY ..... 4

ARGUMENT ..... 5

- I. LEGAL STANDARD ..... 5
- II. NEW YORK LAW APPLIES ..... 6
- III. PLAINTIFFS' FALSE DISCOUNT CLAIMS FAIL ..... 8
  - A. New York Law Does Not Recognize Plaintiffs' Alleged Injury ..... 9
  - B. Plaintiffs Do Not Allege Which Advertisements They Relied Upon ..... 10
  - C. Plaintiffs' Unjust Enrichment Claim Fails ..... 11
  - D. Plaintiffs Cannot Seek Injunctive Relief ..... 12
- IV. PLAINTIFFS' CLAIMS ALSO FAIL UNDER CALIFORNIA LAW ..... 13
  - A. Plaintiffs' California Claims Are Not Pled with Particularity ..... 13
  - B. Plaintiffs Were Not Injured ..... 14
  - C. The CLRA Does Not Recognize Claims Involving Intangible Digital Goods ..... 14
- V. PLAINTIFFS' ADDICTION ALLEGATIONS DO NOT GIVE RISE TO A CLAIM ..... 15
  - A. Plaintiffs Do Not Bring an Addictiveness-Based Claim ..... 15
  - B. Plaintiffs' Addictiveness Allegations are Barred by the First Amendment ..... 16
- VI. PLAINTIFFS' VPPA CLAIM FAILS ..... 18
  - A. The FAC Fails to Plead That Personally Identifiable Information was Disclosed ..... 19
  - B. Plaintiffs Fail to Meet the "Ordinary Person" Standard ..... 20
  - C. Any Disclosure was Permitted Under the VPPA ..... 22
  - D. Plaintiffs are not "Consumers" ..... 22
  - E. Zynga is Not a "Video Tape Service Provider" ..... 24
  - F. Plaintiffs Lack Standing as to Other Zynga Games ..... 25

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afriyie v. NBCUniversal Media, LLC*,
775 F. Supp. 3d 791 (S.D.N.Y. 2025)....25

*Anderson v. City of Hermosa Beach*,
621 F.3d 1051 (9th Cir. 2010)....17

*Angelilli v. Activision Blizzard, Inc.*,
781 F. Supp. 3d 691 (N.D. Ill. Apr. 23, 2025)....17

*In re Arris Cable Mod. Consumer Litig.*,
No. 17-cv-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018)....13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5

*Belcastro v. Burberry Ltd.*,
No. 16-cv-1080 (VEC), 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017)
(*Belcastro II*)....9

*Belcastro v. Burberry Ltd.*,
No. 16-cv-1080 (VEC), 2017 WL 744596 (S.D.N.Y. Feb. 23, 2017)....9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5, 20, 22

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)....12

*Berryman v. Reading Int'l, Inc.*,
24 Civ. 750 (PAE), 2026 WL 699835 (S.D.N.Y. Mar. 12, 2026)....19, 20

*Brown & Brown, Inc. v. Johnson*,
25 N.Y.3d 364 (N.Y. 2015)....8

*Brown v. Entm't. Merchs. Ass'n.*,
564 U.S. 786 (2011)....16

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
208 F. Supp. 3d 494 (E.D.N.Y. 2016)....8

*Caroll v. Chick-Fil-A, Inc.*,
No. 23-cv-00314-RFL, 2024 WL 1091193 (N.D. Cal. Feb. 13, 2024)....23

*Coffee v. Google, LLC*,
No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ........................................16

*Colpitts v. Blue Diamond Growers*,
527 F. Supp. 3d 562 (S.D.N.Y. 2021).......................................................................11

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)...........................................................................................5

*DaCorta v. AM Retail Grp., Inc.*,
No. 16-cv-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018).....................................9

*De Leon v. DraftKings, Inc.*,
25-cv-644 (DLC), 2025 WL 3551627 (S.D.N.Y. Dec. 11, 2025) ..........................................16

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .......................................................................15

*Ebin v. Kangadis Food Inc.*,
No. 13 Civ. 2311 (JSR), 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013)................................10

*Ellis v. Cartoon Network*
803 F.3d 1251 (11th Cir. 2015) ..................................................................................23

*Fairbanks v. Sup. Ct.*,
46 Cal. 4th 56 (2009) ...............................................................................................14

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
414 F.3d 325 (2d Cir. 2005)..........................................................................................6

*GemShares, LLC v. Kinney*,
No. 17 Civ. 844 (CM), 2017 WL 2559232 (S.D.N.Y. June 2, 2017) .......................................5

*Golden v. NBCUniversal Media, LLC*,
22 Civ. 9858 (PAE), 2025 WL 2530689 (S.D.N.Y. Sept. 3, 2025),
*aff'd*, No. 25-226, ECF No. 45.1 (2d Cir. Apr. 23, 2026) (summary order)......................19, 21

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150, 163 (S.D.N.Y. 2023)...................................................................24

*Greene v. Clean Rite Ctrs., LLC*,
714 F. Supp. 3d 134 (E.D.N.Y. 2024) .........................................................................12

*Henry v. Major League Baseball Advanced Media L.P.*,
Nos. 24 Civ. 0144 (GHW) (GWG), 24 Civ. 06270 (GHW) (GWG), 25 Civ.
00777 (GHW) (GWG), 2025 WL 3717068 (S.D.N.Y. Dec. 23, 2025)................................7, 8

*Hesse v. Godiva Chocolatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020)....................12

*Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Grp. of Boston*,
515 U.S. 557 (1995)....................17

*In re iPhone App. Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013)....................13

*Irvine v. Kate Spade & Co.*,
No. 16-cv-7300 (JMF), 2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017)....................9

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)....................13

*King v. Bumble Trading, Inc.*,
393 F. Supp. 3d 856 (N.D. Cal. 2019)....................7

*Lee v. Springer Nature Am., Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. 2025)....................24

*Madden v. Midland Funding, LLC*,
237 F. Supp. 3d 130 (S.D.N.Y. 2017)....................7

*Mai v. Supercell Oy*,
648 F. Supp. 1130 (N.D. Cal. 2023)....................14, 16

*Mai v. Supercell Oy*,
No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024)....................14, 15

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................18, 20

*McCracken v. Verisma Sys.*,
91 F.4th 600 (2d Cir. 2024)....................11

*Meyer v. Cap. Al. Grp.*,
2017 WL 5138316 (S.D. Cal. Nov. 6, 2017)....................15

*Mindspirit, LLC v. Evalueserve Ltd.*,
346 F. Supp. 3d 552 (S.D.N.Y. 2018)....................8

*Ministers & Missionaries Benefit Bd. v. Snow*,
26 N.Y.3d 466 (2015)....................6

