**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DOUGHERTY *et al.*,<br>Plaintiffs,<br>v.<br>ZYNGA, INC.,<br>Defendant. | Case No. 1:26-cv-02772-PAE |

**DECLARATION OF ANDREW B. KRATENSTEIN IN SUPPORT OF DEFENDANT ZYNGA INC.'S MOTIONS TO COMPEL ARBITRATION AND TO DISMISS**

I, ANDREW B. KRATENSTEIN, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a Partner in the law firm McDermott Will & Schulte LLP ("McDermott"). I am over the age of twenty-one (21), of sound mind, and capable of making this declaration. I am in all respects qualified and authorized in making this declaration.

2. Through my role as outside counsel for Defendant Zynga, Inc. ("Zynga") in this case, I am familiar with the interactions between Plaintiffs' counsel and Zynga and its parent company, Take-Two Interactive Software, Inc. ("Take-Two"), which preceded the filing of the Complaint (ECF No. 1) on May 9, 2025, and are discussed in further detail below:

**The Demand Letter**

3. On July 30, 2024, Take-Two received a letter from Janove PLLC and Hartley Law PLLC (the "Demand Letter"). A true and complete copy of the Demand Letter is attached hereto as Exhibit A.

4. Sent on behalf of 2,668 current or former players of Toon Blast and Toy Blast (the "Games" and each, a "Game"), the Demand Letter alleged that the Games falsely advertised

"sales" or "discounts" for its in-app purchases and were instead "false incentives to lure customers into making more purchases and spending more money." (Ex. A at 1.)

5. The Demand Letter sought "monetary and injunctive relief, statutory penalties, attorney fees, and costs against Take-Two . . . pursuant to multiple federal and state laws, including but not limited to New York's General Business Law [], common law unjust enrichment and fraud, and [additional] relevant state consumer protection statutes. . . ." (*Id.*)

6. On August 27, 2024, on behalf of Take-Two and Claimants (collectively, the "Parties"), their respective counsel executed a Tolling Agreement (the "Tolling Agreement"), which called for additional, mutual information exchange in an effort to resolve the Parties' dispute arising from the Demand Letter.

7. Throughout the rest of 2024, Take-Two and Claimants engaged in further information exchange related to Claimants' claims, including but not limited to identifying the User IDs associated with individual claimants and the in-Game purchases associated with those User IDs.

**Mediation with JAMS**

8. On December 17, 2024, the Parties engaged in confidential in-person mediation (the "Mediation") through JAMS ADR ("JAMS") but were unable to resolve their dispute.

9. After the Mediation, the Parties extended the Tolling Agreement, and – through their mediator – engaged in further confidential settlement discussions. No resolution was reached.

10. The Tolling Agreement expired on February 28, 2025.

**Arbitration with JAMS**

11. On March 24, 2025, Claimants' counsel filed 746 individual Demands for Arbitration (the "Demands") under the JAMS Streamlined Rules and Procedures (the "JAMS Streamlined Rules").

12. The nearly identical Demands alleged false and deceptive advertising and unfair practices related to each Claimant's in-game purchases in the Games, asserting that any sales and discounts were "bogus" or otherwise misleading.

13. The Demands sought to arbitrate each Claimant's claims under the 2019 Take-Two End User License Agreement (the "2019 EULA"), which called for individual arbitrations under the JAMS Streamlined Rules. Each Claimant alleged that, under the 2019 EULA, Take-Two had agreed to pay all arbitration costs above that which Claimant would pay to participate in litigation in court, and that Take-Two was required to pay all JAMS fees and costs exceeding $1. The filing fees under the JAMS Streamlined Rules alone would have resulted in Take-Two paying approximately $1.5 million in individual arbitration fees alone, exclusive of additional arbitration fees and costs.

14. In response, and as discussed further in the Declaration of Andrew J. Ungberg (the "Ungberg Declaration"), Take-Two explained to JAMS that the 2019 EULA was never the Games' operative Terms of Service, and depending on when each Claimant last played the Games, the Peak Terms of Service, the January 29, 2024 Take-Two Terms of Service (the "2024 Take-Two Terms"), or the February 28, 2025 Take-Two Terms of Service (the "2025 Take-Two Terms") applied.

15. The 2024 Take-Two Terms designate the JAMS Streamlined Rules for individual arbitrations. They also contain a separate procedure for mass arbitrations – defined as five or more

disputes relating to the same or similar subject matter – that required Claimants who qualified to proceed under New Era ADR's New Era Mass Arbitration Rules (the "New Era Rules").

16. The 2025 Take-Two Terms also designate the JAMS Streamlined Arbitration Rules for individual arbitrations, but they define mass arbitrations as 25 or more disputes that share common issues and legal representatives and require Claimants to proceed under JAMS' Mass Arbitration Procedures and Guidelines (the "JAMS MAP").

17. As discussed further in the Ungberg Declaration, Plaintiffs provided Opt-Out Notices to Take-Two, stating that they were opting out of the 2025 Take-Two Terms pursuant to those Terms' op-out provision.

18. On May 6, 2025, after reviewing Claimants' Demand Forms, Take-Two's responses, and additional correspondence from the Parties, JAMS sent the Parties a Notice (the "JAMS Notice"), which stated that JAMS would designate a Process Administrator under the JAMS MAP, upon receipt of the JAMS MAP filing fee. The JAMS Notice further stated, "[t]he parties may raise preliminary and procedural matters, including whether the MAP apply and which Demands if any should be included as part of a Mass Arbitration under the MAP, with the Process Administrator." (Ex. B at 2.) A true and complete copy of the JAMS Notice is attached hereto as Exhibit B.

19. No longer able to use the threat of having to pay exorbitant arbitration fees to pressure Take-Two and Zynga into a settlement, on May 9, 2025, Claimants' counsel withdrew its 746 pending claims with JAMS and filed the class action Complaint in this action in the U.S. District Court for the Northern District of California the same day.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

April 24, 2026

*/s/ Andrew B. Kratenstein*
Andrew B. Kratenstein