

Raphael Janove
Shareholder

raphael@janove.law

www.janove.law
T 646-347-3940

115 Broadway, 5th Fl.
New York, NY 10006

1617 John F. Kennedy
Blvd., 20th Fl.
Philadelphia, PA 19103

979 Osos St., Ste. A5
San Luis Obispo, CA
93401

April 29, 2026

**<u>VIA ECF</u>**

The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

  **Re:**   ***Dougherty, et al. v. Zynga, Inc.***, **Case No. 1:26-cv-02772-PAE**

Dear Judge Engelmayer:

  I write on behalf of Plaintiffs in response to Defendant's letter motion for a stay of discovery.

  Defendant's failure to meet and confer before filing it, it should deny the stay. Defendant's motions to compel arbitration or dismiss the case do not establish good cause to stay discovery. Although Plaintiffs' oppositions to Defendant's latest motions are not yet due, Plaintiffs' oppositions to Defendant's prior motions to compel and dismiss explain that Defendant's arbitration agreements are unenforceable and Plaintiffs state their claims. Dkt. 40, 41.

  This case seeks to hold Defendant accountable for various well-known forms of deceptive marketing in its mobile games. Through its patented technology, Defendant has fine-tuned its deceptive tactics to get individuals like Plaintiffs to spend exorbitant sums on its supposedly "free to play" games. *See* Dkt. 33 (FAC) ¶ 8. Defendant's strategy is akin to paradigmatic false advertising tricks adopted from brick-and-mortar stores to the in-app purchase context. Just like a person going to a mall or a department store to buy jeans and seeing advertisements of "LIMITED TIME SALE," or "40% OFF," a player of the games will be bombarded with in-app offers falsely claiming significant discounts and limited time sales or bonuses. Courts have repeatedly rejected arguments that a defendant is immune from liability simply because it deploys these predatory tactics in a digital forum. *See* Dkt. 40 (citing cases). Moreover, worse than just a simple claim of false discounting, Defendant uses psychologically manipulative dark patterns to foster addiction and drive compulsive spending. FAC ¶ 4. The Games themselves are designed to be addictive, constantly stimulating the brain's reward centers in the same manner as slot machines, including by providing "auditory and visual rewards for winning moves," offering "incremental rewards that reinforce 'correct' behavior," and creating "an illusion of control." *Id*. ¶ 70. Defendant then implements another layer of addictive game design by offering microtransactions, i.e. items for sale at small amounts but at high velocity and frequent intervals, so that Defendant can take advantage of and foster addictive tendencies with respect to the transactions themselves. *Id*. ¶ 71.

  Defendant has even patented various technologies it has invented to keep individuals hooked on the Games and spending money. *Id*. ¶¶ 78–85. For instance, Defendant's Patent No.



10,482,100 details Defendant's "prediction model generator" that "generates a model to predict the likelihood of a player making a purchase or payment in the game," and then pairs it with a recommendation model with fake discounts to trick players into spending more. *Id*. ¶ 78.

In addition, Defendant violates the Video Privacy Protection Act ("VPPA") by monetizing its users' personal information and video viewing histories. Dkt. 33 (FAC) ¶¶ 91–95. Defendant's motion to dismiss ignores Plaintiffs' detailed allegations collecting statements in privacy policies, user settings, annual reports, and in promotional materials to its third-party marketers, in which Defendant practically admits to violating the VPPA. Dkt. 33 (FAC) ¶¶ 118–19.

In a transparent attempt to insulate itself from being held accountable, Defendant also imposed a series of unconscionable dispute resolution provisions—including unconscionable delegation clauses—in take it or leave it contracts of adhesion. These provisions are unenforceable. Defendant's 2024 Terms provide for mass arbitration with New Era ADR—which the Ninth Circuit found to be a "systematic effort to impose arbitration . . . as an inferior forum" and unconscionable. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 688 (9th Cir. 2024) (holding that "this method of dispute resolution contemplated by New Era's Rules" is "unworthy even of the name of arbitration"). The 2025 Terms are no better, containing many of the same provisions that *Heckman* rejected. Worse, Defendant attempted to impose them retroactively to apply to pre-existing claims, a bad faith and unconscionable practice that is further grounds to invalidate them.

