**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHERYLL DOUGHERTY, DELIA CAMARGO, and LAWRENCE GARCIA on behalf of themselves and all others similarly situated,

        Plaintiffs,

        v.

ZYNGA, INC.,

        Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

Case No. 1:26-cv-02772-PAE

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 3

        A.    Defendant's Unlawful Practices ............................................................ 3

        B.    Defendant's Adhesive and Shifting Dispute-Resolution Terms ........................... 4

              1.    The Peak Terms. ............................................................................ 4

              2.    The 2024 Terms. ........................................................................... 4

              3.    Defendant makes unconscionable modifications to the unenforceable
                    New Era Rules. .............................................................................. 5

              4.    Defendant's 2025 arbitration clause is imposed after other arbitration
                    claimants file arbitration demands. ................................................ 7

III.    LEGAL STANDARDS ..................................................................................... 8

IV.     ARGUMENT ..................................................................................................... 9

        A.    California unconscionability law applies, but New York law ends in the
              same result. ............................................................................................ 9

        B.    The dispute resolution provisions of the 2024 Terms are unenforceable. ............ 10

              1.    The delegation clause is unconscionable and unenforceable. ................... 10

              2.    The delegation provision of the 2024 Terms is procedurally
                    unconscionable. .......................................................................... 11

              3.    The delegation provision of the 2024 Terms is substantively
                    unconscionable. .......................................................................... 13

        C.    The dispute resolution provisions in the 2024 Terms are unconscionable. .......... 14

              1.    The dispute resolution provisions are procedurally unconscionable.......... 14

              2.    The dispute resolution provisions are substantively unconscionable......... 15

        D.    The unconscionable provisions cannot be severed. ............................................ 18

        E.    The dispute resolution provided by the 2024 Terms is not an
              FAA "arbitration." ................................................................................. 18

F.     The dispute resolution provisions of the 2025 Terms, including the delegation clause, are invalid and unenforceable. ................................................................ 19

     1.     Plaintiff Dougherty validly opted out of the 2025 Terms. ......................... 19

     2.     The 2025 Terms cannot apply retroactively. .............................................. 20

     3.     The 2025 Terms are procedurally unconscionable. .................................... 21

     4.     The 2025 Terms are substantively unconscionable. ................................... 22

     5.     The unconscionable provisions cannot be severed. .................................... 25

V.     CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Binance*,
2026 WL 538293 (S.D.N.Y. Feb. 26, 2026)................................................................ 20

*Ash v. Axos Bank*,
2024 WL 4195313 (S.D. Cal. Sept. 13, 2024)...................................................... 15, 20, 22

*Avery v. Integrated Healthcare Holdings, Inc.*,
218 Cal. App. 4th 50 (Ct. App. 2013).................................................................. 21

*DarkPulse, Inc. v. Crown Bridge Partners*, LLC,
2026 WL 696787 (S.D.N.Y. Mar. 12, 2026) ........................................................ 10

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ............................................................................ 14

*Discover Bank v. Superior Court*,
36 Cal.4th 148 (2005) .................................................................................... 19

*Flores v. New York Football Giants, Inc*,
150 F.4th 172 (2d Cir. 2025) ......................................................................... 8, 19

*Garcia v. Start Yoshi, Inc.*,
2024 WL 2274524 (N.D. Cal. May 17, 2024)........................................................ 23

*Gillman v. Chase Manhattan Bank, N.A.*,
73 N.Y.2d 1 (1988)................................................................................... 10, 15

*Gingras v. Think Fin., Inc.*,
922 F.3d 112 (2d Cir. 2019.............................................................................. 8, 9

*Glass v. Tradesmen Int'l, LLC*,
2020 WL 820655 (N.D. Ohio Feb. 19, 2020)........................................................ 20

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ................................................................... passim

*Ingle v. Cir. City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ......................................................................... 23

*JoySuds, LLC v. N.V. Labs, Inc.*,
668 F. Supp. 3d 240 (S.D.N.Y. 2023) ............................................................... 20

*Kelly-Starkebaum v. Papaya Gaming Ltd.*,
2024 WL 5135799 (S.D.N.Y. Dec. 17, 2024) ........................................................ 9

iii

*Lim v. TForce Logistics, LLC*,
  8 F.4th 992 (9th Cir. 2021) ................................................................................... 18

*MacClelland v. Cellco P'ship*,
  609 F. Supp. 3d 1024 (N.D. Cal. 2022) .......................................................... 17, 18

*Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*,
  41 Cal. App. 5th 357 (2019) ................................................................................. 20

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) ................................................................................................ 8

*NML Cap. v. Republic of Argentina*,
  621 F.3d 230 (2d Cir. 2010) ................................................................................... 9

*Pandolfi v. AviaGames, Inc.*,
  2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ................................................. passim

*Pandolfi v. Aviagames, Inc.*,
  2025 WL 2463742 (9th Cir. Aug. 27, 2025) ................................................ 8, 11, 16

*Peleg v. Neiman Marcus Grp., Inc.*,
  204 Cal. App. 4th (Ct. App. 2012) ................................................................... 20, 21

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) ................................................................................... 9

*Ramirez v. Charter Commc'ns, Inc.*,
  16 Cal. 5th 478 (2024) .......................................................................................... 10

*Rios v. HRB Digital LLC*,
  807 F. Supp. 3d 975 (N.D. Cal. 2025) ........................................................... passim

*Tesla Wall Sys., LLC v. Related Companies, L.P.*,
  2018 WL 4360777 (S.D.N.Y. Aug. 15, 2018) ....................................................... 10

*Zuckerman v. Charter Commc'ns, LLC*,
  2024 WL 4871739 (S.D. Cal. Nov. 22, 2024) ....................................................... 17

## I.  INTRODUCTION

Plaintiffs brought this class action on behalf of mobile video game players who are victims of Defendant's deceptive and unlawful business practices. There is no question that Defendant's conduct violates well-established California consumer protection statutes. But in a transparent attempt to insulate themselves from being held accountable, Defendant imposed a series of adhesive and unconscionable dispute resolution provisions on customers. These provisions are unenforceable. Defendant's 2024 Terms provide for mass arbitration with New Era ADR—which the Ninth Circuit found to be an unconscionable "systematic effort to impose arbitration . . . as an inferior forum." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 688 (9th Cir. 2024). The Ninth Circuit also concluded that "this method of dispute resolution contemplated by New Era's Rules" is "unworthy even of the name of arbitration" and so falls outside the scope of the Federal Arbitration Act. *Id*. Since *Heckman*, other courts have confirmed that such terms are unconscionable, and no court has ever upheld them. Defendant's 2025 Terms are no better, containing many of the same provisions that *Heckman* rejected. Worse, Defendant attempted to impose them retroactively to apply to pre-existing claims, in breach of the covenant of good faith.

