**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DOUGHERTY *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>ZYNGA, INC.,<br><br>       Defendant. | Case No. 1:26-cv-02772-PAE |

**DEFENDANT ZYNGA, INC.'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>MOTION TO COMPEL ARBITRATION</u>**

**MCDERMOTT WILL & SCHULTE LLP**

Andrew B. Kratenstein
Chris Combs
1 Vanderbilt Avenue
New York, NY 10017
(212) 547-5400

David Saunders (*pro hac vice*)
Emilie E. O'Toole (*pro hac vice*)
444 West Lake Street
Chicago, IL 60606
(312) 372-2000

*Attorneys for Defendant Zynga, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................1

    I.     PLAINTIFFS AGREED TO THE TERMS................................................................1

    II.    NEW YORK LAW GOVERNS THE TERMS' ENFORCEABILITY ........................................................................................2

    III.   THE TERMS' DELEGATION CLAUSES ARE VALID AND ENFORCEABLE ................................................................................................3

    IV.   THE TERMS' ARBITRATION PROVISIONS ARE VALID AND ENFORCEABLE ...........................................................................6

          A.    Plaintiffs Concede the Terms' Individual Arbitration Procedures are Valid ..................................................................6

          B.    The Arbitration Provisions Are Not Unconscionable ................................6

          C.    The 2025 Take-Two Terms Are Not Improperly Retroactive ..................................................................................8

          D.    The Terms' Arbitration Provisions Are Governed By The FAA ..........................................................................................9

    V.    OTHER PROVISIONS IN THE TERMS ARE NOT UNCONSCIONABLE ..............................................................................9

    VI.   ANY UNCONSCIONABLE TERMS ARE SEVERABLE .................................10

CONCLUSION....................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Binance*,
No. 20-cv-02803 (ALC), 2026 WL 538293 (S.D.N.Y. Feb. 26, 2026)......................................8

*Ash v. Axos Bank*,
No. 24-cv-1157-RSH-BJC, 2024 WL 4195313 (S.D. Cal. Sept. 13, 2024) ..............................1

*Baginsky v. Zynga, Inc.*,
No. 25-cv-1992 (ALC), 2026 WL 810330 (S.D.N.Y. Mar. 24, 2026) .................................3, 7

*Capstone Logistics Holdings, Inc. v. Navarrete*,
No. 17-cv-4819 (GBD), 2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018)......................................2

*Corsello v. Verizon N.Y., Inc.*,
976 F. Supp. 2d 354 (E.D.N.Y. 2013) ..................................................................................4, 6

*Curtis v. JPMorgan Chase Bank, N.A.*,
No. 22 CIV. 10286 (LGS), 2024 WL 283474 (S.D.N.Y. Jan. 25, 2024) ................................10

*DarkPulse, Inc. v. Crown Bridge Partners, LLC*,
No. 22 CIV. 8163 (VM), 2026 WL 696787 (S.D.N.Y. Mar. 12, 2026) ...................................2

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ..................................................................................................5

*Discover Bank v. Superior Court*,
36 Cal.4th 148 (2005) ............................................................................................................9

*Flores v. N.Y. Football Giants, Inc.*,
150 F.4th 172 (2d Cir. 2025) ..................................................................................................9

*Heckman v. Live Nation Entmn't, Inc.*,
120 F.4th 670 (9th Cir. 2024) ....................................................................................... *passim*

*John v. State Farm Mut. Auto. Ins. Co.*,
116 A.D.3d 1010 (2d Dep't 2014) ........................................................................................10

*Keller v. About, Inc.*,
No. 21-CV-228 (JMF), 2021 WL 1783522 (S.D.N.Y. May 5, 2021) ....................................10

*Kelly-Starkebaum v. Papaya Gaming Ltd.*,
No. 24-cv-02310, 2024 WL 5135799 (S.D.N.Y. Dec. 17, 2024) ............................................3

*Kutluca v. PQ N.Y. Inc.*,
    266 F. Supp. 3d 691 (S.D.N.Y. 2017)................................................................9

