**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DOUGHERTY *et al.*,

               Plaintiffs,

     v.

ZYNGA, INC.,

               Defendant.

Case No. 1:26-cv-02772-PAE

 

**DEFENDANT ZYNGA, INC.'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

 

**MCDERMOTT WILL & SCHULTE LLP**

Andrew B. Kratenstein
Chris Combs
1 Vanderbilt Avenue
New York, NY 10017
(212) 547-5400

David Saunders (*pro hac vice*)
Emilie E. O'Toole (*pro hac vice*)
444 West Lake Street
Chicago, IL 60606
(312) 372-2000

*Attorneys for Defendant Zynga, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .........................................................................................................1

ARGUMENT....................................................................................................................................1

    I.      THE TERMS ENCOMPASS PLAINTIFFS' CLAIMS.........................................1

    II.    NEW YORK HAS SUFFICIENT CONTACTS WITH THE
          TRANSACTIONS .................................................................................................3

    III.   PLAINTIFFS' FALSE DISCOUNT CLAIMS FAIL UNDER
          NEW YORK LAW .................................................................................................4

    IV.   PLAINTIFFS' FALSE DISCOUNT CLAIMS FAIL UNDER
          CALIFORNIA LAW .............................................................................................6

    V.    PLAINTIFFS' VPPA CLAIM FAILS....................................................................8

CONCLUSION................................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afriyie v. NBCUniversal Media, LLC,*
775 F. Supp. 3d 791 (S.D.N.Y. 2025)........................................................................................10

*Ariix, LLC v. NutriSearch Corp.,*
985 F.3d 1107 (9th Cir. 2021) ....................................................................................................7

*In re Arris Cable Mod. Consumer Litig.,*
No. 17-cv-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .................................................7

*Berryman v. Reading Int'l, Inc.,*
24 Civ. 750 (PAE), 2026 WL 699835 (S.D.N.Y. Mar. 12, 2026) ....................................................9

*Boyd v. SunButter, LLC,*
762 F. Supp. 3d 931 (C.D. Cal. 2025) .........................................................................................4

*C.W. v. Epic Games, Inc.,*
No. 19-cv-03629-YGR, 2020 WL 5257572 (N.D. Cal. Sept. 3, 2020) ...........................................6

*Courtright v. Epic Games, Inc.,*
795 F. Supp. 3d 1156 (W.D. Mo. 2025) .......................................................................................7

*Cruden v. Bank of N.Y.,*
957 F.2d 961 (2d Cir. 1992)........................................................................................................2

*DarkPulse, Inc. v. Crown Bridge Partners, LLC,*
No. 22 Civ. 8163 (VM), 2026 WL 696787 (S.D.N.Y. Mar. 12, 2026) ...........................................3

*Doe 1 v. AOL, LLC*
552 F.3d 1077 (9th Cir. 2009) ..............................................................................................3, 4

*Doe v. Roblox Corp.,*
602 F. Supp. 3d 1243 (N.D. Cal. 2022) .......................................................................................6

*Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.,*
414 F.3d 325 (2d Cir. 2005)........................................................................................................2

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC,*
20-cv-5120 (LJL), 2022 WL 1997207 (S.D.N.Y. June 6, 2022)......................................................2

*Golden v. NBCUniversal Media, LLC,*
22 Civ. 9858 (PAE), 2025 WL 2530689 .......................................................................................9

*Guerriero v. BB OPCO, LLC*,
24-cv-8778 (PKC), 2026 WL 878716 (S.D.N.Y. Mar. 30, 2026) ....................................................5

*Heskiaoff v. Sling Media Inc.*,
719 F. App'x 28 (2d Cir. 2017) ....................................................................................................2

*King v. Bumble*,
393 F. Supp. 3d 856, 864 (N.D. Cal. 2019) ..................................................................................3

*Kulp v. Munchkin, Inc.*,
678 F. Supp. 3d 1158 (C.D. Cal. 2023) .........................................................................................7

*Lee v. Springer Nature Am., Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. 2025)...........................................................................................10