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015)....................18

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192 (2d Cir. 2013)....................5

*Nelson v. MillerCoors*,
LLC, 246 F. Supp. 3d 666 (E.D.N.Y. 2017)....................11

*Pileggi v. Wash. Newspaper Publ'g Co., LLC*,
146 F.4th 1219 (D.C. Cir. 2025)....................23

*Rothman v. Equinox Holdings, Inc*,
No. 2:20-cv-09760-CAS-MRWx, 2021 WL 124682 (C.D. Cal. Jan. 13, 2021)....................13

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024)....................23

*Salazar v. Paramount Glob.*,
133 F.4th 642 (6th Cir. 2025), *cert. granted*, 223 L. Ed. 2d 577 (Jan. 26, 2026)....................23

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999)....................9, 16

*Smith v. Apple, Inc.*,
583 F. Supp. 3d 554 (S.D.N.Y. 2022)....................10

*Snyder v. Phelps*,
562 U.S. 443 (2011)....................16

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir.), *cert. denied*, 146 S. Ct. 885 (2025)....................20, 21

*Stevens & Co. LLC v. Espat*,
24-cv-5223, 2025 WL 950989 (S.D.N.Y. Mar. 28, 2025)....................6, 7

*Suski v. Marden-Kane, Inc.*,
No. 21-cv-04539-SK, 2022 WL 3974259 (N.D. Cal. Aug. 31, 2022)....................15

*United States v. Aquart*,
92 F.4th 77 (2d Cir. 2024)....................6

*United States v. Moseley*,
980 F.3d 9 (2d Cir. 2020)....................6, 8

*In re Vizio Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................24

*Weaver v. Chrysler Corp.*,
172 F.R.D. 96 (S.D.N.Y. 1997)....................10

*Wiggins v. Unilever U.S., Inc.*,
684 F. Supp. 3d 127 (S.D.N.Y. 2023)....................5

*In re Zoom Video Commc'ns Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021)....................13

**Statutes**

18 U.S.C. § 2710....................1, 19, 22, 24

Cal. Bus. & Prof. Code § 1750 *et seq*....................1, 14

Cal. Bus. & Prof. Code § 17200 *et seq.*....................1

Cal. Bus. & Prof. Code § 17500 *et seq.*....................1

**Other Authorities**

Fed. R. Civ. P. 9(b)....................5, 11, 13

Fed. R. Civ. P. 12(b)(1)....................5, 25

Fed. R. Civ. P. 12(b)(6)....................5, 22, 25

## PRELIMINARY STATEMENT

If the Court does not compel arbitration, it should dismiss Plaintiffs' First Amended Complaint (the "FAC") for multiple reasons.

*First*, the parties formed a valid contract with an enforceable New York choice-of-law clause. Applying New York's choice-of-law rules, that clause should be enforced. New York courts enforce choice-of-law clauses. New York – where Zynga Inc.'s ("Zynga's") parent company, Take-Two Interactive Software, Inc. ("Take-Two"), is headquartered – has a reasonable relationship to the dispute and applying New York law does not violate public policy.

*Second*, because New York law applies, this Court should dismiss Plaintiffs' California state-statutory claims under the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) (the "UCL"), the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*) (the "FAL"), and the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) (the "CLRA"). Plaintiffs' common-law claims should also be dismissed because New York law does not recognize the type of subjective "false bargain" injury Plaintiffs allege here nor do Plaintiffs plead their claims with the requisite particularity.

*Third*, even if California law applies – it does not – Plaintiffs' UCL, CLRA, and FAL claims fail because they too are not pled with the requisite particularity and are otherwise deficient, such as improperly applying the CLRA to digital items.

*Fourth*, Plaintiffs' addiction allegations have no basis in the laws under which Plaintiffs sue and run afoul of the First Amendment.

*Fifth*, Plaintiffs' claim under the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), fails because the FAC fails to allege that any personally identifiable information was impermissibly disclosed, Plaintiffs are not "consumers", and Zynga is not a "video tape

service provider." Plaintiffs also lack standing to assert VPPA claims concerning all Zynga games because they have not pleaded that they watched videos in Games other than Toon Blast.

Thus, if Plaintiffs are not compelled to arbitrate, the FAC should be dismissed.

## BACKGROUND

### I. THE PARTIES AND THE GAMES

Zynga is a video game developer and publisher, founded in 2007 and headquartered in San Mateo, California. (FAC ¶¶ 17, 21.) In May 2022, Zynga became a wholly-owned subsidiary of Take-Two, which is headquartered in New York. (*Id.* ¶ 2; Declaration of Andrew Ungberg, dated April 23, 2026 ("Ungberg Decl.") ¶ 3.)

Zynga publishes the Games. (FAC ¶ 2.) Primarily played on mobile devices, the Games are tile-matching puzzle games, in which players advance through each level by selecting groups of matching tiles in a certain number of turns to clear the board. (*Id.* ¶¶ 30-33.)

To aid with more challenging levels, players can purchase "Coins," which they can then spend on additional lives, extra moves, or special items known as "Boosters" such as cartoon bombs and rockets players can use to blast through obstacles. (*Id.* ¶¶ 34-37.) Players can also purchase "Bundles" that include various combinations of Coins, Boosters, and other bonus items, such as unlimited lives for a set time period. (*Id.* ¶ 38.) Players are regularly presented with time-limited offers of discounts or special sales. (*Id.* ¶ 40.)

Plaintiffs Cheryll Dougherty ("Dougherty") and Delia Camargo ("Camargo") allege they are California residents. (*Id.* ¶¶ 12-13.) Dougherty alleges she currently plays Toon Blast and previously played Toy Blast. (*Id.* ¶ 12.) She also alleges that she "recalls watching video advertisements in Toon Blast within the past two years." (*Id.*) Camargo alleges she plays Toon Blast "about three times a month" and has played the Game for about eight years. (*Id.* ¶ 13.)

Plaintiff Lawrence Garcia ("Garcia") alleges that he was a California resident until August 2024. (*Id.* ¶ 14.) He alleges that, while a resident of California, he made in-app purchases and watched pre-recorded video content in Toon Blast. (*Id.* ¶¶ 14-15.)