Defendant's pre-litigation conduct confirms that they deploy arbitration provisions to deter claims and avoid justice rather than offer impartial dispute resolution. Before initiating this litigation, Plaintiff Garcia and others (but not Plaintiff Dougherty or Camargo) participated in *months* of informal dispute resolution, including information sharing and a failed mediation. Claimants then learned that Defendant had used the time and information provided during the failed mediation to draft a new arbitration clause—which purported to reply retroactively to already accrued claims—and which Defendant deployed the very day its tolling agreement with Plaintiff and the other arbitration claimants expired. Then, when Garcia and the others attempted to pursue individual arbitration in JAMS, Defendant updated its mobile apps to contain a new pop-up that required individuals using the apps to accept the new 2025 Terms. At the same time, Defendant insisted that claimants could not proceed in arbitration without providing identifying information only available in the app, forcing claimants to log in to find such information, and then be presented with the new pop-up and Defendant's newly re-designed arbitration claims. Then, because Defendant had forced Plaintiff Garcia and the other claimants to supposedly receive notice and then assent to the new terms by logging into the app, Defendant blocked the arbitration by refusing to pay filing fees and asserted that the new 2025 Terms—which it forced onto Plaintiff Garcia *after* he had already filed his arbitration demand in JAMS *and which now that Defendant is subject to Rule 11 it concedes do not apply to him*—required JAMS Mass Arbitration.[1] Given Defendant clearly never intended to arbitrate in good faith, and instead had wasted six months of

---

[1] Defendant's suggestion that JAMS accepted its arguments about which terms applied or any other matter is inaccurate, as explained in Plaintiffs' opposition to Defendant's first motion to compel. Dkt. 41.



Plaintiff Garcia's time moving the case backwards instead of forwards, he and the other Plaintiffs brought class action claims seeking relief for Zynga's deceptive conduct and to invalidate the terms.

Although Defendant presents the case history as if it prevailed on some argument about this point, the only disputed issue resolved by Judge Illston is whether the case should be transferred to New York. As detailed above, Plaintiffs argue that both the 2024 and the updated 2025 Terms Defendant attempted to implement mid-dispute are unconscionable and unenforceable. Plaintiffs did not argue that the forum selection clause itself was invalid but instead argued that the clause should be considered together with the choice of law clause and that, taken together, enforcement of these provisions would contravene California public policy. Dkt. No. 56 at 8. Plaintiffs are California residents, bringing statutory causes of action under California consumer protection law against a company that is headquartered in California and whose California-based executives and employees are directly responsible for Plaintiffs' injuries. Defendant seek to use a New York choice of law provision to evade unwaivable rights under California law, even though it previously argued that a New York court could apply California substantive law to Plaintiffs' claims and Judge Illston agreed. Dkt. 44 at 14–15; Dkt. 56 at 8, 11.

The Court is likely to deny Defendant's motions, and should not stay discovery while it resolves them. Defendant has not shown good cause, and all relevant factors support a stay here. First, "Plaintiff[s] ha[ve] pled concrete facts and law to support all of [their] arguments." *Guiffre v. Maxwell*, 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016). Even if there were "strong arguments on both sides," (which there are not), "Defendant's argument does not rise to a level of the requisite 'strong showing' that Plaintiff[s'] claim[s are] unmeritorious." *Id.*; *see also Cambridge Cap. LLC v. Ruby Has LLC*, 2021 WL 2413320 (S.D.N.Y.), at *2 (denying request to stay discovery where "it is not clear that [d]efendant is correct" and "[t]he issue will require further study and analysis"). Second, the discovery requested is not burdensome in the ways required to justify a stay. *Id.* (explaining that discovery from a single defendant is not burdensome in the way that justified a stay in case that "involve[d] seven individual plaintiffs against the no less than the entire National Football League, 36 affiliated teams, the Associated Press, Getty Images, and others").

Finally, over two years have passed since Plaintiffs first asserted their claims and Defendant *still* has not produced any discovery. At this point Plaintiffs are being prejudiced as additional time passes and memories continue to fade. It is not Plaintiffs' fault that Defendant refused to comply with its own arbitration provisions and then attempted to change the rules after learning about the claims against it, or that Judge Illston sided with Defendant on a close question that required supplemental briefing. There is no legitimate reason for Defendants to refuse to produce, at a minimum, the same discovery they would produce in any arbitration proceeding. *See Choudhury*, 2025 WL 2977837, at *2 n.2 ("the discovery in this case would not prove wasteful, as it would be necessary to take in the state-court case"). Given the weakness of Defendant's arguments and the substantial delay already incurred, the Court should order Defendant to begin producing discovery.



Respectfully submitted,

*/s/ Raphael Janove*
Raphael Janove

Counsel for Plaintiffs

CC: All Counsel of Record via ECF and Email