Defendant's pre-litigation conduct confirms that they deploy arbitration provisions as weapons designed to deter claims and avoid justice rather than offer impartial dispute resolution. Before initiating this litigation, Plaintiff Garcia and others (but not Plaintiff Dougherty or Camargo) participated in months of informal dispute resolution, including information sharing and a failed mediation. When negotiations failed, claimants learned that Defendant had used the time and information provided to draft a new arbitration clause. Then, on the very day that the tolling agreement covering potential arbitration claimants expired, Defendant attempted to force the new dispute resolution terms—which purported to apply retroactively to already accrued claims—on its users. After hundreds of similarly situated claimants filed demands for arbitration before JAMS,

Defendant implemented yet another bad faith stratagem. They updated the mobile applications to trigger a pop-up about new terms, although the pop-up did not mention any changes or the dispute resolution provisions. Then, because of this update, Defendant argued that a completely new set of terms governed the already-filed arbitrations.[1]

In its motion to compel arbitration, Defendant Zynga, Inc. ("Zynga" or "Defendant") argues Plaintiffs Camargo and Garcia are bound by the 2024 terms, and Plaintiff Dougherty is bound by the 2025 Terms. The dispute resolution provisions of both Terms contain a delegation clause providing that disputes over whether the arbitration agreement is unconscionable will be resolved in arbitration. However, the delegation clause is unconscionable. The Court should refuse to enforce it and then refuse to enforce the remaining dispute resolution provisions. All of these provisions are obvious attempts to impose an inferior forum on claimants, providing for confusing and oppressive procedures that make it difficult if not impossible for claimants to achieve a fair and efficient dispute resolution process, as *Heckman* held.

It is notable that Defendant's motion to compel does not even clearly specify where Plaintiffs are supposed to vindicate their claims. For example, in a transparent attempt to avoid scrutiny of the patently unconscionable arbitration procedures, Defendant argues that the "arbitration provision in both Terms requires each Plaintiff to arbitrate individually before JAMS under the JAMS Streamlined Arbitration Rules" and "[t]his Court need not decide how a hypothetical mass arbitration would proceed." *See* MTC at 19, 24. But hundreds of similarly situated arbitration claimants represented by the same counsel *already tried* to arbitrate their claims on an individual basis for JAMS. Defendant blocked the arbitration by refusing to pay filing fees

---

[1] Defendant also argued that User IDs were required before any arbitrations could proceed (even though hundreds of User IDs had been provided during the informal dispute resolution phase and Defendant did nothing with them), knowing but not mentioning that the only way a claimant could get their User ID would involve seeing a pop-up attempting to bind them to new terms.

and asserted that the 2025 Terms—which it forced onto Plaintiff Garcia *after* he had already sent his notice of dispute, and which it now concedes do not apply to him—required JAMS Mass Arbitration.[2] Defendant's motion to compel should be denied.

## II.  FACTUAL BACKGROUND

### A.  Defendant's Unlawful Practices

Toon Blast and Toy Blast (together, the "Games") are two nearly identical, highly popular mobile games published by Defendant Zynga Inc., a subsidiary of Take-Two Interactive Software, Inc. ("Take-Two"). FAC ¶ 2. The Games are marketed as free to play but are structured to manipulate players into making in-game purchases to advance through the Games' levels. *Id.* ¶ 3. Players of the Games are bombarded with materially false and misleading offers for in-game purchases. *Id.* ¶ 4. These offers deploy archetypal examples of "dark patterns"—manipulative design practices the Federal Trade Commission ("FTC") identified in its September 2022 report, "Bringing Dark Patterns to Light." *Id*. For instance, Defendant pressures players into making purchasing decisions by displaying fake countdown timers for fake "sales," creating an illusion of scarcity based on the idea there is a limited amount of time to purchase the product "on sale" and get the discount. *Id.* ¶ 6. In fact, there is no sale because the items are always sold at fake "discounted" prices. *Id*. ¶ 5. And the Games themselves are designed to be addictive, stimulating the brain's reward centers in the same manner as slot machines. *Id.* ¶ 7. Defendant then leverages the addictive nature of the Games by targeting players with special discount offers at the times and in the manner that its patented technologies predict will make players most susceptible to falling

---

[2] Defendant asserts that JAMS determined the arbitration claimants' claims were subject to its Mass Arbitration Protocols, but this is not accurate. JAMS assigned a Process Arbitrator but specifically stated that questions about whether the JAMS' Mass Arbitration Protocol applied could be raised with the Process Arbitrator. *See* Janove Decl. Ex. A. And, of course, Plaintiffs would not be bound by any decision concerning other claimants.

victim to their tactics. *Id*. ¶ 7. These "free to play" Games bring Zynga revenue of more than $1 million per day and have brought in more than $1 billion since their launch. *Id.* ¶ 8.

Plaintiffs Cheryll Dougherty and Delia Camargo are California residents, and Plaintiff Garcia was a California resident until August 2024. FAC ¶¶ 12–14. All Plaintiffs play one or both of the Games, and have spent substantial sums of money because of Defendant's deceptive advertising and illegal marketing tactics. *Id*. Plaintiff Camargo found the Toon Blast game so addicting that she has played it for hours a day for over 8 years, even losing sleep to play. *Id.* ¶ 13. Plaintiffs Dougherty and Garcia also watched video advertisements in the Games. *Id.* ¶¶ 12, 14.

## B. Defendant's Adhesive and Shifting Dispute-Resolution Terms

According to Defendant's submission, it presented Plaintiffs with three different sets of Terms, each time as a take it or leave it contract of adhesion, as described below.

### 1. The Peak Terms.

Defendant claims it presented Plaintiffs Camargo and Garcia with a link to the Peak Terms, as a take it or leave it contract of adhesion. Ungberg Decl. ¶ 62, 66. The Peak Terms provide that disputes "shall be governed by the laws of Turkey by a court located in Istanbul without regard to conflict of law provisions, and you agree to submit to the jurisdiction of such court." Ungberg Decl. Ex. A § 12. They also provide that any "modification of these Terms of Services" must be "hand signed by you and a duly appointed officer of Peak Games." *Id.* ¶ 18.

### 2. The 2024 Terms.

According to Defendant's submission, it presented all three Plaintiffs with a link to the 2024 Terms, as a take it or leave it contract of adhesion. Ungberg Decl. ¶¶ 58, 66, 70. The pop-up containing the link stated "We have revised our Terms of Service" but did not mention any changes to the dispute resolution provisions or that the Terms now required disputes be resolved in arbitration. Ungberg Decl. ¶ 30; *see also id*. ¶ 28.