*Lewis v. ANSYS, Inc.*,
    No. 19-CV-10427 (AJN), 2021 WL 1199072 (S.D.N.Y. Mar. 30, 2021) .................................7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)..............................................................................10

*Pandolfi v. AviaGames, Inc.*,
    No. 24-5817, 2025 WL 2463742 (9th Cir. Aug. 27, 2025) .........................................5

*Pilon v. Discovery Commc'ns, LLC*,
    769 F. Supp. 3d 273 (S.D.N.Y. 2025)............................................................9

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018)..........................................................4, 8

*Rios v. HRB Digital LLC*,
    807 F. Supp. 3d 975 (N.D. Cal. Oct. 27, 2025) .................................................5

*Rolle v. VisionPro Connections Inc.*,
    No. 23 CV 09025 (LDH), 2025 WL 1309418 (E.D.N.Y. Jan. 31, 2025)................................7

*Vasquez v. N.Y.C. Dep't of Educ.*,
    No. 11-CV-3674 (AJN), 2015 WL 3619432 (S.D.N.Y. June 10, 2015) ...............................8

*Whalen v. NBA Props., Inc.*,
    No. 25-CV-06125 (JAV), 2025 WL 3013144 (S.D.N.Y. Oct. 28, 2025)...............................8

**Other Authorities**

JAMS Mass Arbitration Procedures and Guidelines,
    https://www.jamsadr.com/mass-arbitration-procedures (eff. May 1, 2024)..........................8

## PRELIMINARY STATEMENT

Plaintiffs' opposition ("Opp'n") confirms the very point Zynga's opening brief established – each Plaintiff knowingly accepted Terms containing a valid arbitration agreement and a valid delegation clause, and each Plaintiff is bound to arbitrate individually before JAMS.  Rather than dispute these facts, Plaintiffs rely on a non-binding Ninth Circuit decision – *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024) – that addressed a materially different arbitration agreement and materially different arbitration rules. They also advance sprawling unconscionability arguments that are directed to the *arbitration agreement as a whole* rather than specifically to the delegation clause.  Plaintiffs cannot change the undisputed facts: (1) all three Plaintiffs accepted the 2024 Take-Two Terms; (2) no Plaintiff opted out of the 2024 Take-Two Terms' arbitration agreement; and (3) the 2025 Terms expressly provide that all Plaintiffs remain bound to arbitrate under the 2024 Terms.  The Court should enforce the parties' agreements and compel Plaintiffs to arbitrate individually before JAMS.

## ARGUMENT

### I.    PLAINTIFFS AGREED TO THE TERMS

Plaintiffs do not dispute that they were notified of and assented to the Terms.  At most, Plaintiffs challenge whether they were notified that the 2025 Take-Two Terms contained a retroactivity provision, applying the Terms to disputes that arose before Plaintiffs assented. (Opp'n at 14.)  But Plaintiffs neither identify any authority requiring such specific notice, nor do they challenge that they were on notice of the updated Terms.[1]  Critically, the transferor court already determined that a valid agreement exists, which is law of the case. (Def. Mem. at 13-14.)

---

[1] The single case Plaintiffs cite is inapposite, as the plaintiff was not provided an opportunity to assent.  *See Ash v. Axos Bank*, No. 24-cv-1157-RSH-BJC, 2024 WL 4195313, at *4 (S.D. Cal. Sept. 13, 2024).  By contrast, Plaintiffs were notified of the new terms via a pop-up and then assented to the new terms by clicking "Accept."  (Ungberg Decl. ¶¶ 15-19, 28-29, 40, 59, 66, 70.)

Plaintiffs likewise do not dispute that no Plaintiff opted out of the 2024 Take-Two Terms. (*Id.* at 16-18 n.5.)  Plaintiffs dispute only whether Dougherty validly opted out of the 2025 Take-Two Terms.  (Opp'n at 19-20.)  Dougherty's opt out on April 17, 2025, was invalid because it was too early, and her subsequent opt out on June 17, 2025, was too late.  (Def. Mem. at 17-18.)  But, regardless, individual arbitration before JAMS is required by both Terms.  (Ungberg Decl. Ex. B §§ 15.5(6), Ex. C §§ 17.5(6).)