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)..............................................................................................8

*McGill v. Citibank N.A.*,
393 P.3d 85 (Cal. 2017) ..................................................................................................................8

*Medtronic, Inc. v. Walland*,
21 Civ. 2908 (ER), 2021 WL 4131657 (S.D.N.Y. Sept. 10, 2021) ................................................4

*Mindspirit, LLC v. Evalueserve Ltd.*,
346 F. Supp. 3d 552 (S.D.N.Y. 2018)..............................................................................................3

*Ochoa v. Zeroo Gravity Games LLC*,
No. CV 22-5896-GW-Asx, 2023 WL 4291650 (C.D. Cal. May 24, 2023)....................................6

*Radiology & Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys.,
U.S.A., Inc.*,
No. 20-CIV-4117 (AKH), 2021 WL 149027, at *5 (S.D.N.Y. Jan. 15, 2021)............................2, 3

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ..........................................................................................................8

*Salazar v. Paramount Glob.*,
133 F.4th 642 (6th Cir. 2025) ..........................................................................................................8

*Sandoval v. Uphold HQ Inc.*,
21-CV-7579 (VSB), 2024 WL 1313826 (S.D.N.Y. Mar. 27, 2024) ...........................................2, 3

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (N.Y. 1999) ...............................................................................................................5

*Smith v. Apple, Inc.*,
583 F. Supp. 3d 554 (S.D.N.Y. 2022)...........................................................................................4, 5

*Solomon v. Flipps Media Inc.*,
136 F.4th 41 (2d Cir. 2025) ...............................................................................................9

*Sutton v. TED Found., Inc.*,
23 Civ. 9219 (DEH), 2026 WL 207000 (S.D.N.Y. Jan. 27, 2026)....................................10

*U.S. v. Moseley*,
980 F.3d 9 (2d Cir. 2020)...............................................................................................1, 3

*Vizcarra v. Michaels Stores, Inc.*,
710 F. Supp. 3d 718 (N.D. Cal. 2024) ...............................................................................7

*Xu v. Reuters News & Media Inc.*,
No. 24 Civ. 2466 (PAE), 2025 WL 488501 ........................................................................9

**Statutes**

18 U.S.C. § 2710...............................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................................7

Fed.R. Civ. P. 12(b)(1)......................................................................................................10

Fed.R. Civ. P. 12(b)(6)......................................................................................................10

**PRELIMINARY STATEMENT**

Plaintiffs' opposition ("Opp'n") confirms why the FAC should be dismissed if Plaintiffs are not compelled to arbitrate. Plaintiffs' claims arise from their access to the Games and purchases of Virtual Items, both of which fall well within the Terms' New York choice-of-law clause. New York law therefore applies to Plaintiffs' legally deficient false-discount claims and forecloses Plaintiffs' California statutory claims. Even under California law, Plaintiffs do not identify the specific offers on which each Plaintiff relied, and their new focus on addiction allegations cannot cure those defects. The VPPA claim fails because Plaintiffs cannot allege that their information was disclosed by Zynga in violation of that statute.

**ARGUMENT**

**I.    THE TERMS ENCOMPASS PLAINTIFFS' CLAIMS**

Unable to overcome the transferor court's finding that the parties formed a "valid" contract "governed by, and construed under, the laws of the State of New York," and the "sufficient contacts" standard in *Moseley* (Def. Mem. at 6-8), Plaintiffs argue – for the first time – that their claims fall outside the Terms altogether, because they "assert claims under California consumer protection statutes, and not under the agreement . . . ." (Opp'n at 8.)

Plaintiffs ignore the Terms' broad language, which encompasses Plaintiffs' access to the Games and purchase of virtual items. The first page of the Terms specifically states, "These Terms of Service ('Agreement') cover the terms and conditions by which we offer you access to use our games, apps, products, websites, and other services (the 'Services') as well as Virtual Items [] and your Account . . . ." (Ungberg Decl. Ex. B. at 1, Ex C. at 1.) The Parties' choice-of-law clause, which incorporates the Terms' broad definition of "Agreement," states that "[t]his Agreement is entered into in the State of New York and shall be governed by, and construed under the laws of the State of New York without regard to conflict of laws rules." (Ex. B. § 15.1, Ex C. § 17.1.)