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that the Games use "false and deceptive advertising tricks to artificially inflate the perceived worth of the bundle of items players purchase." (*Id.* ¶ 39.) According to the FAC, the time-limited discounts are offered perpetually, or – because no competitors sell similar products for the Games – the discounted prices are not actually discounted or on sale from any original price. (*Id.* ¶¶ 40-55.) Plaintiffs allege that these practices violate the UCL, the FAL, and the CLRA, and also assert common-law fraud and unjust enrichment. (*Id.* ¶¶ 179-245.) Dougherty and Garcia also bring a claim under the VPPA. (*Id.* ¶¶ 235-45.) Plaintiffs seek compensatory and actual damages, statutory damages, punitive damages, civil penalties, injunctive, declaratory, and equitable relief, costs, attorneys' fees, and interest. (*Id.* at 50-51.)

The FAC alleges that Plaintiffs have each downloaded at least one of the Games and have made in-Game purchases. (*Id.* ¶¶ 16) Dougherty claims that she previously made in-Game purchases in Toy Blast, a game which she says she no longer plays, and provides a general list of some of the purchases she alleges to have made. (*Id.* ¶ 12, App'x A.) Camargo and Garcia "estimate[]" making some amount of in-Game purchases in Toon Blast in the past. (*Id.* ¶¶ 13-14.) Plaintiffs' in-Game purchases allegedly "included purchases of the various types of packs and sale items described" in the FAC. (*Id.*)

The FAC contains no other allegations about Plaintiffs' supposed Game playing or in-Game purchases. The FAC's "Factual Allegations" section does not mention Camargo and mentions Dougherty and Garcia only briefly to allege that they watched pre-recorded video content

in the Games. (*Id.* ¶¶ 106, 122.) The FAC otherwise makes no attempt to tie any of Plaintiffs' alleged Game playing to the FAC's generalized allegations. (*Id.* ¶¶ 30-122.)

## III. PROCEDURAL HISTORY

As explained in Zynga's accompanying motion to compel arbitration, on July 30, 2024, Plaintiffs' counsel sent Take-Two a demand letter asserting the false discount claims now asserted in the FAC. (Declaration of Andrew B. Kratenstein, dated April 24, 2026 ("Kratenstein Decl.") ¶ 3, Ex. A.) After mediation failed, on March 24, 2025, Plaintiffs' counsel filed 746 individual Demands for Arbitration (the "Demands") with JAMS. (*Id.* ¶ 11.) After JAMS designated a Process Administrator under the JAMS Mass Arbitration Procedures, Plaintiffs' counsel withdrew its Demands (*id.* ¶ 20, Ex. B) and filed the Complaint in the U.S. District Court for the Northern District of California on May 9, 2025 (ECF No. 1).

In response to Zynga's motions to compel arbitration, transfer, or dismiss, Plaintiffs filed the FAC on August 19, 2025. (ECF No. 33.) Zynga again moved to compel arbitration, transfer venue, or dismiss and to stay discovery. (ECF Nos. 25-26, 37-39.) On March 31, 2026, Judge Susan Illston granted Zynga's motion to transfer venue to this Court (ECF No. 56), holding that Take-Two's Terms of Service were "valid" contracts containing a "valid" forum selection clause necessitating transfer (*id.* at 6-7, 11). Judge Illston denied the remaining motions as moot because they "raise issues that are best left to the transferee court." (*Id.* at 8.)

## ARGUMENT

### I. LEGAL STANDARD

Zynga seeks dismissal for lack of standing and failure to state a claim. Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), "[a] plaintiff must demonstrate standing separately for each form of relief sought, and a plaintiff seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Wiggins v. Unilever U.S., Inc.*, 684 F. Supp. 3d 127, 139 (S.D.N.Y. 2023) (citation modified). Under FRCP 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" allowing the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although the Court must accept well-pleaded factual allegations as true, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). When pleading a claim for fraud, FRCP 9(b) requires that Plaintiffs must "state with particularity the circumstances constituting the fraud." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013) (internal quotations and citation omitted).

Finally, in deciding a motion to dismiss, the Court may consider "any statements or documents incorporated in [the complaint] by reference" and "documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47, 48 (2d Cir. 1991). The Court may also "take judicial notice of matters of public record. . . ." *GemShares, LLC v. Kinney*, No. 17 Civ. 844 (CM), 2017 WL 2559232, at *17 (S.D.N.Y. June 2, 2017).

## II. NEW YORK LAW APPLIES

Take-Two's Terms of Service (the "Terms") govern users' "access to use our games, apps, products, websites, and other services (the 'Services') as well as Virtual Items [] and your Account . . . ." (Ungberg Decl. Ex. B § 15.1, Ex. C § 17.1.) Judge Illston's holding that the Terms are "valid" contracts is law of the case, which "will be disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated." *United States v. Aquart*, 92 F.4th 77, 93 (2d Cir. 2024) (citation modified). Here, there was no error. Nor did Plaintiffs move to reconsider or seek leave to appeal. Thus, the Terms apply.

In addition to mandating jurisdiction in New York courts, the Terms state that they are "governed by, and construed under, the laws of the State of New York." (Ungberg Decl. Ex. B § 15.1, Ex. C § 17.1.) "Because 'courts consider the scope of a contractual choice-of-law clause to be a threshold question like the clause's validity,' the scope of a choice-of-law clause is also determined by the law of the forum." *Stevens & Co. LLC v. Espat*, 24-cv-5223, 2025 WL 950989, at *5 (S.D.N.Y. Mar. 28, 2025) (applying New York law) (citing *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005)).

In *Ministers & Missionaries Benefit Board v. Snow*, 26 N.Y.3d 466, 474 (2015), the New York Court of Appeals held that "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract[.]" But in *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020), the Second Circuit held that a choice-of-law provision will be enforced only if the chosen law "has sufficient contacts with the transaction" and there is no "fraud or violation of public policy." As Judge Illston noted (ECF No. 56 at 10-12), courts in this District have questioned whether *Moseley* properly incorporated *Ministers & Missionaries*. But even under *Moseley*, New York law applies here.

*First*, New York has sufficient contacts with Plaintiffs' transactions. *See Stevens & Co.*, 2025 WL 950989, at *8 (noting that the "sufficient contacts" standard is "a limited inquiry aimed largely at protecting the interests of New York and its courts, which is consistent with the emphasis in New York decisions on stability, certainty, predictability, and convenience."). Take-Two, Zynga's parent company – and with whom Judge Illston found each Plaintiff had formed a valid contract (ECF No. 56 at 7) – is headquartered in New York. *See, e.g.*, *Henry v. Major League Baseball Advanced Media L.P.*, Nos. 24 Civ. 0144 (GHW) (GWG), 24 Civ. 06270 (GHW) (GWG), 25 Civ. 00777 (GHW) (GWG), 2025 WL 3717068, at *8 (S.D.N.Y. Dec. 23, 2025) ("New York has sufficient contacts with the parties' transaction because Defendant is headquartered in New York"), *report & recommendation adopted*, 2026 WL 45345 (S.D.N.Y. Jan. 7, 2026); *Stevens & Co.*, 2025 WL 950989, at *8 (finding that a contract had a "reasonable relationship to New York" in part because one party to the contract was "based in New York").