4

The 2024 Terms (Ungberg Decl. Ex. B) provide for JAMS arbitration, § 15.5(9). But then the Terms add that **"**Notwithstanding the parties' agreement to have all Disputes administered by JAMS on an individual basis, you and Take-Two agree that if your Dispute is (or becomes) a Mass Arbitration Dispute . . . it shall be administered by New Era and governed by the New Era Rules in effect when the Mass Arbitration Disputes are filed, excluding any rules that permit arbitration on a class-wide basis (the "New Era Rules"), and this Arbitration Agreement."[3]

As noted above, the Ninth Circuit in *Heckman* considered the New Era Rules and affirmed that the defendant had chosen them in a "systematic effort to impose arbitration . . . as an inferior forum," rendering "the delegation clause and the arbitration agreement as a whole" unconscionable. 120 F.4th at 688-89. It also held that the FAA did not apply to the New Era Rules, which were "'unworthy even of the name of arbitration.'" *Id.* at 690 (citation omitted). Instead of correcting the issues identified by the Ninth Circuit, New Era openly disparages the Court: "The Ninth Circuit recently delivered a disappointing and flawed ruling on a motion to compel arbitration in Heckman v. Live Nation. . . . [T]he ruling is fraught with innumerable falsehoods and inaccuracies, and we're clearing up a few of the many areas the court got wrong."[4]

**3. Defendant makes unconscionable modifications to the unenforceable New Era Rules.**

The 2024 Terms also purport to modify the New Era terms in ways that make them even more unconscionable. For example, New Era dubiously claims that its rules and procedures do not

---

[3] Whether Plaintiffs can rely on any Rules found on the New Era website is questionable because New Era openly admits in its website terms that: "[T]he information on the Services may contain typographical errors or inaccuracies, and may not be complete. . . . Please note that such errors, inaccuracies, or omissions may relate to service descriptions, pricing, and availability." New Era also makes clear that: "Any reliance you place on such information is strictly at your own risk." *See* https://www.neweraadr.com/terms-and-conditions.

[4] *See* https://www.neweraadr.com/blog/the-ninth-circuit-got-it-very-wrong-in-heckman-v-live-nation/.

provide for "batching" because "batching treats many individual cases as one collective claim, as applied batching may violate long-standing and fundamental principles of consumer arbitration outlined by the United States Supreme Court."[5] Despite this, the 2024 Terms mandate arbitration under the New Era Rules with specific references to "Batching of Mass Arbitration Disputes," and then add an additional restriction, preventing New Era from even accepting demands from additional claimants until a first batch of 60 demands is decided. *See* 2024 Terms § 15.5(9) ("New Era shall not accept any additional Demands for Arbitration related to such Mass Arbitration until 60 days after the final resolution of all Bellwether Cases from the Initial Batch and the subsequent Settlement Conference provided for under the New Era Rules.").

They also change New Era's definition of a Mass Arbitration, which "involv[es] claims that: (a) number ***twenty five (25)*** or more and are against common respondent(s), (b) arise out of Common Issues of Law and Fact . . ., ***and*** (c) are brought by the same law firm or group of law firms acting in coordination." *See* Janove Decl. Ex. B ("2026 Rules"), New Era Rule 1(b)(iv)(1)). The 2024 Terms definition is far broader, applying to "***5 or more Disputes*** relating to the same or similar subject matter, which share common issues of law or fact, ***or*** in which the counsel or other organization representing the parties in such Disputes are the same, cooperating, or working in coordination." 2024 Terms § 15.5(9). The 2024 Terms include other unconscionable terms, such as limiting Defendant's maximum potential liability and waiving other rights and remedies. *See id.* § 15.4 ("you agree that your exclusive remedy is limited to recovery of direct damages and the maximum liability is limited to the greater of USD $500 or the amount you have spent" in the 24 months before the claim arose). No analogous limitation is imposed on Defendant.

---

[5] New Era ADR Rule FAQ, at 11, available at
https://static1.squarespace.com/static/672348b60b9e63367b1106f4/t/6742c16d3d7bd26b6b1ded
4f/1732428141948/New-Era-ADR-Rules-FAQ.pdf.

### 4. Defendant's 2025 arbitration clause is imposed after other arbitration claimants file arbitration demands.

As mentioned above, Plaintiff Garcia and the Arbitration Claimants initially attempted to resolve their claims informally, or proceed in individual arbitrations. FAC ¶ 145. Despite reservations regarding the purported terms for dispute resolution, they attempted in good faith to pursue informal dispute resolution, including information exchange, a tolling agreement and a mediation. *Id*. ¶¶ 148, 154. Defendant used the additional time to implement a thwarting strategy, updating its terms—on February 28, 2025, the day the tolling period ended—with a new dispute resolution procedure specifically tailored to defeat Claimants' arguments advanced in mediation that the arbitration clause Defendant initially invoked was unenforceable. *Id.* ¶¶ 154–155. Then, *after* the Arbitration Claimants had already filed their 746 demands for arbitration before JAMS, Defendant redesigned its mobile applications and instituted a pop-up that forced users to agree to the 2025 Terms. *Id.* ¶¶ 159, 164, 167–171. It then argued to JAMS that the arbitrations could not proceed until claimants provided a "User ID" that could only be obtained in the application, and that these-already filed arbitrations must now proceed under the new terms that no one had notice of or had assented to when the arbitrations were filed, as the earliest the new pop-up could have been viewed was three days after the JAMS filings, March 28, 2025, *see* Ungberg Decl. ¶ 38. As evidenced by this bad faith maneuvering, Defendant is well aware that the arbitration clause and delegation provision it asks the Court to enforce on Plaintiffs Camargo and Garcia (contained in the 2024 Terms) are unconscionable.

As to the 2025 Terms, Defendant now admits that Plaintiffs Camargo and Garcia validly opted out, *see* MTC at 16–17, but contends that Plaintiff Dougherty did not timely opt-out (although it admits she tried to opt-out) and so is bound by the arbitration agreement in the 2025 Terms. Regardless, the 2025 Terms remain unconscionable, including because Defendant's

attempt to change the rules mid-dispute to disadvantage claimants is obviously in bad faith. Substantively, Defendant changes the rules from the New Era Rules to the JAMS Mass Arbitration Procedures. 2025 Terms § 17.5(6). But, it then adds a layer of extra unconscionability through bespoke provisions, including: an onerous pre-dispute notice requirement; a one-sided fee-shifting provision entitling a prevailing party to seek attorney's fees in connection with frivolous "claims or requested relief," but not in connection with frivolous defenses; limiting Defendant's maximum potential liability; asymmetric and meaningless tolling of claims; unilateral modification rights; a mass arbitration protocol; and exempting all claims that Defendant is likely to bring from the arbitration requirement.

### III.  LEGAL STANDARDS

The FAA's "policy favoring arbitration" simply makes "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). The FAA permits Courts to invalidate arbitration agreements on "generally applicable contract defenses" including unconscionability. *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019). They can also be invalidated under the effective vindication doctrine if the agreement amounts to a waiver of substantive rights and remedies. *Flores v. New York Football Giants, Inc*, 150 F.4th 172, 181 & n.37 (2d Cir. 2025) (citing *Heckman*, 120 F.4th at 689-90).