## II.    NEW YORK LAW GOVERNS THE TERMS' ENFORCEABILITY

The Terms state that they are governed by New York law.  (Ungberg Decl. Ex B § 15.1, Ex. C § 17.1.)  Plaintiffs are incorrect that the location of Zynga's parent company, Take-Two, which is headquartered in New York and is a party to the Terms, has no bearing on the validity of the Terms' choice of New York law.  (Opp'n at 9-10.)  Take-Two has numerous subsidiaries and affiliates nationwide, establishing an interest in applying a uniform choice-of-law provision across all its subsidiaries.[2]  *See Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-cv-4819 (GBD), 2018 WL 6786338, at *23-25 (S.D.N.Y. Oct. 25, 2018) (upholding choice of law provision where company had interest in uniform interpretation of contract nationally and citing cases).

Plaintiffs are also incorrect that Zynga's position that New York law applies is inconsistent with the venue transfer opinion.  (Opp'n at 10.)  Zynga argued, and the transferor court agreed, that whether New York or California law applies should be decided by this Court – *not* that California law would apply upon transfer.  (ECF No. 56 at 9-11.)  As explained further in Zynga's Motion to Dismiss, New York law applies.

---

[2] The sole case Plaintiffs cite in support of this position is distinguishable as it involved a subsidiary's choice of law, not the parent company's choice of law.  *See DarkPulse, Inc. v. Crown Bridge Partners*, *LLC*, No. 22 CIV. 8163 (VM), 2026 WL 696787, at *7 (S.D.N.Y. Mar. 12, 2026).

## III.    THE TERMS' DELEGATION CLAUSES ARE VALID AND ENFORCEABLE

There is no dispute that questions of arbitrability are delegated to the arbitrator under the Terms.  (Def. Mem. at 19-20.)  Plaintiffs thus improperly conflate their challenges to the conscionability of the Terms' delegation clauses with their challenges to the arbitration clauses. (Opp'n at 10-14.)  A court must consider the unconscionability of the delegation clause *before* assessing the unconscionability of the arbitration provision or any other terms because "[i]f the delegation clause is enforceable, the question of the agreement's enforceability otherwise must be left to the arbitrator."  *Kelly-Starkebaum v. Papaya Gaming Ltd.*, No. 24-cv-02310, 2024 WL 5135799, at *8 (S.D.N.Y. Dec. 17, 2024).  The Terms' delegation clauses are not unconscionable.

*First*, the Terms provide sufficient notice of the delegation clause.  Notice of the arbitration clause appears on the very first page of both Terms, titled in bold and underlined.  (Ungberg Decl. Ex. B at 1, Ex. C at 1.)  Although the first page does not specifically mention the delegation clause, notice of the arbitration provision at the beginning of an agreement curbs any surprise regarding a delegation clause.  *Kelly-Starkebaum*, 2024 WL 5135799, at *9.

*Second*, the Terms are not contracts of adhesion because they allowed Plaintiffs to opt out. *Id.* (finding no adhesion contract because terms "allowed [plaintiff] to opt out of the arbitration agreement (including the delegation clause)"); *Baginsky v. Zynga, Inc.*, No. 25-cv-1992 (ALC), 2026 WL 810330, at *4 (S.D.N.Y. Mar. 24, 2026) (finding no procedural unconscionability of delegation clause in part because terms included 30-day opt out).  By contrast, *Heckman* involved a conceded contract of adhesion with no opt out.  120 F.4th at 681.[3]  Plaintiffs could opt out of the arbitration clauses and two of them did opt out from the 2025 Take-Two Terms.

---

[3] Plaintiffs incorrectly assert the Peak Terms required a hand signature to apply updated terms. (Opp'n at 11.)  Rather, the Peak Terms specifically allow modification by posting on the website. (Ungberg Decl. Ex. A ¶ 2.)  Plaintiffs' reliance on Paragraph 18 of the Peak Terms is misleading, as that provision expressly excludes any terms that permit modification.