1

Read as a whole, this language is "sufficiently broad as to encompass the entire relationship between the contracting parties." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 20-cv-5120 (LJL), 2022 WL 1997207, at *16 (S.D.N.Y. June 6, 2022).[1] Plaintiffs' claims arise from their use of the Services and their purchase of Virtual Items as defined in the Terms. *See, e.g.*, *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) ("[T]he entire contract must be considered and all parts of it reconciled, if possible, in order to avoid an inconsistency.") (citation modified). Thus, New York law applies to Plaintiffs' claims, and their California claims should be dismissed.

The only case Plaintiffs cite involving terms of service held that "the district court properly determined that New York law applied to Plaintiffs' non-contractual statutory claims under New York's choice-of-law principles" when Plaintiffs were New York residents. *Heskiaoff v. Sling Media Inc.*, 719 F. App'x 28, 31 (2d Cir. 2017) (summary order). The case is silent as to how the district court should treat claims brought by out-of-state residents. In addition, the terms of use in *Heskiaoff* (unlike the Terms here) did not contain broad language similar to the Terms' introductory statement that the terms "cover the terms and conditions by which we offer you access to use our games, apps . . . as well as Virtual Items." (Ungberg Decl. Ex. B. at 1, Ex C. at 1.) Courts routinely find that such New York choice-of-law provisions prevent Plaintiffs from asserting claims under the laws of other states. (Def. Mem. at 8.) *See also Sandoval v. Uphold HQ Inc.*, 21-CV-7579 (VSB), 2024 WL 1313826, at *5 (S.D.N.Y. Mar. 27, 2024) (terms selecting New York law precluded claims under the consumer protection laws of other states); *Radiology &*

---

[1] *Fleetwood* (cited by Plaintiffs) involved an agreement underlying a single short-term advance loan provided to a Texas-based small business that included a New York choice-of-law provision. 2022 WL 1997207, at *18 (denying summary judgment as to plaintiffs' cause of action alleging violation of Texas's usury laws, due to the "weight of in-Circuit and New York cases applying contractual choice-of-law principles to usury claims."). In *Finance One Public Company Limited v. Lehman Brothers Special Financing, Inc.* (also cited by Plaintiffs), the court held that the New York choice-of-law clause in a derivatives trading agreement was not broad enough to encompass setoff rights arising from bills of exchange outside the agreement. 414 F.3d 325, 333-36 (2d Cir. 2005). Neither case involved broadly worded terms of service as here.

*Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys., U.S.A., Inc.*, No. 20-CIV-4117 (AKH), 2021 WL 149027, at *5 (S.D.N.Y. Jan. 15, 2021) (Florida consumer protection claims precluded because the agreement "contains a broad choice-of-law provision selecting New York law"); *King v. Bumble*, 393 F. Supp. 3d 856, 864 (N.D. Cal. 2019) (enforcing New York choice-of-law clause because "[t]hough the Terms use a variant of the unfavored 'governed by' phrasing, the Terms expressly include claims related to 'access [and] Content'").

## II.    NEW YORK HAS SUFFICIENT CONTACTS WITH THE TRANSACTIONS

Because New York law applies, including to Plaintiffs' statutory claims, Zynga need only show, at most, that New York "has sufficient contacts with the transaction" and that there is no "fraud or violation of public policy." *U.S. v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020).  Zynga meets this standard because (i) Take-Two, Zynga's parent company – with whom Judge Illston found that each Plaintiff had formed a valid contract (ECF No. 56 at 7) – is headquartered in New York; and (ii) Plaintiffs "cannot credibly claim that the application of New York law by a New York court would violate New York's public policy." *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583-84 (S.D.N.Y. 2018).