Further, to promote uniformity and consistency with its nationwide users, Take-Two applies the Terms across its full line of products. (Ungberg Decl. ¶ 38.) That interest too creates sufficient contacts. *See, e.g., King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 865 (N.D. Cal. 2019) (enforcing New York choice-of-law clause and noting that "[g]iven the wide spread of [mobile app] users, [Defendant] has an interest in identifying a single body of law to govern its users in different states"). Plaintiffs also each purported to opt out of the 2025 Take-Two Terms' arbitration agreement by mailing an Opt-Out Notice to Take-Two's New York offices. (Ungberg Decl. ¶¶ 53, 56-57, 64, 68, Ex. C § 17.5(3).) Those acts create yet more New York contacts. *See Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017) (considering "performance under the agreement, including where [] payments were received" as a factor in determining whether the chosen law had a reasonable relationship to the parties or the transaction).

*Second*, under *Moseley*, courts look only to the public policy of New York State. *Moseley*, 980 F.3d at 20 (requiring parties "[t]o identify a fundamental *New York* public policy such as might overcome the parties' stated choice of law") (emphasis added); *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 369 (N.Y. 2015) ("The party seeking to invoke the exception bears a heavy burden of proving that the application of the chosen law would be offensive to a fundamental policy of *this* State") (citation modified) (emphasis added). Thus, the public policy of other states such as California is irrelevant. *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583-84 (S.D.N.Y. 2018) (holding that a litigant "cannot credibly claim that the application of New York law by a New York court would violate New York's public policy"). And, as Judge Illston held, even if this Court could consider California public policy, that would not affect the outcome because Plaintiffs cannot contend that New York law affords them insufficient procedural protections. (ECF No. 56 at 9-10.) Thus, New York law applies.

## III. PLAINTIFFS' FALSE DISCOUNT CLAIMS FAIL

Because New York law applies, Plaintiffs' claims under California's UCL, CLRA, and FAL should be dismissed. *See, e.g.*, *Henry*, 2025 WL 3717068, at *7 (dismissing CLRA claim under terms of service that selected New York law); *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 504 (E.D.N.Y. 2016) (holding that a New York choice-of-law provision precluded North Carolina, Nevada, and Florida state consumer protection and unfair trade practices claims). Plaintiffs also bring common-law fraud and unjust enrichment claims. (FAC ¶¶ 223-34.) These claims should be dismissed too because New York law does not recognize Plaintiffs' alleged injury nor is reliance adequately pled.

### A. New York Law Does Not Recognize Plaintiffs' Alleged Injury

To allege fraud, Plaintiffs must allege "a representation of material fact, falsity, scienter, reliance and injury." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999). New York law "does not recognize an injury based on deception itself – the fact that Plaintiff was deceived is not, standing alone, an 'actual injury.'" *Belcastro v. Burberry Ltd.*, No. 16-cv-1080 (VEC), 2017 WL 744596, at *3 (S.D.N.Y. Feb. 23, 2017) ("*Belcastro I*") (citing *Small*, 94 N.Y.2d at 56).

Critically, New York law does not recognize an injury based on the subjective value assigned to a missing bargain, which Plaintiffs' allege here, because "[t]his 'but-I-thought-I-got-a-bargain' theory impermissibly combines deception (the appearance of a bargain) with injury (there was no actual bargain)." *Belcastro v. Burberry Ltd.*, No. 16-cv-1080 (VEC), 2017 WL 5991782, at *3 (S.D.N.Y. Dec. 1, 2017) (*Belcastro II*). Thus, courts applying New York law have repeatedly rejected this subjective theory of injury. *See, e.g.*, *DaCorta v. AM Retail Grp., Inc.*, No. 16-cv-01748 (NSR), 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018) ("It is clear that Plaintiff believes she was deceived into purchasing the product and spending what she did, but that fails to demonstrate an actual injury required under the law. . . . [T]he Amended Complaint only reflects Plaintiff's subjective disappointment."); *Irvine v. Kate Spade & Co.*, No. 16-cv-7300 (JMF), 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017) (holding that a claim that "but for the mistaken belief that they were getting a bargain, Plaintiffs would not have made their purchases at all" is foreclosed by New York law); *Belcastro II*, 2017 WL 744596, at *3 (rejecting plaintiff's theory of injury based on his belief that "he was getting a terrific bargain on his purchases when in reality, he was not getting a bargain at all.") (citation modified).

The FAC alleges this non-cognizable injury. (*See, e.g.*, FAC ¶ 41) ("[T]hese supposedly discounted items are perpetually offered on discount and there are no competitors selling similar products for Toon Blast or Toy Blast, i.e., the 'discount' or 'sale' price is not actually discounted

or on sale from any legitimate sale price."); (*id.* ¶ 46) ("In addition to fake 'sales,' the Games constantly bombard players with false reference pricing, which creates the illusion that the packs are worth more than the offered 'sale' price. The Games advertise packs at huge discounts, often ranging from 60% to 90% 'off.' But these packs were never for sale at an original price that would support this calculation.").

Even if, as Plaintiffs contend, the Bundles are "fake" or "never end," Plaintiffs would still not be injured because they do not (and cannot) allege a "price premium theory of injury," where an individual paid a premium for a product with a specific, marketed quality that it ultimately did not have. *Compare Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *4-5 (S.D.N.Y. Dec. 11, 2013) (holding that plaintiffs adequately pled injury under New York law where product marketed as "100% Pure Olive Oil" was alleged to be of an "inferior mixture"). The FAC does not allege that any Bundle lacked the coins or special items that players believed they were purchasing, for the price at which they believed they were making the purchase. In fact, each bundle snap-shotted in the FAC lists *exactly* the number of coins and items in each bundle, and at what price it is available. (FAC ¶¶ 44-45, 48, 51, 53.) Thus, Plaintiffs do not assert a cognizable legal theory under New York law, and their false discount claims should be dismissed.

**B. Plaintiffs Do Not Allege Which Advertisements They Relied Upon**

Plaintiffs also fail to allege with particularity what supposedly false or misleading advertisements they relied upon in making their alleged purchases. To state a false advertising or fraud-based claim, Plaintiffs must "specify the content of the representations, advertisements, and promotions" that they saw, explain why they are false, and plead that they relied on them. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997). A complaint "fails to allege fraud with the requisite particularity" if it "does not specify which statements the plaintiffs viewed or when." *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022).