"Unconscionability has both a procedural and a substantive element." *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025). Procedural unconscionability focuses "on oppression or surprise due to unequal bargaining power"; substantive unconscionability "considers the fairness of an agreement's actual terms, focusing on whether the contract will create unfair or one-sided results." *Id.* (citation omitted). "Courts apply a sliding scale analysis where the more substantively oppressive a term, the less evidence of procedural unconscionability is required, and vice versa." *Id.* (cleaned up); *see also Ragone v. Atl. Video at*

8

*Manhattan Ctr.*, 595 F.3d 115, 121–22 (2d Cir. 2010) (same under New York law). While both procedural and substantive unconscionability are generally required to be present in some degree, "there are some exceptional cases where a provision of a contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *NML Cap. v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010) (cleaned up).

## IV.  ARGUMENT

Both the 2024 Terms and the 2025 Terms contain "delegation" provisions, which provide that disputes about the validity or enforceability of the arbitration agreements will be resolved by "the arbitrator" (2024 Terms § 15.5(1)); 2025 Terms § 17.5(1). Plaintiffs challenge these provisions, as well as the rest of the arbitration agreements, as unconscionable. Plaintiffs' "specific attack on the delegation provision is sufficient to make the issue of arbitrability one for a federal court." *Gingras*, 922 F.3d at 126. A party can challenge the delegation clause "on the same bases from which it challenges other aspects of the arbitration agreement." *Kelly-Starkebaum v. Papaya Gaming Ltd.*, 2024 WL 5135799, at *8 (S.D.N.Y. Dec. 17, 2024). And after determining that "the delegation clause is unconscionable and unenforceable," the court may then "determine whether the arbitration agreement as a whole is unconscionable and unenforceable." *Heckman*, 120 F.4th at 687; *Gingras*, 922 F.3d at 126. The Court should invalidate the delegation clauses and then invalidate the rest of the Terms' dispute resolution provisions, because they are unconscionable.

### A.  California unconscionability law applies, but New York law ends in the same result.

Plaintiffs are California residents, bringing statutory causes of action under California consumer protection law against a company that is headquartered in California and whose California-based executives and employees are directly responsible for Plaintiffs' injuries. FAC ¶¶ 12-14; 21-22, 25, 138-40. Defendant cannot force the application of New York law here on the basis that its parent company is in New York because New York courts only enforce choice of law

clauses when the "relationship to the selected state is reasonable." *DarkPulse, Inc. v. Crown Bridge Partners*, *LLC*, 2026 WL 696787, at \*5, 7 (S.D.N.Y. Mar. 12, 2026) (cleaned up) (the location of a corporate affiliate is "of little relevance as to whether there is a reasonable relationship" to New York). Further, Defendant obtained a transfer of this case to New York by arguing that the transfer would not foreclose the application of California law—a premise the California court accepted and a basis for its decision to transfer. Dkt. 44 at 14 & n.9. So Defendant is estopped from now arguing that the Court should apply New York law. *Tesla Wall Sys., LLC v. Related Companies, L.P.*, 2018 WL 4360777, at \*3 (S.D.N.Y. Aug. 15, 2018). In any event, there is little difference between applicable New York and California unconscionability law here, and Defendant identifies none.

**B. The dispute resolution provisions of the 2024 Terms are unenforceable.**

**1. The delegation clause is unconscionable and unenforceable.**

Challenges to conscionability are "assessed at the time of formation only, and not at the time of enforcement." *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at \*5 (N.D. Cal. Sept. 4, 2024) (citing *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 506 (2024), *aff'd,* 2025 WL 2463742 (9th Cir. Aug. 27, 2025); *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) ("A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable *when made*.") (emphasis added).

Defendant does not even try to argue that the 2024 Terms' delegation provision (or the rest of the 2024 Terms) providing for arbitration under New Era rules was not unconscionable *when made*, for the reasons stated by the Ninth Circuit in *Heckman*. These include that the "the Rules are so dense, convoluted and internally contradictory to be borderline unintelligible" and that "four features of New Era's Rules support a finding of substantive unconscionability of the delegation clause: (1) the mass arbitration protocol. . .; (2) procedural limitations . . .; (3) the limited right of appeal; and (4) the arbitrator selection provisions." *Heckman*, 120 F.4th at 683–684. The

10

unintelligible nature of these provisions also establishes that there is no "clear and unmistakable" intent to delegate these issues to an arbitrator—the agreement does not clearly identify or explain which arbitrator will resolve issues of arbitrability.

### 2. The delegation provision of the 2024 Terms is procedurally unconscionable.

The 2024 Terms are a procedurally unconscionable contract of adhesion. *See Heckman*, 120 F.4th at 681–82. As in *Heckman*, the delegation clause is part of an adhesive contract that contains oppressive features including "unilateral modification of the Terms" and the dispute resolution provisions "without prior notice." *Heckman*, 120 F.4th at 682 ("oppression is even more onerous when a clause pegs both the scope and procedure of the arbitration to rules which might change") (cleaned up); 2024 Terms § 15.5(11) ("We may update this Agreement, including the Arbitration Agreement, at our discretion"). Even worse than *Heckman*, the new delegation clause comes as a surprise to users who were told in the 2019 Terms that no changes would be made other than in a "hand signed" writing. Ungberg Decl. Ex. A ¶ 18. The delegation clause is also procedurally unconscionable "because it is hidden in the Terms of Service . . . incorporates [third-party arbitration] rules that are subject to change, and a layperson would be surprised to find that the delegation clause is subject to the batching provision." *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025) (citing *Heckman*, 120 F.4th at 682).

The record does not support Defendant's assertion that the Terms provide "clear and conspicuous notice" of any aspect of the dispute resolution process. MTC at 22. Defendant argues that the "Terms provide sufficient notice of the delegation clause on the very first page." MTC at 20. But this is inaccurate. The first page—which users see *only* if they click through the link in the pop-up that mentions changes to the Terms *without flagging changes to the arbitration provisions at all*, Ungberg Decl. ¶¶ 28–29—does not mention the delegation clause. Ungberg, Ex. B, Ex. C. And the language on the first page actually creates an additional layer of surprise and confusion,

11

telling users that "YOU AND TAKE-TWO WILL BE REQUIRED TO RESOLVE ANY DISPUTE, SUBJECT TO LIMITED EXCEPTIONS, BY FINAL AND BINDING INDIVIDUAL ARBITRATION." *Id*. Telling users that some disputes will be resolved by individual arbitration conceals, rather than alerts them to the fact that claims will be resolved in a complex and non-individual mass arbitration. It does nothing to inform them that—according to Defendant—the delegation clause mandates that the only way they can raise challenges to this process is by participating in it.