*Third*, incorporating arbitration rules from entities such as JAMS is not unconscionable where, as here, it is clear which rules apply and the rules are readily available online. *See Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 557 (S.D.N.Y. 2018) (finding no procedural unconscionability where inclusion of third-party rules was apparent and the rules were available online).

*Fourth*, the 2024 Take-Two Terms' inclusion of the New Era mass arbitration rules does not make the delegation clauses substantively unconscionable.  (Opp'n at 13-14.)  Plaintiffs rely on *Heckman*, which found New Era's 2021 mass arbitration rules unconscionable.  (Opp'n at 15-17.)  But those rules would never have applied to Plaintiffs because the 2024 Take-Two Terms apply the New Era rules "in effect when the Mass Arbitration Disputes are filed" (Ungberg Decl. Ex. B ¶ 15.5(9)), and New Era revised its rules in 2023, 2024, 2025, and 2026 (Janove Decl. Ex. B at 46-49).  Moreover, no mass arbitration is pending.  Even assessing unconscionability at the time of formation, as Plaintiffs suggest (Opp'n at 10), the Terms' forward-looking application of rules in effect at the time of filing the dispute weighs against such a finding.  Plaintiffs improperly seek an advisory opinion as to what would happen *if* a mass arbitration occurs.  *See Corsello v. Verizon N.Y., Inc.*, 976 F. Supp. 2d 354, 357 (E.D.N.Y. 2013) (rejecting request for advisory opinion). The Court should reject that invitation.

Plaintiffs' claim that the issues with the New Era rules identified in *Heckman* were not addressed by rule changes is also inaccurate.  For example, Plaintiffs argue that the bellwether process in the 2021 New Era rules is still present, causing delay and requiring bellwether determinations to be used as precedent in other cases.  (Opp'n at 13-14, 16.)  But the Ninth Circuit did not find that all bellwether processes are unconscionable.  Rather, it found that mandatory precedential use of the bellwether cases and the inability for non-bellwether claimants to access those decisions was impermissible.  *Heckman*, 120 F.4th at 684-85.  The current New Era rules

remove the binding effect of bellwether decisions *and* make them accessible to all mass arbitration claimants.  (Janove Decl. Ex. B ¶ 2(y)(ii)-(iii).)  The Ninth Circuit also did not determine that the bellwether proceedings caused delay for other individual claimants.[4]  And Plaintiffs ignore that the 2024 Take-Two Terms' batching provision expressly permits waiver of the delay by the parties to allow individual requested cases to proceed in the initial batch.  (Ungberg Decl. Ex. B §15.5(9).)

As for the arbitrator selection process, the Ninth Circuit in *Heckman* took issue with New Era's ability to replace a neutral "at its sole discretion," taking any power away from the claimant to select an arbitrator. *Heckman*, 120 F.4th at 678.  That discretionary language has been removed.  (Janove Decl. Ex. B ¶ 2(k).)  The arbitration provision also does not interfere with Plaintiffs' right to choose their own counsel.  (Opp'n at 17.)  A Mass Arbitration Dispute includes any dispute "relating to the same or similar subject matter" and does not require that the dispute be brought by the same counsel.[5]  (Ungberg Decl. Ex. B § 15.5(9).)

*Fifth*, if the delegation clause presented a conflict of interest for the arbitrator simply because the arbitrator would decide the enforceability of the arbitration agreement, delegation clauses would always be unconscionable – they are not.  (Opp'n at 14.)

*Sixth and finally*, the Terms' other provisions do not render the delegation clauses unconscionable.  For a delegation clause to be unconscionable because of unrelated provisions, Plaintiffs must explain *how* those provisions make the delegation clause unconscionable. *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 118 (2d Cir. 2025).  Plaintiffs do not explain how any other provision of the Terms makes the delegation clauses unconscionable or cite any supporting

---

[4] *Pandolfi v. AviaGames, Inc.*, No. 24-5817, 2025 WL 2463742 (9th Cir. Aug. 27, 2025), applied mass arbitration rules with different bellwether and batching process than what is at issue here.