Plaintiffs argue that California has a materially greater interest than New York in this litigation.  (Opp'n at 9-12.)  But that standard does not apply under *Moseley*, 980 F.3d at 20. Even applying that standard, Plaintiffs contracted with *Take-Two*, not Zynga.[2]

Plaintiffs' case law is also inapposite.  As Judge Illston noted (ECF No. 56 at 9-10), *Doe 1 v. AOL* LLC, 552 F.3d 1077 (9th Cir. 2009), involved a potential transfer of *forum* from a federal

---

[2] Plaintiffs cite *DarkPulse, Inc. v. Crown Bridge Partners, LLC*, No. 22 Civ. 8163 (VM), 2026 WL 696787, at *7 (S.D.N.Y. Mar. 12, 2026), for the proposition that "it is bedrock law that subsidiaries are distinct legal entities from the parent corporation." That principle has no bearing here, where Plaintiffs contracted *with the parent company*.  Regardless, *DarkPulse* centered on the incorporation of an unrelated subsidiary in Nevada "years after" the execution of the financial instrument in dispute. *Id.*

court in California to Virginia state court. And *Medtronic, Inc. v. Walland*, 21 Civ. 2908 (ER), 2021 WL 4131657, at *4-7 (S.D.N.Y. Sept. 10, 2021), involved a choice-of-law clause designed to circumvent California's ban on employee non-compete clauses.  Plaintiffs fail to demonstrate how the application of New York's consumer protection statute, under which Plaintiffs chose not to sue, would violate California public policy even if it might lead to a different result on these facts.  *See, e.g.*, *Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 941 (C.D. Cal. 2025) (noting the CLRA and GBL §§ 349-50 "similarly proscribe deceptive acts or practices and false advertising in the conduct of any business" and both employ a "reasonable consumer" test).

Finally, judicial estoppel does not apply.  (Opp'n at 12.)  Zynga contended before the transferor court that New York law applied.  (ECF Nos. 38 at 13-16, 40 at 9-11.)  Judge Illston addressed the validity of the Terms' forum selection clause (ECF No. 56 at 9), while acknowledging *only* that this Court applying a New York choice-of-law clause *could* apply the law of another state *if* this Court found that New York did not have sufficient contacts with the transactions at issue or applying New York law violated a fundamental principle of justice. (*Id.* at 10-11.)  As discussed above and in Zynga's opening brief, neither exception applies here.

## III.    PLAINTIFFS' FALSE DISCOUNT CLAIMS FAIL UNDER NEW YORK LAW

For the reasons discussed above, the Court should dismiss Plaintiffs' California statutory claims related to Plaintiffs' alleged in-game purchases. Plaintiffs also withdrew their unjust enrichment claims (Opp'n at 20 n.5), leaving only their common-law-fraud claims (FAC ¶¶ 223-34).  Plaintiffs' fraud-based claims are inadequately pled.  They are conclusory and fail to allege with particularity what supposedly false or misleading advertisements they relied upon in making their purchases.  They also fail to connect the FAC's general factual allegations to each Plaintiff's alleged in-game purchases.  (Mot. at 10-11.)  This is not enough.  *See, e.g.*, *Smith v. Apple, Inc.*,

583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022) (A complaint "fails to allege fraud with the requisite particularity" if it "does not specify which statements the plaintiffs viewed or when.").

Plaintiffs admit that their fraud claims fail under New York law, because a plaintiff who was misled by a fake discount is not actually injured. (Opp'n at 21.) Instead, they argue that they have pled a cognizable injury for fraud rooted in the Games' alleged addictive qualities.[3] But Plaintiffs mischaracterize *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (N.Y. 1999), which does not recognize addiction as a freestanding injury sounding in fraud. There, plaintiffs dropped their addictiveness claims after the trial court concluded a class of "addicted smokers" could not be certified because "a claim which turns on proof of actual addiction would involve far too many subjective factors." *Id.* at 51-52. The court later dismissed their individual claims under NY GBL §§ 349-50 because "addiction [was] inescapably the cornerstone of plaintiffs' legal claims [and] they therefore fail to demonstrate they were actually harmed or suffered pecuniary injury." *Id.* at 56 (citation modified). Plaintiffs cite no other case connecting a misrepresentation-based fraud claim with addiction.