Despite containing 51 pages and 245 numbered paragraphs, the FAC makes little effort to tie its general factual allegations about the Games' supposedly "false and deceptive sales tactics" (FAC ¶¶ 30-122) to each Plaintiff's alleged in-Game purchases. As to Camargo and Garcia, the FAC alleges only that each of them "estimates" previously making in-app purchases "which included purchases of the various types of packs and sales items described" in the rest of the Complaint. (FAC ¶¶ 13-14.) The FAC's only other mention of Camargo is to note that she was not previously an arbitration claimant. (*Id.* ¶ 177.) As to Garcia, the FAC's only additional allegation is that he watched video advertisements in Toon Blast. (*Id.* ¶¶ 15, 101, 106.) These general allegations do not meet the requirements of FRCP 9(b). *See, e.g.*, *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 585 (S.D.N.Y. 2021) (holding that FRCP 9(b) requires that allegations specifically state the "who, what, where, when, and why" of the claim.)

### C. Plaintiffs' Unjust Enrichment Claim Fails

Unjust enrichment "is not a catchall cause of action to be used when others fail. It is available only in unusual situations when . . . the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *McCracken v. Verisma Sys.*, 91 F.4th 600, 608 (2d Cir. 2024) (internal quotations and citation omitted). "[T]o adequately plead such a claim, the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Id.* Plaintiffs do not meet this standard because, as discussed above, Plaintiffs do not plead a cognizable injury under New York law.

Plaintiffs' unjust enrichment claim is also duplicative of their fraud claim. "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors*, LLC, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). An unjust

enrichment claim is duplicative of other claims where, as here, "the factual allegations supporting each claim are the same." *Greene v. Clean Rite Ctrs., LLC,* 714 F. Supp. 3d 134, 151 (E.D.N.Y. 2024). Plaintiffs' unjust enrichment claim rests on the same allegations as their fraud claim and it should be dismissed for this additional reason.

**D. Plaintiffs Cannot Seek Injunctive Relief**

The FAC also purports to seek injunctive relief under the UCL, CLRA, and FAL. (FAC ¶¶ 202-03, 209, 222.) Even if those claims could survive – they cannot – Plaintiffs lack standing to pursue injunctive relief because they have not alleged that they plan to play and make purchases in the Games again.

"In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future[.]" *Leder v. Am. Traffic Sols*., Inc., 81 F. Supp. 3d 211, 222 (E.D.N.Y. 2015) (quotation marks omitted). "[P]ast purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). Here, Plaintiffs allege only that they "play and/or *may* still play the Games and be deceived and pressured into making in-app purchases." (FAC ¶ 203) (emphasis added). The vague notion that a Plaintiff "may" "be deceived and pressured into making in-app purchases" does not allege a threat of imminent or actual harm required for injunctive relief.

Finally, even if the Games' in-store prices were misleading or deceptive – they are not – Plaintiffs are now aware of the practices they allege to be misleading or deceptive. "As many courts have explained, because a plaintiff in a false advertisement case has *necessarily* become aware of the alleged misrepresentations, there is no danger that they will again be deceived by them again." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465-66 (S.D.N.Y. 2020)

(citation modified and emphasis in the original). Thus, Plaintiffs cannot seek an injunction for this additional reason.

## IV. PLAINTIFFS' CLAIMS ALSO FAIL UNDER CALIFORNIA LAW

Even if the Court were to apply California law, Plaintiffs' claims should still be dismissed because their claims are not pled with particularity, they have not properly alleged injury, and the claims are otherwise deficient.

### A. Plaintiffs' California Claims Are Not Pled with Particularity

Plaintiffs must establish both constitutional standing and statutory standing to state a claim under the UCL, CLRA, and FAL. *See In re iPhone App. Litig.*, 6 F. Supp. 3d 1004, 1012-13 (N.D. Cal. 2013). Further, "[w]hen UCL, CLRA, and FAL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege the particular circumstances surrounding the representations at issue." *In re Arris Cable Mod. Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)). Therefore, the plaintiff must identify the specific alleged misrepresentation made to the plaintiff and how that plaintiff reasonably relied on it to their detriment. *See, e.g.*, *Rothman v. Equinox Holdings, Inc*, No. 2:20-cv-09760-CAS-MRWx, 2021 WL 124682, at *6 (C.D. Cal. Jan. 13, 2021) ("It is not enough to 'receive' a misrepresentation in a document; a plaintiff must see, read, or hear the alleged misrepresentation and rely on it."); *In re Zoom Video Commc'ns Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (dismissing fraud-based UCL and CLRA claims under Rule 9(b)).

As discussed above, the FAC alleges that the Games use false and deceptive sales tactics (FAC ¶¶ 39-55) but contains only conclusory allegations of reliance on these sales tactics and resulting injury (*id.* ¶ 198) ("Plaintiffs and the Classes relied on these misleading and deceptive representations regarding the limited-time bonuses they could expect to receive in the packs").

Plaintiffs merely list "various types of packs and sale items." (FAC ¶¶ 12-14.) They do not identify which allegedly fictious sales or discounts each individual Plaintiff allegedly relied on in making their purchases, the actions they took as a result, and the injury they suffered. Thus, Plaintiffs lack statutory standing and fail to state a claim.

### B. Plaintiffs Were Not Injured

Even if Plaintiffs had appropriately identified the allegedly fictitious sales or discounts on which each individual Plaintiff relied in making their purchases, Plaintiffs still lack standing because they have not shown an injury-in-fact under California law. *See Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500, at *1 (9th Cir. May 9, 2024). In *Mai*, Plaintiffs purchased in-game "loot boxes," which contained "mystery items," which purchasers knew could be a variety of different items. *Id.* Because each "loot box" contained exactly what they expected it to, the court found that they had not shown a sufficient injury-in-fact and could satisfy neither constitutional nor statutory standing under the UCL and CLRA. *Id.* Likewise, Plaintiffs do not – because they cannot – allege that the Games' Bundles do not contain what is advertised.

### C. The CLRA Does Not Recognize Claims Involving Intangible Digital Goods

Plaintiffs' claim under the CLRA fails for the additional reason that the CLRA does not apply to virtual items. The CLRA "applies only to transactions for the sale or lease of consumer 'goods' or 'services' as those terms are defined in the act." *Fairbanks v. Sup. Ct.*, 46 Cal. 4th 56, 65 (2009) (citing Cal. Civ. Code § 1761(a)-(b)). The statute defines "Goods" as "*tangible* chattels" and "Services" as "including services furnished in connection with the sale or repair *of goods*." *Id.* (emphasis added).