Similarly, although 21 pages of small single-spaced type later the 2024 Terms delegate arbitrability issues to "the arbitrator," this provides little clarity when the 2024 Terms require two different types of arbitration with two completely different arbitration providers. That is, the 2024 Terms do not clearly specify whether the unconscionability issues should be decided by a JAMS arbitrator or a New Era arbitrator. And if a consumer understood the applicable delegation clause to be the one in the New Era Rules, that adds yet *another* layer of confusion: arbitrability issues are somehow "determined *solely* by the Neutral(s) provided by New Era ADR Inc," *see* 2026 Rules 2(z), but also might, at New Era's discretion, be assigned to a different Neutral to resolve arbitrability, *id*. 6(a)(vi)(3). Even Zynga's lawyers cannot explain how New Era's various conflicting delegation provisions can be reconciled. Consumers certainly cannot be expected to read the 2024 Terms, understand the potential applicability of New Era Rules, then visit New Era's website to try to understand rules that New Era claims three distinguished Ninth Circuit jurists unanimously misunderstood, much less reconcile the various conflicting provisions.

The opt-out provision does not cure the procedural unconscionability. As Plaintiff Dougherty's experience shows, complying with Defendant's onerous opt out process is much easier said than done. And, as discussed above, the 2024 Terms are procedurally unconscionable in multiple respects unrelated to the adhesive nature of the agreement. *See Rios v. HRB Digital*

*LLC*, 807 F. Supp. 3d 975, 987 (N.D. Cal. 2025) ("California appellate courts have consistently and unanimously rejected the notion that an opt-out provision categorically insulates arbitration agreements from a finding or procedural unconscionability.") (citing cases). Neither of Defendant's cited authorities suggest that an opt-out provision alone establishes a total lack of procedural unconscionability. MTC at 20.

And although Defendant has argued that users can simply play other Games, that ignores that Defendant deploys patented technologies to make the Games highly addictive. So users like Plaintiffs struggle to stop using them. Defendant is well aware of this and presented the Terms accordingly, telling users: You must accept our new terms in order to play after February 28, 2024.

**3.    The delegation provision of the 2024 Terms is substantively unconscionable.**

The same "four features of New Era's Rules" that "support[ed] a finding of substantive unconscionability of the delegation clause" in *Heckman*, support the same finding here. *Heckman*, 120 F.4th at 683–684. New Era's 2024 rules provide that "the validity of the delegation clause in all cases is decided in bellwether cases, even though plaintiffs in the non-bellwether cases have no right to participate in the bellwether cases" and "will not even know the decision in the bellwether case as to the validity of the delegation clause until that decision is invoked against them. *Id*. at 684. This is fundamentally unfair to the non-bellwether plaintiffs. The rules also provide no right to discovery and contain "restrictions on briefing [that] border on the absurd," requiring "a miracle" to successfully present an arbitrator with arguments about both the delegation clause and the merits. *Id*. And New Era's arbitrator selection rules from 2024 allow New Era "to override a claimant's decision to disqualify an arbitrator;" and provide that "each side, rather than each individual party, has a right to disqualify an arbitrator;" and "a single arbitrator presides over several cases at one time." *Id*. at 687. Because "the selection Rules are unconscionable, any decision by an arbitrator selected under those Rules, including a decision under the delegation

13

clause, is infected by that unconscionability." *Id*. And with Defendant's additional unconscionable provisions, arbitration claimants would be *unable to even commence an arbitration* seeking to have unconscionability disputes resolved "until 60 days after the final resolution of all Bellwether Cases from the Initial Batch and the subsequent Settlement Conference." 2024 Terms § 15.5(9).

Finally, the delegation provision in the 2024 Terms is also unenforceable because of the "massive and obvious conflict of interest" inherent in asking a New Era arbitrator to rule on the legitimacy of New Era's rules. *Heckman*, 120 F.4th 670 at 694 (VanDyke, J., concurring). In sum, contrary to Defendant's argument, there is a wealth of "evidence to suggest that 'allowing an arbitrator . . . to decide the question of arbitrability would be unconscionable'" here. MTC at 20 (quoting *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 118 (2d Cir. 2025)).

### C. The dispute resolution provisions in the 2024 Terms are unconscionable.

#### 1. The dispute resolution provisions are procedurally unconscionable.

The same procedurally unconscionable aspects of the delegation clause pervade the rest of the 2024 Terms' disputes resolution provisions. As noted above, the Terms are presented on a take it or leave it basis, and Plaintiffs feel pressured to accept or lose access to the Games. The dispute resolution terms are subject to "unilateral modification" and "without prior notice." *Heckman*, 120 F.4th at 682; 2024 Terms § 15.5(11) ("We may update this Agreement, including the Arbitration Agreement, at our discretion"). The changes do not comply with the standards the previous terms set for modifications. Ungberg Decl. Ex A ¶ 18. So it would come as a surprise that Defendant, without following the prior terms' modification procedures, imposed a completely different dispute resolution mechanism and delegation clause. Further, the pop-up that Defendant used to impose the 2024 Terms says nothing about changes to the dispute resolution provisions nor advises that it applies retroactively to already-accrued claims. It merely advises users that "we have revised our terms of service and privacy policy." Ungberg Decl. ¶ 26; *see also id*. ¶ 24 (simply stating

14

"Our legal terms are changing on February 28, 2024" without further detail); *Cf. Ash v. Axos Bank*, 2024 WL 4195313, at *3 (S.D. Cal. Sept. 13, 2024) ("[T]he implied covenant of good faith and fair dealing requires . . . notice . . . regarding the applicability of such modifications to already existing claims.'"). And consumers "would not reasonably anticipate [a] complex bellwether and batching scheme" or "that the identity of their yet-unknown attorneys, and the number of other claimants that the attorneys represent, could comprise a substantial obstructive hurdle in the path toward resolving their dispute." *Rios*, 807 F. Supp. 3d at 986.

### 2. The dispute resolution provisions are substantively unconscionable.

The same "provisions of the arbitration agreement and New Era's Rules that make the delegation clause unconscionable also serve to make the entire agreement unconscionable . . . [I]t is plain that it would be impossible for plaintiffs to present their claims on equal footing . . . . Forced to accept Terms that can be changed without notice, a plaintiff then must arbitrate under New Era's opaque and unfair Rules" which "contain multiple interrelated substantive provisions that overtly favor defendants." *Heckman*, 120 F.4th at 688.

As noted above, Defendant does not defend the enforceability of the New Era rules that *Heckman* considered and which were in effect when Defendant adopted the 2024 Terms. Instead, it points to the new version of New Era's Rules and suggests that *Heckman* is "superseded." *See* MTC at 23. However, as noted above, in assessing unconscionability, courts consider whether the New Era Rules were "unconscionable when made." *Gillman*, 73 N.Y.2d at 10.