[5] Plaintiffs' reliance on *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 987 (N.D. Cal. Oct. 27, 2025), is misplaced as it applied California law and different procedures.

case law.  Accordingly, the arbitrator must determine the arbitrability of Plaintiffs' claims.

## IV.    THE TERMS' ARBITRATION PROVISIONS ARE VALID AND ENFORCEABLE

Because the Terms require the arbitrator to decide enforceability, whether the Terms (including the arbitration provisions) are unconscionable should be decided by the arbitrator. If this Court decides the issue (it should not), the arbitration provisions are valid and enforceable.

### A.    Plaintiffs Concede the Terms' Individual Arbitration Procedures are Valid

Plaintiffs do not object to the Terms' individual arbitration provisions.  That concession is critical, because Zynga seeks to compel three individual Plaintiffs to individual arbitrations before JAMS.  (Def. Mem. at 24-25.)   No mass arbitration was filed involving these Plaintiffs.[6] Thus, Plaintiffs' argument that a mass arbitration already exists because their counsel previously filed (and withdrew) hundreds of individual arbitrations on behalf of *different* claimants (Opp'n at 2, 7), improperly seeks (again) an advisory opinion as to what would happen *if* they or anyone else files another mass arbitration.  *See Corsello*, 976 F. Supp. 2d at 357.

### B.    The Arbitration Provisions Are Not Unconscionable

Plaintiffs argue the arbitration provisions in the Terms are procedurally unconscionable because:  (1) the Terms are unclear as to which arbitrator decides the delegated issues (Opp'n at 12, 22); (2) the 2024 Take-Two Terms' batching procedure would surprise a user (*id.* at 15, 16, 24); (3) the notices of updated Terms did not indicate changes to the dispute resolution provision (*id.* at 2, 14); and (4) the provision contains legal jargon (*id.* at 21).  Each argument fails.

*First*, the 2024 Take-Two Terms state clearly when a dispute is arbitrated before a mass arbitration panel at New Era versus an individual arbitration before JAMS.  (Ungberg Decl. Ex. B

---

[6] Plaintiffs' claim that Garcia filed an arbitration demand (Opp'n at 7) is contradicted by the FAC (FAC ¶ 159).  Zynga has no record of Garcia filing an arbitration.

§ 15.5(6).)  The 2025 Take-Two Terms assigns one arbitration entity, JAMS, to handle both individual and mass arbitrations.  (*Id.* Ex. C § 17.5(6).) Thus, there is no ambiguity.  *See Rolle v. VisionPro Connections Inc.*, 2025 WL 1309418, at *8-9 (E.D.N.Y. Jan. 31, 2025) (finding no ambiguity in agreement that applied different arbitration rules in different circumstances).

*Second*, the batching procedure in the 2024 Take-Two Terms is likewise laid out in detail and applies only to mass arbitrations, not individual arbitrations.  (Ungberg Decl. Ex. B § 15.5(9).)

*Third*, clear and conspicuous notice of the new Terms was provided by pop-ups that required users to accept the Terms.  (Ungberg Decl. ¶¶ 29, 40.)  Upon clicking the link to the Terms, users were notified on the first page in bold font that the Terms contained a mandatory arbitration provision.  (Ungberg Decl. Ex. B at 1.)  *See also Baginsky*, 2026 WL 810330, at *4 (notice of terms upon sign-in is reasonable notice of arbitration agreement).  Courts routinely find such notice sufficient (Def. Mem. at 14-16), and Plaintiffs cite no contrary case law.

*Fourth*, inclusion of "legal jargon" does not make a purported contract of adhesion unconscionable. *See Lewis v. ANSYS, Inc.,* 2021 WL 1199072, at *6 (S.D.N.Y. Mar. 30, 2021) (rejecting unconscionability where arbitration provisions were buried in dense documents).