Plaintiffs separately contend that "false discounting allegations [can] establish a price premium" under "unique circumstances." (Opp'n at 22.) But Plaintiffs misconstrue *Guerriero v. BB OPCO, LLC*, 24-cv-8778 (PKC), 2026 WL 878716, at *7 (S.D.N.Y. Mar. 30, 2026), which hinged on an expert determination that clothing from a "mainline" Brooks Brothers store "showed superior quality across multiple measurable dimensions" than comparably priced items in their outlet stores. Here, Plaintiffs do not allege that discounted bundles contained items of an inferior

---

[3] While Plaintiffs discuss addiction specifically in their causes of action under the UCL, FAL, CLRA, and unjust enrichment, they do not even attempt to tie their cause of action for fraud to claims of addictiveness. (FAC ¶¶ 179-234.)

5

quality, and, in fact, each snapshot in the FAC lists *exactly* the number of coins and items in each bundle, and at what price it is available.  (FAC ¶¶ 44-45, 48, 51, 53.)

## IV.    PLAINTIFFS' FALSE DISCOUNT CLAIMS FAIL UNDER CALIFORNIA LAW

Recognizing that their claims fail under New York law, Plaintiffs spend much of their brief arguing that their false discount claims are adequately pled under California law.  (Opp'n at 12-20.)  But California law does not apply, and regardless, Plaintiffs' UCL, FAL, and CLRA[4] claims not only lack the requisite particularity but also are conclusory.  (Def. Mem. at 13-14.)

The FAC provides examples of *different* offers, bundles, and packs that appear in the Games.  (FAC ¶¶ 44, 45, 48, 51, 53.)  But it contains unparticularized allegations of reliance on these sales tactics and resulting injury and does not identify *which* allegedly fictitious sales or discounts each Plaintiff allegedly relied on.  (*Id.* ¶ 198) ("Plaintiffs and the Classes relied on these misleading and deceptive representations regarding the limited-time bonuses they could expect to receive in the packs.")[5]   The FAC alleges only that Camargo and Garcia each "estimate" previously making in-app purchases "which included purchases of the various types of packs and sales items described below . . . ."  (*Id.* ¶¶ 13-14.)  Dougherty's allegations merely list the date and price of her alleged purchases, not why those purchaes are based on false, misleading, or deceptive

_____

[4] Plaintiffs' CLRA claim also fails because the CLRA does not apply to virtual items.  (Def. Mem. at 14-15.)  Cases cited by Plaintiffs acknowledge this "majority view." *Ochoa v. Zeroo Gravity Games LLC*, No. CV 22-5896-GW-Asx, 2023 WL 4291650, at *13 (C.D. Cal. May 24, 2023).  The few cases Plaintiffs cite to the contrary are factually distinct, involving complex multiplayer worlds where individuals interact virtually and even buy and sell player-created digital goods and services. *See Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1251, 1263-64 (N.D. Cal. 2022); *C.W. v. Epic Games, Inc.*, No. 19-cv-03629-YGR, 2020 WL 5257572, at *4 (N.D. Cal. Sept. 3, 2020).

[5] In addition, the FAC's discussion of differences in the pricing and items of the $4.99 Team Pack and $19.99 Super Bundle (FAC ¶¶ 48-52) is not apples-to-apples.  Plaintiffs acknowledge that the "Team Pack" provides an "infinite lives" bonus without alleging that that additional feature is not valuable.  The FAC likewise alleges that "identical" 70% offers appear twice at separate times but does not explain how the standard sales practice of providing the same discount periodically constitutes supposedly "bogus discounts."  (*Id.* ¶ 53)

sales practices. *See, e.g.*, *In re Arris Cable Mod. Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) ("When UCL, CLRA, and FAL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege the particular circumstances surrounding the representations at issue.") (citation modified).