Virtual coins and items they purchased are not "goods" as defined by the statute, which refers only to "tangible chattels." Virtual coins and items also are not "services" under the CLRA. *See Mai v. Supercell Oy*, 648 F. Supp. 1130, 1136 (N.D. Cal. 2023) (dismissing CLRA claim

brought based on defendants' alleged "sale of virtual currency, loot boxes, and services in providing the games and selling the loot boxes" because "virtual currency is not a good or service for purposes of the CLRA); *vacated and remanded on other grounds*, No. 23-15144, 2024 WL 2077500, at *2 (9th Cir. May 9, 2024) (finding plaintiffs also lacked Article III standing); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1045-46 (N.D. Cal. 2020) ("[T]he virtual currency at issue is not a good or service" and virtual "supplies" and "ammunition" in a video game are "digital" rather than "tangible"); *Suski v. Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 WL 3974259, at *8 (N.D. Cal. Aug. 31, 2022) (holding that, for services "in connection with" the sale of goods to qualify under the CLRA, the goods must be tangible) (citing *Meyer v. Cap. Al. Grp.*, 2017 WL 5138316, at *6 (S.D. Cal. Nov. 6, 2017)). Thus, the CLRA claim fails for this additional reason.

## V. PLAINTIFFS' ADDICTION ALLEGATIONS DO NOT GIVE RISE TO A CLAIM

Plaintiffs attempt to camouflage the FAC's deficiencies by alleging that the Games "deliberately foster[] addictive behaviors and lures consumers into dangerous spending habits," based on supposedly manipulative "dark patterns." (FAC ¶¶ 69-87.) The Court should disregard these allegations because they are not pled with specificity, the laws under which Plaintiffs bring their claims do not recognize causes of action for "addictive" content, and the Games' content is protected under the First Amendment.

### A. Plaintiffs Do Not Bring an Addictiveness-Based Claim

The FAC does not allege that Plaintiffs would not have made their purchases if Plaintiffs did not believe them to be discounted. Instead, the FAC alleges that Plaintiffs "felt addicted and compelled to play" the Games, played several hours each day, or lost sleep playing the Games. (FAC ¶¶ 12-14.) But the FAC does not – because it cannot – connect the Games' allegedly addictive properties with any increase in Plaintiffs' spending on allegedly "deceptive" in-Game

purchases. The addiction allegations fail for that reason alone. *See Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999) ("[W]ithout addiction as part of the injury claim, there is no connection between the misrepresentation and any harm from, or failure of, the product.")

Further, none of the California statutory or common-law claims Plaintiffs assert recognizes claims based on addictive content. *See, e.g.*, *Mai*, 648 F. Supp. 3d at 1137-39 ("the California legislature has enacted statutes outlining the bounds of unlawful gambling, and [Defendant's] conduct does not constitute unlawful gambling under the [California Penal Code] . . . it is not this Court's role to apply purely subjective notions of fairness under the UCL") (citing *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986, at *14 (N.D. Cal. Jan. 10, 2022)).

Plaintiffs also do not identify any New York laws or regulations concerning addictiveness. Indeed, New York courts have dismissed such claims even in the context of more heavily regulated industries such as online sports betting. *See, e.g.*, *De Leon v. DraftKings, Inc.*, 25-cv-644 (DLC), 2025 WL 3551627, at *4-5, 10 (S.D.N.Y. Dec. 11, 2025) (dismissing plaintiffs' false advertising, product liability, and negligence claims and noting that "Plaintiffs have not shown that DraftKings had a duty to prevent addicted gamblers from using its platform or to protect those that do. In essence, the plaintiffs' theory seeks to circumvent the decision made by New York State's legislature to legalize online gambling in New York State.").

**B. Plaintiffs' Addictiveness Allegations are Barred by the First Amendment**

Even if Plaintiffs had asserted a cause of action based on the Games' alleged "addictiveness," any such claim would be barred under the First Amendment. The First Amendment prohibits imposing civil liability on the creation and dissemination of constitutionally protected speech. *See Snyder v. Phelps*, 562 U.S. 443 (2011). This protection extends to modern forms of expression, including video games, despite often lacking a singular, defined message. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790, 798 (2011)

(striking down a California law restricting the sale of violent video games to minors, affirming that video games – like books, films, and music – communicate ideas and social messages through characters, dialogue, and plot).

Plaintiffs also cannot reasonably contend that their addictiveness claim is based on Zynga's conduct as opposed to the Games' content or expression. *See Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010) ("the process of expression through a medium has never been thought so distinct from the expression itself" to be unprotected by the First Amendment). Nor can Plaintiffs sidestep the First Amendment by arguing that the Games do not advance a particular idea. The First Amendment protects expression not obviously linkable to any particular concept. *See Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995).

Any contention that Zynga could alter the "addictive game design" (FAC ¶ 71) without changing its in-Game content likewise fails. Even if Plaintiffs played the Games for hours each day and lost sleep playing them (FAC ¶¶ 12-14), they presumably did so because they found the Games engaging and made purchases that helped them more easily advance through the Games' levels and episodic structure. *See Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 702 (N.D. Ill. Apr. 23, 2025) (rejecting argument that the allegedly addictive features in the video game Roblox could be modified without changing the content of the game itself as "about as persuasive as saying the First Amendment would not be implicated by a mandate that authors not end chapters on cliffhangers").

In *Courtright v. Epic Games, Inc.*, plaintiffs brought numerous claims (including negligence, fraud, and violation of a state merchandising practices act) against various game developers. 795 F. Supp. 3d 1156, 1160 (W.D. Mo. 2025). In allegations strikingly similar to the FAC's (¶¶ 69-88), the plaintiffs alleged that the defendants "intentionally design their

Products to be addictive by incorporating and utilizing traditional game theory tactics, operant conditioning (e.g., dark patterns, skinner boxes, feedback loops, rubber-banding), artificial intelligence, and reward systems, along with patented designs containing addictive features, systems, mechanisms, and shared technology, in their video gaming product designs. . . ." *Id.* at 1165. The court dismissed those allegations because "the alleged defects that the Plaintiff identifies . . . are all elements of the video game at issue" and could not form the basis of any claim under the First Amendment. *Id.* at 1166 ("Plaintiff's claims, in essence, seek to hold the Developer Defendants liable because their video games are made too entertaining by these 'defective' elements. This is content-based liability that is not permitted."). The same logic applies here to defeat any claim based on alleged addictiveness.

## VI. PLAINTIFFS' VPPA CLAIM FAILS

Finally, Dougherty and Garcia – on behalf of themselves and a putative class of every Zynga app user – assert a claim for the violation of the VPPA. To plead such a claim, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)). The FAC itself pleads facts that are fatal to the VPPA claim.