In any event, New Era's modest updates have not fixed the core problems that make them and their delegation clauses unenforceable under *Heckman*. The current version (last updated December 8, 2025 and effective January 1, 2026, according to New Era's website, which may not be reliable) still retains many of the same unconscionable provisions, including an asymmetrical arbitrator selection procedure, in which claimants participate collectively as one side, and

15

defendants as the other side. *See Heckman*, 120 F.4th at 687-87; *see* 2026 Rules 2(j) & 6(b)(iii)(1); Janove Decl. Ex. C ("2022 Rules") Rules 2(j) & 6(b)(iii)(1).

The 2026 Rules also continue to impose "mass" arbitration protocols that fail to remedy numerous constitutional due process violations identified in *Heckman*, including a similar bellwether process that allows only three bellwether cases to proceed at a time. *See* 2026 Rules 6(b)(iii)(3)); 2022 Rules 6(b)(iii)(3). The new Rules, like in *Heckman*, continue to improperly allow "Precedent" from bellwethers to be applied to other cases. *See* 2026 Rules 2(y); 2022 Rules 2(y); *Heckman*, 120 F.4th at 684-85 (holding bellwether and application of precedent made delegation and arbitration clause unconscionable and observing that "New Era's Rules provide to defendants many of the protections and advantages of a class action, but provide to non-bellwether plaintiffs virtually none of its protections and advantages").[6] In fact, the 2024 Terms are even more onerous than *Heckman* and provide for additional delays because they contain an additional restriction—preventing New Era from even accepting demands from additional claimants until a first batch of 60 demands are decided. *See* 2024 Terms § 15.5(9) ("New Era shall not accept any additional Demands for Arbitration related to such Mass Arbitration until 60 days after the final resolution of all Bellwether Cases from the Initial Batch and the subsequent Settlement Conference provided for under the New Era Rules.").

These bellwether and batching provisions, "read together" with the delegation clause, have a chilling effect on players." *Pandolfi,* 2025 WL 2463742, at *1; *Pandolfi*, 2024 WL 4051754, at *5 (bellwether provision substantively unconscionable where sequential rounds of arbitration created systemic delay) (citing *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041 (N.D.

---

[6] The 2026 Rules call the next step the "Precedent Opt-Out Process," but there is no option to "opt-out." Instead, a non-settling claimant has seven days after the settlement conference to distinguish the claimant's case from the bellwethers in a submission to the arbitrator. 2026 Rules 6(b)(iii)(5)(d); compare 2022 Rules 6(b)(iii)(4)(d).

Cal. 2022)); *Rios*, 807 F. Supp. 3d at 990 (the "prospect of delay" itself may have a "chilling effect on [claimants], deterring them from vindicating their rights"). Moreover, the mass arbitration procedures also "interfere with claimants' right to counsel of their choosing" because "the mass arbitration provision may induce claimants to avoid the bellwether provision altogether by finding different counsel." *Rios*, 807 F. Supp. 3d at 991.

The 2024 Terms contain many other substantive unconscionable dispute resolution provisions that further support a finding of unconscionability. These include provisions that:

- artificially shorten the statute of limitations, requiring claims to be brought within two years rather than limitation period under Plaintiffs' California law claims— three years for CLRA and FAL claims, and four years for UCL. *See* § 15.5(7); *Pandolfi*, 2024 WL 4051754, at *11.

- impermissibly waive punitive damages and cap Defendant's liability of "$500 or the amount you have spent on the Services at issue in your claim in the 24 months preceding the date your claim arose." *Id.* § 15.4; *see MacClelland*, 609 F. Supp. 3d at 1035.

- impermissibly prevent Plaintiffs from recovering the rights and remedies afforded them under California law, both directly and through the purported application of New York law when New York has no reasonable connection to the claims. *See MacClelland*, 609 F. Supp. 3d at 1037 (finding substantive unconscionability where an arbitration clause violates the "principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees.").

- carve out from arbitration the only claims Zynga is likely to have against a player (intellectual property claims). *See* § 10 ("Exclusion from Arbitration"); *Zuckerman v. Charter Commc'ns, LLC*, 2024 WL 4871739, at *11 (S.D. Cal. Nov. 22, 2024) (carve-out from an arbitration clause for types of claims "likely to be made by [defendant]" unconscionable for lacking mutuality) (cleaned up).

The Court should also reject Defendant's attempt to avoid scrutiny of its patently unconscionable dispute resolution provisions by suggesting that any "mass arbitration" is hypothetical. MTC at 24. Zynga makes over $1 million a day from these Games and $1 billion in revenue from its numerous users. FAC ¶¶ 8, 132. Thus, "[a]t the time of contract formation, it [wa]s predictable that a player could have a dispute with [Defendant] based on a company policy

17

that applies across-the-board to *all* players, as occurred here, and will be caught up by" Zynga's mass arbitration provision. *See Pandolfi,* 2024 WL 4051754, at *6; *see also Rios*, 807 F. Supp. 3d at 990 (observing that the "prospect of delay" caused by unconscionable mass arbitration procedures creates a one-sided "chilling effect on claimants, deterring them from vindicating their rights," and "[t]hus, the mass arbitration provision itself creates the risk of de facto waiver of valid claims"). Zynga's claim that mass arbitration is hypothetical when it already tried to impose one on Plaintiff Garcia and other Arbitration Claimants is just another disingenuous attempt to conceal the actual dispute resolution framework that Defendant intends to apply, and further evidence that the provisions are unconscionable.

### D. The unconscionable provisions cannot be severed.

The 2024 Terms provide that: "If any court or arbitrator determines that this Section 15.5(9) is void or unenforceable for any reason, or if New Era declines to administer any Mass Arbitration Dispute as a Mass Arbitration, then the Arbitration Agreement shall be deemed null and void in its entirety, and you and Take-Two shall be deemed not to have agreed to arbitrate such Disputes." So the offending terms cannot be severed. Nor would it be appropriate to sever them, because unconscionability permeates the entire dispute resolution clause. *Heckman*, 120 F.4th 670, 688–89; *MacClelland*, 609 F. Supp. 3d at 1046 (refusing to sever unconscionable provisions of arbitration clause); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005–06 (9th Cir. 2021) (same). Further, the class action waiver at Section 15.5(2) is part of the Arbitration Agreement (Section 15.5 of the 2024 Terms). So the class action waiver is void along with the rest of Section 15.5.

### E. The dispute resolution provided by the 2024 Terms is not an FAA "arbitration."

Finally, the 2024 Terms and its complex mass arbitration protocol and New Era Rules are not an "arbitration" within the meaning of the FAA. "Simply labeling something as 'arbitration' does not automatically bring it within the ambit of the FAA's protection." *Flores v. New York*

*Football Giants, Inc*, 150 F.4th 172, 183 & n. 49 (2d Cir. 2025) (cleaned up) (quoting *Heckman*, 120 F.4th at 691 (VanDyke, J., concurring). "[T]he FAA simply does not apply to and protect the mass arbitration model set forth in . . . New Era's Rules," and this is only more true after accounting for Defendant's modifications to these Rules. *Heckman*, 120 F.4th at 689.