Plaintiffs' substantive unconscionability arguments fare no better.  Plaintiffs contend that: (1) the changes to the New Era rules after *Heckman* did not cure the issues with the prior rules (Opp'n at 15-17); (2) the 2025 Take-Two Terms allow a process arbitrator to decide merits issues (*id.* at 22, 25); (3) the 2025 Take-Two Terms include a "one-sided" informal dispute resolution procedure (*id.* at 23); and (4) the Terms carve out intellectual property claims from arbitration (*id.* at 17, 22).  Again, each argument fails.

*First*, for the same reasons discussed above in Section III with respect to the delegation clauses, inclusion of the New Era rules in the 2024 Take-Two Terms does not make the arbitration

clauses substantively unconscionable.

*Second*, the JAMS MAP process administrator cannot decide merits issues. Both the 2025 Take-Two Terms and the JAMS Mass Arbitration Procedures and Guidelines provide that the process administrator may address only purely administrative or procedural issues.[7]

*Third*, a pre-dispute resolution provision is neither one-sided nor unconscionable. *See Whalen v. NBA Props., Inc.*, No. 25-CV-06125 (JAV), 2025 WL 3013144, at *3-4 (S.D.N.Y. Oct. 28, 2025) (finding mutual pre-dispute resolution procedure similar to the procedure here was valid under New York law). Requiring Plaintiffs to provide identification or purchase information is also necessary to facilitate a meaningful process. (Ungberg Decl. Ex. C § 17.5(4).)

*Fourth*, Plaintiffs provide no basis for their assertion that Zynga is more likely to bring an intellectual property claim than a user, making it unconscionable, as the provision is mutual. *See Plazza*, 289 F. Supp. 3d at 559 (rejecting same argument).

Finally, even if any aspect of the arbitration provisions are unconscionable (they are not), all users can opt out of the provision, tempering any unconscionability. (Def. Mem. at 20.)

### C.     The 2025 Take-Two Terms Are Not Improperly Retroactive

Relying almost exclusively on inapplicable California law,[8] Plaintiffs argue the 2025 Take-Two Terms[9] impermissibly modified the Terms to apply retroactively to disputes arising before

---

[7] *See* JAMS Mass Arbitration Procedures and Guidelines, https://www.jamsadr.com/mass-arbitration-procedures, (eff. May 1, 2024) at Proc. 3(e); *see also* Ungberg Decl. Ex. C § 17.5(6).

[8] The only New York case Plaintiffs cite, *Anderson v. Binance*, No. 20-cv-02803 (ALC), 2026 WL 538293 (S.D.N.Y. Feb. 26, 2026), is inapposite, as it turned on the arbitration provision's lack of temporal clarity about applicable claims. *Id.* at *9. By contrast, the 2025 Take-Two Terms, state that they apply to claims that arose before or after acceptance. (Ungberg Decl. Ex. C § 17.5(1).)

[9] The same retroactivity provision Plaintiffs complain of in the 2025 Take-Two Terms is in the 2024 Take-Two Terms (Ungberg Decl. Ex. B § 15.5(1)), yet they make no argument that it is unconscionable in those Terms, waiving the argument. *Vasquez v. N.Y.C. Dep't of Educ.*, No. 11-CV-3674 (AJN), 2015 WL 3619432, at *14 (S.D.N.Y. June 10, 2015).

the parties accepted the agreement, violating the covenant of good faith and fair dealing. (Opp'n at 20.)  Retroactivity provisions are not inherently unconscionable.  *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 703 (S.D.N.Y. 2017).  The Ninth Circuit's rebuke of Ticketmaster's retroactivity clause turned on the allowance of unilateral modification *without* the user's agreement.  *Heckman*, 120 F.4th at 682-83.  As explained above, the Terms do not permit unilateral modification – the user must agree to the Terms to be bound.  Regardless, Plaintiffs modified the agreement by accepting the 2025 Take-Two Terms, which New York law permits.  *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025).