Plaintiffs try to circumvent these shortcomings by contending they were "bombarded" with supposedly "blanket" false discounts. (Opp'n at 12-14.)  In *Vizcarra v. Michaels Stores, Inc.*, the plaintiff alleged a "*blanket* pricing practice in which always-available coupons offer a perpetual discount of at least 20% off the 'regular' list prices of *all* items."  710 F. Supp. 3d 718, 730 (N.D. Cal. 2024) (emphasis in original).  By contrast, here, Plaintiffs allege *different* specific discounts.  (FAC ¶ 82) ("Defendant has even perfected its pattern of fake discounts to sell items at a price and at a specific discount percentage tailored to each user.").

Plaintiffs' "dark patterns" allegations do not cure the FAC's pleading defects.  They are not tied to any specific alleged false discount and seek to distract from the FAC's other deficiencies.  Plaintiffs also try to classify the Games as commercial speech (Opp'n at 18-19) yet cite only a single inapposite case that involved a manufacturer paying a rating guide to give high ratings to its own products, *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107 (9th Cir. 2021). And Plaintiffs' attempt to distinguish *Courtright v. Epic Games, Inc.*, 795 F. Supp. 3d 1156 (W.D. Mo. 2025), fails to explain how the Games' allegedly addictive features could apply to Plaintiffs' in-Game purchases separately from in-Game content protected by the First Amendment.

Plaintiffs also lack standing to seek injunctive relief.  *First*, they do not allege they are still making purchases in the Games.  That they "may" do so in the future is not enough.  (Def. Mem. at 12.) *Second,* they are now aware of any allegedly "misleading" practices.  *See Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1166 (C.D. Cal. 2023) (holding that plaintiffs lacked standing to pursue

injunctive relief because they were now aware of the product in question's undisclosed safety risks). *Third*, any relief would not benefit the public at large because the Games' advertisements are internal to the Games themselves, and thus only reach "a group of individuals similarly situated to the Plaintiff" rather than the general public. *McGill v. Citibank N.A.*, 393 P.3d 85, 90 (Cal. 2017) ("Relief that has the primary purpose or effect of redressing or preventing injury to . . . a group of individuals similarly situated to the plaintiff [] does not constitute public injunctive relief").

## V.    PLAINTIFFS' VPPA CLAIM FAILS

Finally, Plaintiffs cannot save their VPPA claim.  Plaintiffs argue that Zynga obtained and later disclosed their personally identifiable information because Plaintiffs "obtained specific" video ads by watching them in the Games.  (Opp'n at 22-23.)  But this argument collapses the distinction between passively viewing an ad and affirmatively "requesting or obtaining" specific video content, which is what information the VPPA regulates.  Players cannot choose which ads to view and the FAC does not allege otherwise.  *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (dismissing VPPA claim because "People.com does not disclose information identifying website visitors as having requested or obtained specific videos.").

Moreover, even under the Second Circuit's broad definition of "subscriber," Plaintiffs do not allege what "consideration in the form of personal information," such as an email address, they shared in exchange for a good or service.  *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 553-54 (2d Cir. 2024).  Nor can they, because Plaintiffs need not provide any personal data to play Toon Blast.  Thus, even under *Salazar*, Plaintiffs are not VPPA "subscribers."[6]   Plaintiffs also

---

[6] As discussed in Zynga's opening brief (Def. Mem. at 23 n.3), other circuits disagree with *Salazar*. Given the recent grant of certiorari in *Salazar v. Paramount Global*, 133 F.4th 642 (6th Cir. 2025), the Second Circuit's decision in *Salazar* may not be good law by this time next year.

ignore that, because Plaintiffs do not allege Garcia *currently* plays Toon Blast (FAC ¶¶ 15, 101), he lacks the "ongoing" relationship necessary to be a "subscriber" (Def. Mem. at 23-24).