Toon Blast[1] is a free-to-play game. (*Id.* ¶ 77.) Although app users can install and play Toon Blast without *ever* watching an advertisement, they may choose to watch advertisements. (*Id.* ¶ 92). Yet players cannot select which ads to watch – neither the general subject matter of the

[1] Although Dougherty alleges to have previously played Toy Blast, she only alleges to have watched ads while playing Toon Blast. (FAC ¶ 12.) Similarly, Garcia only alleges that he watched ads while playing Toon Blast. (*Id.* ¶ 15.)

ads nor specific ads – and the FAC does not allege otherwise. If a player chooses to watch advertisements, those ads are served by *third parties*. (*Id.* ¶ 94) (advertising services allow "marketers and advertisers" to reach players); (¶ 103) (ads are provided by "advertising partners"); (¶ 108) ("Zynga's advertising partners . . . deliver 'personalized advertising.'")

With this background, and as explained below, the VPPA claim fails on multiple grounds, including because: (1) Dougherty and Garcia fail to allege that their personally-identifiable information was disclosed by Zynga; (2) any disclosed information is not of the kind that would readily permit an ordinary person to identify a specific individual's video-watching behavior; (3) any disclosure was permitted; (4) Plaintiffs are not "consumers" under the VPPA; (5) Zynga is not a "video tape service provider" under the VPPA; and (6) Dougherty and Garcia lack standing to pursue VPPA claims concerning all Zynga games.

### A. The FAC Fails to Plead That Personally Identifiable Information was Disclosed

The VPPA defines personally-identifiable information ("PII") as "information which identifies a person as having *requested or obtained specific* video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). "For information to quality as [PII] under the VPPA, it must reveal 'three distinct elements: (1) the consumer's identity, (2) the video material's identity, and (3) the connection between them.'" *Berryman v. Reading Int'l, Inc.*, 24 Civ. 750 (PAE), 2026 WL 699835, at *4 (S.D.N.Y. Mar. 12, 2026) (quoting *Golden v. NBCUniversal Media, LLC*, 22 Civ. 9858 (PAE), 2025 WL 2530689, at *6 (S.D.N.Y. Sept. 3, 2025), *aff'd*, No. 25-226, ECF No. 45.1 (2d Cir. Apr. 23, 2026) (summary order)). The FAC's allegations meet none of these requirements.

First, it is not plausible that there was any disclosure of information identifying the Plaintiffs "as having *requested or obtained specific*" video ads. 18 U.S.C. § 2710(a)(3)

(emphasis added). The FAC alleges only that Dougherty and Garcia watched ads (FAC ¶ 15), not that they requested "specific" video ads. As explained above, players cannot choose the ads that are presented in the game, and Plaintiffs' allegations fail for this reason alone. *See, e.g.*, *Martin*, 657 F. Supp. 3d at 285 ("Because the complaint shows that People.com does not disclose information identifying website visitors as having requested or obtained *specific* videos, it is unnecessary to reach other questions. . . .") (emphasis added).

Second, Plaintiffs fail to plead any details as to either their identity or their video watching history that was allegedly disclosed by Zynga or to whom, much less a nexus between the two. The best they can muster are vague and conclusory allegations of a disclosure of unspecified information to unspecified third parties. *See, e.g.*, FAC ¶ 90 ("Zynga collected and shared Plaintiffs' PII without obtaining the requisite consent"); *id.* ¶ 243 ("Defendant also knew that Plaintiff's and class members' personal viewing content was disclosed to third parties").[2] Such formulaic allegations are grounds for dismissal. *See Berryman*, 2026 WL 699835, at *3 ("A pleading that offers 'only labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).

**B. Plaintiffs Fail to Meet the "Ordinary Person" Standard**

Even if Plaintiffs had alleged any disclosure of information, Plaintiffs' VPPA claim fails because they do not and cannot allege how any allegedly disclosed information is "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 49 (2d Cir.) (holding that a "unique string of computer code" transmitted to a third party is not PII because an ordinary person could not use it to identify the viewer's interactions), *cert. denied*, 146 S. Ct. 885 (2025).

[2] Plaintiffs also fail to specify what advertisements they allegedly watched, only that they watched "pre-recorded video content." (FAC ¶¶ 12, 15.)

Here, Plaintiffs do not and cannot allege that Zynga shared PII with *any* third party, much less in way that an ordinary person could understand. *First*, Zynga cannot share user information such as a name, address, email, or any other information that "readily permits an ordinary person to identify a specific individual's watching behavior" because Toon Blast does not collect that information, nor do Plaintiffs allege otherwise.

*Second*, Plaintiffs do not allege that Zynga shared the identity of video materials with any third party. *See Solomon*, 136 F.4th at 54 (affirming dismissal where plaintiff did not plausibly allege that third party could identify plaintiff's specific "'video-watching habits'"); *Golden*, 2025 WL 2530689, at *7 (plaintiff failed to allege that disclosures included "the titles of videos that she had watched").

Plaintiffs attempt to distract from these pleading failures by mischaracterizing excerpts from the Take-Two Privacy Policy. (FAC ¶¶ 111-17.) But Plaintiffs do not allege *any* nexus between those disclosures and Toon Blast itself. As the Privacy Policy explains, it may apply to many products, with the purpose of attempting to capture all use cases, but without each part of the privacy notice applying to each use case. *See* Take-Two Interactive Software Privacy Policy, www.take2games.com/privacy, (last updated February 2026) ("The Services are also subject to any other terms and policies included in our Services.").

Case in point, Plaintiffs imply, but do not expressly allege, that Zynga shares all "identifiers" listed in paragraph 112 of the FAC with advertisers in Toon Blast, including a user's name, postal address, phone number, and email. But again, Toon Blast does not ask for or collect this information, and the FAC contains no allegations to the contrary. Although Plaintiffs are entitled to some benefit at the pleading stage, they still must allege a plausible claim, which they have not. *See Twombly,* 550 U.S. at 547 (To survive a motion to dismiss under Rule 12(b)(6),

a complaint must plead enough facts to state a claim to relief that is plausible on its face.") (internal quotations and citation omitted). Because Toon Blast does not collect the type of information that could qualify as PII under the VPPA post-*Solomon*, Zynga could not have disclosed PII in violation of the VPPA.

### C. Any Disclosure was Permitted Under the VPPA

Even if there were some VPPA-regulated disclosure – there was not – any such disclosure was permitted under the VPPA. Third parties (not Zynga) deliver the ads *at the request of a player*. At most, Zynga's provision of information to advertisers is to facilitate the fulfillment of a request by the player for an ad; a use expressly *permitted* by the VPPA.