Because the Terms' dispute resolution process is not an "arbitration" and contains numerous provisions designed to make it practically impossible for Plaintiffs and others to vindicate their statutory rights, it also is unenforceable under the effective vindication doctrine. *See Flores*, 150 F.4th at 181 & n.37 ("The only form of alternative dispute resolution protected by the FAA, though, is arbitration . . . . An agreement to submit statutory claims to a non-arbitral process may amount to 'contractual waiver[ ] of substantive rights and remedies' that falls outside FAA protection and is unenforceable under the foundational principles of the effective vindication doctrine.") (citing *Heckman*, 120 F.4th at 689-90).

And because the FAA does not apply, the rule of *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) holding "that class action waivers in consumer contracts of adhesion are unconscionable under California law," is not preempted. *Heckman*, 120 F.4th at 689. As a result, under *Discover Bank* the class action waiver in the 2024 Terms is unenforceable. *Id*.

**F. The dispute resolution provisions of the 2025 Terms, including the delegation clause, are invalid and unenforceable.**

The 2025 Terms, which Defendant contends apply to Plaintiff Dougherty because she did not opt-out of the 2025 Terms within a 30 day window, are also unconscionable and unenforceable.

**1. Plaintiff Dougherty validly opted out of the 2025 Terms.**

As a threshold matter, Plaintiff Dougherty validly opted out of the 2025 Terms by mailing her opt out notice on April 22, 2025. FAC ¶ 176. She then submitted an *additional* opt out notice

in June 2025. *Id.* Defendant does not challenge the validity of these opt-outs except to argue that the first was sent "too early" and the second "too late." MTC at 18.

Plaintiff Dougherty substantially complied with the opt out provision. There was "no wilful departure from the terms of the contract," and any defects were "easily remedied or compensated, so that [defendant] may get practically what the contract calls for." *See Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*, 41 Cal. App. 5th 357, 364 (2019); *JoySuds, LLC v. N.V. Labs, Inc.*, 668 F. Supp. 3d 240, 253 (S.D.N.Y. 2023) (observing that under New York law "[t]he measure of whether a party has adequately performed under a contract is substantial performance"); *see also Glass v. Tradesmen Int'l, LLC*, 2020 WL 820655, at *14 (N.D. Ohio Feb. 19, 2020) (upholding arbitration opt out even though "not strictly compliant" with the opt out procedure).[7]

### 2. The 2025 Terms cannot apply retroactively.

Defendant contends that the 2025 Terms apply retroactively: "This Arbitration Agreement applies to all Disputes between the parties whether the Dispute arose before or after the parties accepted this Agreement." 2025 Terms § 17.5(1). However, Defendant "was not entitled to unilaterally add such a [retroactive] provision here." *Ash*, 2024 WL 4195313, at *3. That is because "the implied covenant of good faith and fair dealing 'prevents a party from modifying an arbitration agreement once a claim has accrued or become known to it.'" *Id.* (alteration omitted) (citing, *inter alia*, *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (Ct. App. 2012)); *see Eiess v. USAA Federal Savings Bank*, 404 F. Supp. 3d 1240, 1251 (N.D. Cal., August 23, 2019) ("[T]he implied covenant of good faith and fair dealing would prevent USAA from retroactively applying contract changes to a customer claim that had already accrued."); *Anderson v. Binance*, 2026 WL 538293 (S.D.N.Y. Feb. 26, 2026) (citing *Peleg*, 204 Cal. App. 4th at 1465).

---

[7] Defendant's authorities mostly address circumstances where a plaintiff never opted-out, *see* MTC at 17, and none hold that an opt-out is invalid because it was received a few days late.

As explained in *Peleg*, if defendants could unilaterally change the arbitration clause that applied to already accrued claims it would allow the defendant "to manipulate the arbitration process, tailoring it to fit specific cases, either by making the process more difficult or more expensive for the [plaintiff], or by revoking the Agreement in the belief that a judicial forum is preferable." *Peleg*, 204 Cal. App. 4th at 1459. Defendant's actions here are a stark illustration: after months of informal dispute resolution and the Ninth Circuit's *Heckman* decision, and *after* the arbitration claims were filed, Defendant unilaterally imposed an updated arbitration clause to its own advantage. The Court should refuse to apply the 2025 Terms retroactively. *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 62 (Ct. App. 2013) ("Simply put, the revised agreement is irrelevant because Integrated may not apply it retroactively to claims that existed before the revision was imposed.").

### 3.   The 2025 Terms are procedurally unconscionable.

The 2025 Terms and their delegation clause are procedurally unconscionable for many of the same reasons as the 2024 Terms. They are part of an adhesive contract, they both contain and refer to complex legal terms and concepts that are indecipherable to the average person, beginning on page 21 of a 27 page contract, including onerous informal dispute resolution requirements (discussed below) and requiring a user to somehow understand the interplay between a normal arbitration procedure and what might happen if they become part of a "mass arbitration" under the Terms if 25 or more claims are filed. *See Rios*, 807 F. Supp. 3d at 986 (holding procedurally unconscionable for surprise a lengthy, 21-page, single-spaced contract and the mass arbitration protocol that applied to 25 or more claims "submitted by coordinated counsel").

The Terms, including the delegation clause, are also procedurally unconscionable because they were deployed without adequate notice and in bad faith after Defendant learned of the claims, in a deliberate attempt to stop claimants like Plaintiffs here from vindicating their rights under

consumer protection statutes. In the rare instances in which a new arbitration clause can be applied retroactively, the law requires more notice than for general contract formation. *Ash*, 2024 WL 4195313, at *4. Here, Defendant—after months of informal dispute resolution and after others filed arbitrations in JAMS—updated its arbitration clause to apply retroactively to those claims. And the only notice Defendant provided was "By clicking ACCEPT, you agree to our Terms of Service and you acknowledge that our Privacy Policy applies." *See* MTC at 5.

And the 2025 Terms still create confusion over to whom its delegation provision is actually delegating authority. They provide that "the arbitrator" or "the process arbitrator" will decide threshold disputes. But they offer no solution as to who will decide whether a threshold dispute over whether a process arbitrator can even be appointed goes to "the arbitrator" or "the process arbitrator" to rule on its own jurisdiction.

### 4. The 2025 Terms are substantively unconscionable.

The 2025 Terms are substantively unconscionable for many of the same reasons that apply to the 2024 Terms, including (a) a shortened time-period in which to bring claims, § 17.5(7); (b) a waiver of punitive damages,§ 17.4; (c) a $500 or max spend cap on liability; *id.*; (d) mass arbitration procedures that interfere with claimants' right to counsel of their choosing, *id.* § 17.5(6); (e) the purported application of New York law, which prevents Plaintiffs from obtaining unwaivable remedies available to them under California law; § 17.1; and (f) the one-sided carve out for intellectual property claims, § 17.5(9). *See* Part C.2, *supra*.