### D.    The Terms' Arbitration Provisions Are Governed By The FAA

It is indisputable that the Terms incorporate valid arbitration procedures before JAMS that are governed by the FAA.  Plaintiffs argue that the 2024 Take-Two Terms' inclusion of New Era's mass arbitration procedures prevents it from constituting valid arbitration under the FAA. (Opp'n at 18-19.)  But, again, Zynga seeks to compel Plaintiffs to three individual arbitrations before JAMS, not to a mass arbitration.  *See supra* § IV.A.  Regardless, *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005), is inapplicable here because New York law applies.[10]

### V.    OTHER PROVISIONS IN THE TERMS ARE NOT UNCONSCIONABLE

Beyond the delegation and arbitration clauses, Plaintiffs argue that other provisions in the Terms are substantively, but not procedurally, unconscionable.   (Opp'n at 16-17, 22-24.) These include:  (1) unilateral modification of the Terms without notice (*id.* at 22); (2) the time limitation on disputes (*id.* at 17, 23-24); and (3) the damages limitation (*id.* at 6, 22). Critically, Plaintiffs do not argue that these provisions make either the delegation or the arbitration clauses  unconscionable,  just  that  these  provisions  are  independently  unconscionable.

---

[10] And *Flores v. N.Y. Football Giants, Inc.*, 150 F.4th 172 (2d Cir. 2025), is irrelevant too because it addresses an entirely different dispute resolution procedure.

Again, because the Terms delegate enforceability issues to the arbitrator, the Court need not consider these arguments.  In any event, these provisions are not unconscionable because:

- The Terms cannot be unilaterally modified without notice and assent.  Unlike the terms in *Heckman* and, as illustrated by implementation of the 2025 Take-Two Terms, Zynga provides notice of any changes and requires acceptance of the new Terms *before* they apply to a user.  (Ungberg Decl. ¶¶ 38-43, Ex. B §§ 1.2, 15.5(11), Ex. C §§ 3, 17.5(10)) (stating that notice of any changes will be provided and including an opt-out procedure if the arbitration provision is updated).

- The Terms are not contracts of adhesion, as they require mutual assent and permit the players to opt out, and even if they were, there is a two-year period to file the dispute (Ungberg Decl. Ex. B § 15.5(7), Ex. C § 17.5(7)), which is reasonable.  *See John v. State Farm Mut. Auto. Ins. Co.*, 116 A.D.3d 1010, 1011 (2d Dep't 2014) (concluding "parties to a contract may agree to limit the period of time within which an action must be commenced to a period shorter than that provided by the applicable statute of limitations," so long as the contract is not one of adhesion or the period is unreasonably short); *Keller v. About, Inc.*, No. 21-CV-228 (JMF), 2021 WL 1783522, at *3 (S.D.N.Y. May 5, 2021).

- The Terms expressly limit the arbitrator's ability to award punitive damages (Ungberg Decl. Ex. B §§ 15.4, 15.5(6)), which is permitted under New York law.  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58-63 (1995) (finding New York law prohibiting arbitrators from awarding punitive damages applies to contracts governed by the FAA that prohibit punitive damages).

## VI.    ANY UNCONSCIONABLE TERMS ARE SEVERABLE

Plaintiffs are incorrect that this Court could not sever any unconscionable Term provisions.  (Opp'n at 18, 25.)  Both Terms contain severability clauses as to mass arbitration.  (Ungberg Decl. Ex. B §§ 15.5(9), (12), Ex. C § 17.5(11).)  Plaintiffs have not established that unconscionability permeates the Terms such that it would render severance ineffective.  *See Curtis v. JPMorgan Chase Bank, N.A.*, No. 22 CIV. 10286 (LGS), 2024 WL 283474, at *5 (S.D.N.Y. Jan. 25, 2024) (noting "an unconscionable provision can be severed . . . if the provision is isolated and does not go to the core of the agreement").

## CONCLUSION

For all these reasons, Plaintiffs should be compelled to arbitrate individually before JAMS.

Dated:  New York, New York
        June 5, 2026

MCDERMOTT WILL & SCHULTE LLP

/s/ Andrew B. Kratenstein

Andrew B. Kratenstein
Chris Combs
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400

David Saunders (*pro hac vice*)
Emilie E. O'Toole (*pro hac vice*)
MCDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000

*Counsel for Defendant Zynga, Inc.*

11