Even *if* Plaintiffs could assert a viable VPPA claim, they fail to do so. Plaintiffs do not specify what of their viewing history allegedly was disclosed, to whom, or how that information identified their individual video-watching behavior. Plaintiffs instead rely on insufficient conclusory allegations. *See Berryman v. Reading Int'l, Inc.*, 24 Civ. 750 (PAE), 2026 WL 699835, at *3 (S.D.N.Y. Mar. 12, 2026) ("A pleading that offers 'only labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555); *cf. Xu v. Reuters News & Media Inc.*, No. 24 Civ. 2466 (PAE), 2025 WL 488501, at *5 (dismissing California Invasion of Privacy Act claim where plaintiff described how a technology operated but failed to allege what information of theirs was allegedly impacted).

Unable to allege what of their information was impermissibly disclosed, Plaintiffs attempt to sidestep *Solomon v. Flipps Media Inc.*, by selectively citing excerpts from Take-Two's privacy policy. (Opp'n at 23-24.)  Plaintiffs then assert that the Court can *only* look at the excerpts of the privacy policy cited by them, not those pointed to by Zynga.  That is not the law, but even if it were, Plaintiffs cannot escape that they have failed to allege what of *their* identifying information was shared such that it "would readily permit an ordinary person to identify a specific individual's video-watching behavior" as required by *Solomon*.  136 F.4th 41, 49 (2d Cir. 2025); *Golden v. NBCUniversal Media, LLC*, 22 Civ. 9858 (PAE), 2025 WL 2530689, at *7 (dismissing claim where plaintiff failed to allege that disclosures included "the titles of videos she had watched").

Even if Plaintiffs had alleged an actionable disclosure, any such disclosure was permitted because *third parties* process the player's request for an ad Toon Blast or fulfill their order for one. *See* 18 U.S.C. § 2710(a)(2) (excepting from the VPPA disclosure for "order fulfillment" or

"request processing.")  Plaintiffs' purported authority to the contrary is distinguishable because there "*Defendant* used [third-party analytics platforms] for marketing, advertising, and analytics." *Sutton v. TED Found., Inc.*, 23 Civ. 9219 (DEH), 2026 WL 207000, at *9 (S.D.N.Y. Jan. 27, 2026).

Plaintiffs' VPPA claim also fails because Zynga is not a "video tape service provider." Zynga is not "substantially involved in the conveyance of video content to consumers" *and* "also significantly tailored to serve that purpose." *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 252 (S.D.N.Y. 2025).  Plaintiffs admit that Toon Blast does not require players to watch any videos (FAC ¶ 105) and the FAC lacks any allegation that Zynga selects which advertisements to show players or when to show them. (*Id.* ¶¶ 94, 103, 108).  Plaintiffs attempt to obscure these failings by arguing that Zynga makes money from advertising.  (Opp'n at 25.)  But the delivery of advertising does not transform Zynga into a "video tape service provider."

Even if Plaintiffs sufficiently allege a VPPA claim as to Toon Blast, Plaintiffs lack standing to represent a putative class of persons "who have watched pre-recorded video content in *any* of Zynga's mobile applications."  (FAC ¶ 125) (emphasis added).  Plaintiffs declare without citation to any allegation in the FAC (there is none) that their "claims are based on Defendant's uniform conduct among its mobile applications and video advertising."  (Opp'n at 25.)  The *only* authority on point is clear – Plaintiffs lack standing to represent users of *other* Zynga apps that Plaintiffs did not themselves use.  *See Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791, 799 (S.D.N.Y. 2025) ("Plaintiffs lack individual Article III standing to raise claims with respect to the NBC News App or NBC Sports App because they did not use or purchase those apps.").

## CONCLUSION

For the above reasons, if Plaintiffs are not compelled to arbitrate, then the Court should dismiss the Complaint with prejudice under FRCP 12(b)(1), 12(b)(6), and, where applicable, 9(b).

Dated:  New York, New York
        June 5, 2026

**MCDERMOTT WILL & SCHULTE LLP**

_/s/ Andrew B. Kratenstein_
Andrew B. Kratenstein
Chris Combs
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400

David Saunders (_pro hac vice_)
Emilie E. O'Toole (_pro hac vice_)
MCDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000

_Counsel for Defendant Zynga, Inc._

11