A disclosure of information to a third party does not violate the VPPA when that disclosure is made "incident to the ordinary course of the business of a video tape service provider." 18 U.S.C. § 2710(b)(2)(E). Under the VPPA, "ordinary course of business" is defined to include "order fulfillment" and "request processing." 18 U.S.C. § 2710(a)(2); *see also* S. Rep. 100-599 at 4342-12 (1988). Indeed, the only reason that Zynga would have to communicate with third party ad partners about the delivery or watching of ads in Toon Blast is because a player *requested* to watch an ad. And because any disclosure of PII by Zynga in connection with the serving of ads in Toon Blast was to process the player's request for an ad or to fulfill their order for an ad, it is a permitted disclosure under the VPPA as "order fulfillment" or "request processing." 18 U.S.C. § 2710(a)(2). The VPPA claim fails for this additional reason.

### D. Plaintiffs are not "Consumers"

Plaintiffs also are not "consumers" under the VPPA. To be a "consumer," an individual must be a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Players do not have to pay to play Toon Blast or to watch ads and thus are not renters or purchasers of pre-recorded video content. Thus, to be a "consumer," each

Plaintiff would have to be a "subscriber" of Toon Blast. The Second Circuit has defined "subscriber" broadly[3] and held that "[a] person becomes a VPPA subscriber by providing consideration in the form of personal information in exchange for a good or service." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 551-53 (2d Cir. 2024). But even under the Second Circuit's broad interpretation, Plaintiffs' VPPA claim fails.

Plaintiffs do not allege what "consideration in the form of personal information," such as an email address, they shared in exchange for a good or service; nor can they make that allegation. Plaintiffs did not have to provide *any* personal data to Zynga to play Toon Blast and thus cannot meet even the broad *Salazar* view of a subscriber under the VPPA. *See Ellis v. Cartoon Network* 803 F.3d 1251, 1257 (11th Cir. 2015) ("downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app."); *Caroll v. Chick-Fil-A, Inc.*, No. 23-cv-00314-RFL, 2024 WL 1091193, at *2 (N.D. Cal. Feb. 13, 2024) (dismissing VPPA claim where plaintiff did not allege an exchange of information to watch video content).

It also is not clear that Garcia *currently* plays Toon Blast; his allegations as to watching video advertisements are all in the past tense. (FAC ¶¶ 15, 101.) Thus, Garcia does not have an "ongoing" relationship necessary to justify being a "subscriber" for purposes of the VPPA.

---

[3] Other Circuits have disagreed with this expansive definition, and the Supreme Court will decide the issue this term. *See, e.g.*, *Pileggi v. Wash. Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1237 (D.C. Cir. 2025) ("[s]ubscribing to an e-newsletter than includes videos and video links, by itself, is not enough to make someone a consumer under the Video Privacy Act"); *Salazar v. Paramount Glob.*, 133 F.4th 642, (6th Cir. 2025) (same), *cert. granted*, 223 L. Ed. 2d 577 (Jan. 26, 2026) (granting certiorari as to the issue of "[w]hether the phrase 'goods or services from a video tape service provider,' as used in the Video Privacy Protection Act's definition of 'consumer,' refers to all of a video tape service provider's goods or services or only to its audiovisual goods or services.").

*Golden*, 688 F. Supp. 3d 150, 163 (S.D.N.Y. 2023) ("[T]o be a subscriber under the VPPA requires an ongoing commitment or relationship between the user and the entity which owns and operates the mobile app") (internal citations and quotations omitted).

**E. Zynga is Not a "Video Tape Service Provider"**

Zynga is not a "video tape service provider" under the VPPA. A "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of *prerecorded* video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4) (emphasis added).[4]

"The term 'video tape service provider' does not include every business with some tangential relationship to video content. Courts have held that 'for the defendant to be engaged in the business of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose.'" *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 252 (S.D.N.Y. 2025) (quoting *In re Vizio Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017)).

Toon Blast is a mobile game that provides entertainment to its players, and the delivery of advertisements is not central to that purpose. (FAC ¶ 77.) Indeed, Plaintiffs admit that Toon Blast does not require players to watch any videos. (*Id.* ¶ 105) ("[P]layers are in complete control over the ad experience – they can choose if and when they see an ad."). Players can download Toon Blast for free, play Toon Blast for free, and never interact with any prerecorded video. (*Id.* ¶ 77.) The FAC is devoid of any allegation that Zynga selects which advertisements to show

[4] Zynga does not concede that the advertisements shown in Toon Blast constitute "similar audio visual materials" to "prerecorded video cassette tapes." Many of the ads shown in the app do not fit that definition, including static ads with no "pre-recorded" content or "similar audio visual materials." *See* 18 U.S.C. § 2710(a)(4).

players or when to show them, or that Zynga does anything other than facilitate the delivery of advertisements *when requested by a player*. (*Id.* ¶¶ 94, 103, 108.)

The FAC attempts to obscure these critical omissions by alleging that advertising is a source of revenue for Zynga. (*Id.* ¶ 91.) That is irrelevant. Just as the display of video on a website does not transform a company into a "video tape service provider," the delivery of advertising, at the request of the user, does not transform Zynga into a "video tape service provider." Plaintiffs' VPPA claims fails for this additional reason.

### F. Plaintiffs Lack Standing as to Other Zynga Games

Finally, Dougherty and Camargo purport to represent a putative class of persons "who have watched pre-recorded video content in *any* of Zynga's mobile applications." (FAC ¶ 125) (emphasis added). But "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." *Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791, 799 (S.D.N.Y. 2025) (holding that "Plaintiffs lack [standing] to raise claims with respect to the NBC News App or NBC Sports App because they did not use or purchase those apps.") Here, Dougherty and Garcia allege that they watched video advertisements only in Toon Blast. (FAC ¶ 101.) Thus, they only have standing at most to represent a class of Toon Blast players; not players of any other Zynga game, app, or product.

## CONCLUSION

For the foregoing reasons, if Plaintiffs are not compelled to arbitrate, then the Court should dismiss the Complaint with prejudice under FRCP 12(b)(1), 12(b)(6), and, where applicable, 9(b).

Dated: New York, New York
April 24, 2026

**MCDERMOTT WILL & SCHULTE LLP**

*/s/ Andrew B. Kratenstein*

Andrew B. Kratenstein
Chris Combs
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400

David Saunders (*pro hac vice* forthcoming)
Emilie E. O'Toole (*pro hac vice* forthcoming)
MCDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000

*Counsel for Defendant Zynga, Inc.*