In addition, the 2025 Terms contain a substantively unconscionable unilateral modification provision, permitting Defendant to modify the entire Terms, including the arbitration clause, "at any time" and "at our discretion." *See* 2025 Terms § 3; *id.* § 10 ("We may modify this Agreement, including the Arbitration Agreement, at our discretion as provided under Section 3."). This is substantively unconscionable. *See Garcia v. Start Yoshi, Inc.*, 2024 WL 2274524, at *5 (N.D. Cal.

22

May 17, 2024) ("[A] provision of an arbitration agreement affording . . . the unilateral power to terminate or modify the contract is substantively unconscionable.") (citation omitted).

The 2025 Terms and delegation clause are also substantively unconscionable because of the new, one-sided, informal dispute resolution process, which was designed to and does impose a significant barrier for any plaintiff to obtain relief. To even challenge the delegation clause, a user needs to comply with Defendant's new "Pre-Arbitration Informal Dispute Resolution" procedure, which requires finding a "user ID Number," which is not required to play the game and was infeasibly difficult to obtain until Defendant reprogrammed the Games to frustrate Plaintiffs and the arbitrations. FAC ¶¶ 150–152, 168–169; *see* Terms § 17.5(4). It also requires for each purchase, "the date of the transaction, a related order number (if any), and the game, Virtual Item, or Service purchased." Terms § 17.5(4). Defendant makes money from micro-transactions— where players like Plaintiffs make frequent in-app purchasers. FAC ¶¶ 12-14, 71, 76. As a result, this information is not readily obtainable to a user, as Defendant is surely aware. To illustrate, Plaintiff Dougherty was only able to obtain a partial list of her many transactions, which exceed 465 purchases. *See* FAC ¶ 12; App'x A. In addition, the Terms require that an individual "identify the law or regulation and describe the facts specific to the circumstances that resulted in the claimed violation." § 17.5(4). While many facts are in Defendant's control, asking a user to essentially plead a detailed complaint before they are even allowed to initiate arbitration makes it impossible for anyone to arbitrate without legal assistance, and challenging even then.

The interactions between the provisions compound the unconscionability. Claimants "must start arbitration of all Disputes within 2 years" and "[f]ailure to timely engage in dispute resolution will permanently bar all claims." § 17.5(4). But before claimants can start any arbitration they must "first attempt to informally negotiation any Dispute for at least 45 days." *Id*. Statute of limitations are "tolled during the Negotiation Period," but the "Negotiation Period" is defined to "begin[] on

23

the date" Defendant "receive[s] a Notice of Dispute that complies with the requirements in Step 1 above." *Id*. So the already short time period to file claims slips away while claimants attempt to comply with the impossible level of detail required in the notice of dispute, and Defendant can render claims untimely by hunting for imperfect compliance with the burdensome notice of disputes requirements. "Accordingly, claimants may find themselves wholly unable to vindicate their claims by operation of the [Term's] ambiguous, subjective, and asymmetrical tolling provisions. Although Plaintiffs' statutory claims may carry multi-year limitations periods, those protections are meaningless under the [Term's] arbitration scheme, which can delay the filing of claims for years and which conditions tolling on [Zynga's] approval of Notices and its willingness to refrain from challenging their completeness in arbitration." *Rios*, 807 F. Supp. 3d at 993.

Moreover, the arbitration protocol interferes with a user's right to counsel. If a user wants an individual arbitrator to handle its dispute, she or he cannot retain counsel that might represent other users, *i.e.* the mass arbitration provision "induce[s] claimants to avoid the bellwether provision altogether by finding different counsel." *Rios*, 807 F. Supp. 3d at 991. And "would-be claimants may struggle to find counsel willing to represent a single or small number of similarly situated clients seeking small claims." *Id.* (citing *Pandolfi*, 2024 WL 4051754, at \*11); *Pandolfi*, 2024 WL 4051754, at \*6 ("[T]he practical reality is that claims based on a company-wide policy affecting consumers will often be brought by law firms that represent a multitude of claimants, especially when the dollar amounts are small."). In addition, this batching provision "has a built-in asymmetry" because "[w]hile it is predictable that a player will have claims that will trigger the [batching] provision, it is far from clear that [Defendant] would ever have claims that would trigger" it. *Id.* at \*7; *Rios*, 807 F. Supp. 3d at 991 ("Forcing claimants to avoid experienced counsel in favor of less qualified or experienced representation—simply to sidestep mass arbitration delays—imposes an unjustifiable cost manufactured by [Zynga] for its sole benefit.")

24

In addition, the delegation clause is substantively unconscionable because it appears to allow for important merits decisions to be made by a "Process Arbitrator." *See Pandolfi*, 2024 WL 4051754 at *8 ("The issue of arbitrability is a core merits determination and is hardly a ministerial decision that one would expect the Process Arbitrator to decide. . . . Finally, it is worth noting that, if the Avia Defendants were correct, *i.e.*, the Process Arbitrator has the power to adjudicate gateway issues of arbitrability, then there would be serious due process concerns.").

### 5.  The unconscionable provisions cannot be severed.

The Court should decline to enforce any of the 2025 Terms' dispute resolution procedures, as just like with the 2024 Terms, there are multiple unconscionable provisions and "these provisions are designed to structurally and systematically make arbitration an inferior forum." *See Pandolfi*, 2024 WL 4051754, at *13. "Because unconscionability permeates the entire arbitration agreement, severance would be an ineffective half-measure or, potentially, a reward for bad faith corporate actors." *Rios*, 807 F. Supp. 3d at 994. Further, the Court should not ignore Defendant's history of abusive and unconscionable dispute resolution provisions and conduct. Defendant has now unilaterally deployed three consecutive sets of Terms, which all contain clearly one-sided and unconscionable dispute resolution provisions, and the latest imposed on users *after* arbitration claims had already been filed.

## V.  CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to compel arbitration. Plaintiffs also recognize that this motion involves multiple sets of prolix terms and convoluted arbitration rules, and would be pleased to submit supplemental briefing on any issue.

Dated: May 12, 2026                     Respectfully submitted,


                                        **JANOVE PLLC**

                                        By: */s/ Raphael Janove*
                                        Raphael Janove
                                        115 Broadway, 5th Fl.
                                        New York, NY 10006
                                        646-347-3940
                                        raphael@janove.law

                                        Liana Roza Vitale
                                        979 Osos St., Ste. A5
                                        San Luis Obispo, CA 93401
                                        805-505-9550
                                        liana@janove.law

                                        *Attorneys for Plaintiffs*
                                        *and the Proposed Classes*

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(c), I hereby certify that this brief contains 8,461 words, including footnotes but excluding text specified in Local Rule 7.1(c).

Dated: May 12, 2026

*/s/ Raphael Janove*
Raphael Janove
